**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ENERGETIQ TECHNOLOGY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:15-cv-10240-LTS |
| | ) |
| ASML NETHERLANDS B.V., | ) |
| EXCELITAS TECHNOLOGIES CORP., and | ) |
| QIOPTIQ PHOTONICS GMBH & CO. KG, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT STATUS REPORT

Pursuant to the Court's order at the hearing on May 29, 2015, Plaintiff Energetiq

Technology, Inc. and Defendants ASML Netherlands B.V., Excelitas Technologies Corp., and

Qioptiq Photonics GmbH & Co. KG (collectively, "Defendants")[1] have conferred, and now

submit this joint status report with their respective positions on how to proceed.

**Energetiq's Position:**

As the Court noted at the May 29 status conference, the matter of highest urgency here

relates to the Defendants' planned shipment of what the parties are calling the LS2.[2]  Based on

how the Defendants described the LS2 to Energetiq before this lawsuit was filed, Energetiq has

submitted to the Court a detailed claim chart showing that the LS2 infringes its patents, *if* it is

---

[1]     As set forth in Defendants' Motion to Dismiss Energetiq's First Amended Complaint
(Dkt. No. 94) and memorandum in support thereof (Dkt. No. 96), defendants ASML and Qioptiq
contest that they are subject to personal jurisdiction in this case.  Energetiq has opposed, and
argues that these parties are subject to personal jurisdiction in this case.

[2]     LS2 is used to refer to the light source that Defendants plan to launch for the ASML
YieldStar 350.

implemented in the way the Defendants described it to Energetiq.  The only open issue at this point that might prevent the issuance of a preliminary injunction order on *today's* record is that the Defendants say they have changed their product.  But, tellingly, they refuse to provide any evidence in support; their "changing design" theory so far has been set forth only in raw attorney argument.  And they have so far refused to allow Energetiq's counsel to see the accused product to reach their own conclusion.

The Court has now asked the parties on two separate occasions to provide a schedule going forward on this case, addressing the likelihood that Defendants: are *presently* selling accused products from their U.S. headquarters; have been making and using infringing components or products in U.S.-based R&D and manufacturing activity; and soon will be shipping commercial LS2 products containing components made in the United States, or to customers located in the United States.  Defendants ***still*** have provided no schedule below, and simply repeat arguments intended to delay the case.  (*Cf.* Doc. No. 98 ("Counsel are to file a status report proposing a revised schedule as to how to proceed by 6/12/15").)

Of course, the *public* evidence shows that:  (i) the accused LS2 was in operation in the United States when the lawsuit was filed (Doc. No. 96 at 8); (ii) some version of the LS2 existed at the time of filing sufficient to cause ASML to abandon Energetiq's product in favor of the Excelitas product; and 3) the Defendants *themselves* described the product in a way that says widespread infringement is imminent.  As such, the Defendants do not get to hide behind a veil of secrecy essentially saying that, "you can do nothing until the product ships confidentially to secret end-users, and even then, you must find out on your own to whom it has shipped and to where it has shipped in the United States."  That is why venue and jurisdiction are proper in this Court; Excelitas, a Massachusetts-based corporation, is infringing *now* by "having made and

used" infringing product in the United States, and by *now* "selling and offering to sell" the infringing product, regardless of whether the actual product is now hidden off-shore.  It simply does not matter where its employees are seated when they do the infringing activity.

The Defendants suggest that the launch and delivery of the infringing LS2 is delayed. But that is no reason to delay the case in total, or the preliminary injunction hearing in particular. Indeed, one would think that the Defendants would want to know if they have an infringement problem at the earliest possible time.  The sum total of their actions suggest a guilty conscience and a conspiracy between the three defendants to cover it up.

There is one new fact of which the Court should also be aware.  The Defendants can no longer contend that the validity case is enormous, or the number of patent issues uncountable. They have now filed four petitions with the Patent Office challenging the validity of three of the patents and have indicated that further petitions will be filed imminently.  In doing so, they have represented that the validity case is both ready for trial and manageable in size.

Having taken into consideration the dialogue between the parties and the Court at the May 29 status conference, Energetiq now suggests two alternative proposals that it believes comport with the Court's intentions to promote judicial economy, yet will allow *both* parties ample preparation time.  First, Energetiq proposes that the Court now enter a full trial schedule, on all matters, for the Spring of 2016, with parallel preparation for a preliminary injunction hearing in September 2015 relating to the LS2 product.

Alternatively, Energetiq proposes that instead of a preliminary injunction hearing followed months later by a full trial on many of the same issues, the Court might instead bifurcate and stay the patent damages and state law issues entirely, from the patent liability case, to allow it to consolidate the LS1 and LS2 patent *liability* cases for a jury trial in early December

2015.  Under this proposal, only the patent liability case (and Defendants' defenses thereto) will be tried in the December trial; all remaining issues, including discovery related to patent infringement damages and the entirety of the state law claims, will be bifurcated until after trial. There will therefore be only one evidentiary hearing on the patent merits issues, and the Court's findings will be final and binding at that time.

1. **A Schedule to Permit (i) a September 2015 Preliminary Injunction Hearing In Advance of Excelitas's First Shipments of the LS2, and (ii) a Full Trial by Spring 2016**

The case has been idle for long enough.  At this stage, Energetiq believes that it is reasonable to enter a preliminary injunction schedule, along with a full case schedule that allows the entire case to develop on a parallel track.  Setting a case schedule parallel to the preliminary injunction schedule would remove discovery battles as to whether some portion of discovery relates only to the LS2 (for the preliminary injunction hearing) or relates to other parts of the case.  All discovery should begin, with expedited discovery focused on the LS2.

Excelitas has stated that it intends to deliver the LS2 device by year's end.  Whether it presently intends to meet that date or not, the nature of this technology (large capital technology purchased after a lengthy development and validation process with end-users) means that it is likely manufacturing either the end product, or key components for it, now or very soon.  This is not a product that one can simply manufacture overnight and ship the next day.

Excelitas has conceded that the Court has personal jurisdiction over it, and it is the central player in the conspiracy between the three defendants—the coordinator, in a sense.[3]  As such, this case can proceed immediately with respect to Excelitas, and a preliminary injunction against Excelitas at this stage should largely provide the relief necessary as to the LS2 (unless it is currently stockpiling the product off-shore with the other defendants).  Indeed, a finding on the merits with respect to Excelitas goes a long way toward resolving the most immediate of the issues.  Qioptiq and ASML complete the supply chain.  Qioptiq is making key components, and ASML is the one that will likely import the YieldStar 350 product (containing the LS2) into the U.S. after receiving the components abroad from Excelitas and Qioptiq.

Energetiq is missing today but one category of facts relating to the LS2: what *precisely* is the structure and physical makeup of the LS2 product today?  Excelitas, Qioptiq and ASML refuse to share, even under a confidentiality agreement, the detailed engineering drawings of the product.  It is flat out disingenuous to characterize Energetiq's request to learn this fact as a fishing expedition.  Energetiq has made a detailed showing of why it *appears* there is likely infringement.  It is now the Defendants' burden to come clean, to articulate their defense, and to justify it with evidence.

Now, five months after this case has been filed, the Defendants know all they need to know to go to a preliminary injunction hearing.  They have presented their validity case both to

---

[3]     Energetiq has pled direct infringement against Excelitas, meeting (and far exceeding) the barebones direct infringement pleading requirements of Form 18 of the Federal Rules of Civil Procedure.  There can be no reasonable debate that the patent infringement claims against Excelitas must survive the Rule 12(b)(6) motion.  *K-Tech Telecomm. v. Time Warner Cable, Inc.,* 714 F.3d 1277, 1283-84 (Fed.Cir.2013) ("to the extent any conflict exists between *Twombly* (and its progeny) and the Forms regarding pleadings requirements, the Forms control"); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.,* 681 F.3d 1323, 1333-36 (Fed. Cir. 2012) (same); *Zond, Inc. v. Fujitsui Semiconductor Ltd.,* 990 F. Supp. 2d 50 (D. Mass. 2014) (same).

this Court and to the Patent Office, and they certainly know their non-infringement defenses (if

any) by now.  Energetiq should now be allowed to learn exactly what the LS2 product looks like,

through documentation produced by Excelitas, at two distinct points along the LS2 design

continuum: (1) the LS2 design that Qioptiq and Excelitas presented to ASML to cause it to

discontinue its relationship with Energetiq as to the YieldStar 350; and, because Excelitas argues

(without evidence) that the design is "shifting," (2) the LS2 design as it exists today.  Such

discovery will be limited and easily producible on an expedited schedule.

Excelitas's assertions (again without evidence) that it has temporarily shepherded the

LS2 research and development efforts offshore do not moot Energetiq's allegations of patent

infringement.  Nowhere does Excelitas address Energetiq's allegations that Excelitas has made,

used, *sold, and/or offered to sell* the LS2 in the United States, or that it and/or Qioptiq are

making key components for the LS2 in the United States.  (Am. Compl. ¶¶ 92, 102, 130, 142.)  It

is black letter law that *sales and offers for sale* constitute acts of direct infringement.  To date,

Excelitas has not offered any evidence that such activities, including any relevant

communications, have not occurred in, or under the supervision or guidance of employees in,

Massachusetts.

With respect to ASML and Qioptiq, ASML and Qioptiq's acts of inducement are alleged

to have taken place in Massachusetts when they induced Excelitas to infringe, and that is enough

to subject them to the personal jurisdiction of this Court, regardless of whether the actual accused

product resides in Massachusetts.[4]  In view of the allegations, the Court cannot start to make

fact-based findings based on the *Defendants'* lawyers arguments about what the evidence

"shows" or "doesn't show."  There has been no jurisdictional discovery here.  Absent that

discovery, the Court must accept Energetiq's allegations.[5]

Given that this case has now been pending for over four months, there is nothing unfair

about saying "enough delay" and requiring that core infringement documents—i.e.,

documentation sufficient to characterize and describe the LS2 design at the two points in time

described above—be produced three weeks from today, by **July 3, 2015**.  With that information

in hand, Energetiq will provide its renewed preliminary injunction motion, including its core

infringement contentions, by **July 24, 2015**—three weeks later.

### A.   Case Management Schedule 1: Preliminary Injunction Hearing on LS2 by September 2016

|   | Action | Plaintiff's Proposed Date | Defendants' Proposed Date |
|---|---|---|---|
| 1. | Initial disclosures due and fact discovery commences regarding | June 19, 2015 | |

---

[4]      Defendants have mischaracterized all of the Federal Circuit cases that they cited on this point: *none* of them requires that both the inducement and the direct infringing acts take place in the forum in question.  There is no suggestion that inducement cannot take place in the forum, with the direct infringing acts taking place elsewhere.  Moreover, Defendants' Reply Brief sidesteps Energetiq's argument and the facts alleged in the Amended Complaint that ASML and Qioptiq directed Excelitas (by communicating into Massachusetts) to perform the acts of direct infringement, thereby inducing infringement under 35 U.S.C. § 271(b).  *See Sawtelle v. Farrell,* 70 F.3d 1381, 1385 (1st Cir.1995); *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir.1994) (court may consider facts alleged in the complaint in determining personal jurisdiction); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n*, 142 F.3d 26, 34 (facts in the complaint construed "in the light most congenial to plaintiff's jurisdictional claim") (1st Cir. 1998).

[5]      Of course, the Court may use its discretion to grant jurisdictional discovery to allow the plaintiff to adduce additional evidence on personal jurisdiction.  *See Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008) ("[T]he threshold showing that a plaintiff must present to the district court to merit limited discovery is relatively low.").

|    | Action | Plaintiff's Proposed Date | Defendants' Proposed Date |
|----|--------|--------------------------|---------------------------|
|    | Excelitas's LS2 infringement and jurisdictional issues for Qioptiq and ASML.<br><br>(All documents in response to document requests shall be produced within 21 days of service of the document requests.) | | |
| 2. | Core infringement documents produced; core jurisdictional discovery documents produced. | July 3, 2015 | |
| 3. | Two fact depositions per side completed. | July 17, 2015 | |
| 4. | Energetiq's renewed preliminary injunction motion due; Energetiq's supplemental opposition brief following jurisdictional discovery due. | July 24, 2015 | |
| 5. | Defendants' preliminary injunction opposition brief due; Defendants' supplemental reply brief following jurisdiction discovery due. | August 7, 2015 | |
| 6. | Expert depositions complete. | August 21, 2015 | |
| 7. | Simultaneous reply briefs due. | August 28, 2015 | |
| 8. | Preliminary injunction hearing. | At the Court's convenience in September. | |

**B.   Case Management Schedule 2: Parallel Full Trial Schedule by Spring 2016**

|    | Action | Plaintiff's Proposed Date | Defendants' Proposed Date |
|----|--------|--------------------------|---------------------------|
| 1. | Initial disclosures due and fact discovery commences | June 19, 2015 | |

| | Action | Plaintiff's Proposed Date | Defendants' Proposed Date |
|---|---|---|---|
| 2. | Energetiq's core infringement contentions due. | August 7, 2015 | |
| 3. | Defendants' final invalidity contentions due. | September 7, 2015 | |
| 4. | Initial expert reports due for party bearing burden of proof. | October 2, 2015 | |
| 5. | Opposing expert reports due. | October 23, 2015 | |
| 6. | Fact and expert discovery closes. | November 20, 2015 | |
| 7. | Combined patent claim construction and summary judgment opening briefs due (the parties will submit simultaneous briefing on claim construction and summary judgment). | January 8, 2016 | |
| 8. | Combined claim construction and summary judgment opposition briefing due. | February 19, 2016 | |
| 9. | Joint pre-trial disclosures and motions *in limine* due. | March 4, 2016 | |
| 10. | Final pre-trial conference, and summary judgment hearing. | April 8, 2016 | |
| 11. | Trial commences | At the Court's convenience in April or May 2015 | |

### 2. **Jury Trial Limited to LS1 and LS2 Patent Liability Issues in December 2015 – Bifurcation of Patent Infringement Damages and State Law Claims**

As discussed above, Energetiq proposes an alternative that it suggests would be the most efficient way of resolving the entire case.  Because Energetiq is asserting the same or similar patents against the LS2 and LS1 products—and because these two products are likely substantially similar in their structure, function, and operation—the patent infringement cases

against the LS2 and LS1 are likely to be very similar, with a high percentage of overlapping discovery.  Indeed, much of this overlapping discovery will be provided during the LS2 preliminary injunction hearing anyway.

Therefore, Energetiq proposes that instead of a preliminary injunction hearing followed months later by a full trial on many of the same issues, the Court should instead bifurcate patent damages and state law issues, from the patent liability case, and then consolidate the LS1 and LS2 patent *liability* cases for a jury trial in early December 2015.  Under this proposal, only the patent liability case (and Defendants' defenses thereto) will be tried in the December trial; all remaining issues, including discovery related to patent infringement damages and the entirety of the state law claims, will be bifurcated until after trial.

This proposal vastly reduces any alleged complexity of the case and permits the Defendants an *additional* four to five months from receiving Energetiq's core infringement contentions, over and above the time Defendants have already had to prepare their invalidity case (which is, at a minimum, more than five months, based on the December 15, 2015 date of the certified translation of Gärtner).

The reality is that the Defendants' heavy lifting has already been accomplished: Defendants have offered expert testimony of Dr. Caroline Ross as to what they believe to be their strongest references against the four originally asserted patents; and they have offered testimony of a *second* expert for at least three patents in their IPR requests.  The IPR requests cite the same key references and make the same core arguments.  Nevertheless, the Patent Office has demonstrated that it is not impressed by such arguments: it considered both a redacted copy of Dr. Ross's expert declaration and Defendants' key alleged anticipating prior art reference

(Gärtner), and subsequently issued U.S. Patent No. 9,048,000 in due course, without re-opening

substantive prosecution or requiring further claim amendment.

Moreover, while Defendants have told this Court that up to 10 claim terms per patent (or

60 claim terms) could be disputed, in the four IPR requests that they have filed (covering three of

the asserted patents), the Defendants have suggested a construction of only *four* claim terms in

*total*, with two of the terms shared among the challenged patents.  With patent specifications that

are all related (either as continuations or continuations-in-part); substantially similar claims, and

substantially similar underlying technology, there is no further reason to defer the urgent portion

of this case, while the state law claims proceed in parallel on the normal schedule.

The heart of the parties' dispute revolves around patent infringement liability and the

ability to obtain a permanent injunction.  Resolving these issues first will likely lead to the most

efficient use of judicial resources for this case.

**Case Management Schedule 3: Trial On Patent Liability Issues Only—LS1 and LS2**

|  | **Action** | **Plaintiff's Proposed Date** | **Defendants' Proposed Date** |
|---|---|---|---|
| 1. | Initial disclosures due and fact discovery commences. | June 19, 2015 |  |
| 2. | Energetiq's core infringement contentions due. | July 3, 2015 |  |
| 3. | Initial expert reports due for party bearing burden of proof. | July 17, 2015 |  |
| 4. | Opposing expert reports due. | July 31, 2015 |  |
| 5. | Fact and expert discovery closes. | August 14, 2015 |  |
| 6. | Combined patent claim construction and summary judgment opening briefs due (the parties will submit simultaneous briefing on claim construction and | September 4, 2015 |  |

| | Action | Plaintiff's Proposed Date | Defendants' Proposed Date |
|---|---|---|---|
| | summary judgment). | | |
| 7. | Combined claim construction and summary judgment opposition briefing due. | October 2, 2015 | |
| 8. | Joint pre-trial disclosures and motions *in limine* due. | October 16, 2015 | |
| 9. | Final pre-trial conference, and summary judgment hearing. | November 21, 2015 | |
| 10. | Jury trial commences | At the Court's convenience in December 2015 | |

### 3. Brief Response to Defendants' Statement

*First*, Defendants say that there is "no LS2-specific activity of any kind taking place in the United States today."  Defendants are saying, essentially, that if their attorney argues  a carefully crafted sentence, it must be true for all purposes and the preliminary injunction motion should be denied on its face.  In fact, the very wording of their statement shows how misleading it is, because the *major* harm is the imminent shipment *into* the United States of products developed in the United States, and which Defendants suggest they have now moved outside the U.S. for final assembly and shipment.  Moreover, Defendants' statement is limited to "LS2-specific" activity, at the same time that they deny there is even such thing as an LS2 product; they do not deny that they are manufacturing components for the product in the U.S. or intending to import it into fully assembled products back into the U.S.

There is no doubt from the unrebutted allegations that must be accepted as true, that the product is intended to be brought into the U.S., and soon.  The Court cannot deny the preliminary injunction hearing simply on the Defendants' counsel's request.  Of course, there would be no

harm in limited and targeted discovery on the LS2 development, as Energetiq proposes.  As the Court suggested, if Energetiq were to find that Defendants are not infringing in the United States, and not about to infringe in the United States with their imports of the LS2 and/or YieldStar 350, then that may likely lead to a quick resolution of the matter.  It certainly would end the preliminary injunction phase of the case.

*Second*, Defendants can point to no legitimate harm from permitting discovery to begin at this point.  They complain that Energetiq's law firm in the litigation is the same law firm that prosecutes Energetiq's patents, but that is no basis to put the case on hold.  This occurs all the time in patent litigation, and there is a well-known standard solution:  the Court issues a protective order (typically drafted by the parties) that bars any attorneys who have had access to confidential information, from prosecuting the patents.  Indeed, months ago, Energetiq's counsel sent Defendants' counsel a draft protective order so that the parties could begin negotiating such discovery protection issues; Defendants' counsel has ***flat out refused*** to negotiate the protective order.

*Third*, Defendants again argue the merits of their case, saying that there can be no irreparable harm because Energetiq allegedly offered to license the patents to ASML for a certain amount of money.  First, and most importantly, the statement is flat-out misleading and will be fully rebutted at the next stage.  In fact, what Defendants fail to point out is that what they refer to is a ***draft*** covenant-not-to-sue that ***ASML*** requested to lull Energetiq into not suing it, while it negotiated a potential block-buster agreement with Energetiq.  (*See* Doc. No. 68, Second Declaration of Donald K. Smith, Ph.D.,  ¶¶ 81, 82.)   The agreement was limited to the time before (and sales made) before the larger deal would be done.  And, what Defendants fail to note is that Energetiq never agreed to the terms that ASML proposed.

*Fourth,* much of Defendants' statement below is really argument in support of a motion to stay pending their IPR requests, improperly placed in this joint statement.  Energetiq will respond in full to these arguments in accordance with the rules of this Court, ***after*** Defendants' file a motion for stay.  That said, it must be noted that it will be yet another three months before the Patent Office decides whether it will even institute review of these IPR requests.   But, in the 4 hours that Energetiq has had the Defendants' statement and cited cases, it can say that the Defendants have apparently not cited a ***single*** case where a court stayed a litigation pending an IPR request, where there was also a preliminary injunction motion pending, as there is here. Indeed, one of the factors that must be balanced in considering a stay is the harm and prejudice to Energetiq in a stay;  because there is irreparable harm that Energetiq has alleged by way of declarations in its preliminary injunction briefing, and more such evidence that it expects to uncover during the limited discovery (such as continued development of the LS2 in the United States, or imminent import of the YieldStar 350 into the United States), Defendants cannot be successful on a motion to stay the litigation.

While Defendants use this joint statement as a vehicle to reargue that the "concept" in the inventions were made obvious by the 1983 Gärtner reference, the fact is that the Patent Office has now seen and rejected the Gärtner reference in granting the most recent asserted paten.  And this is even before it had evidence that no one previously made this kind of light source despite industry need for the invention, and even before it had evidence of the money and commercial success to be had from the invention.  Defendants also cannot explain away the fact that Energetiq has received so much industry praise for the inventions.  *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010);  *Procter & Gamble v. Teva Pharm. USA, Inc.*, 566 F.3d 989,  998 (Fed. Cir. 2009)

(objective evidence of non-obviousness such as long-felt need for the invention, industry praise, and commercial success are often the "most cogent evidence [of non-obviousness] in the record").

The Court asked for proposed schedules in view of the imminent shipment into the U.S. of infringing products.  Defendants have refused to respond to that request.  Energetiq has offered reasonable and rational alternatives:  a preliminary injunction hearing on the LS2 product in September, or a bifurcated patent liability trial separate from the damages and state law claims.  The Court should adopt the mode it thinks best.

**<u>Defendants' Position</u>:**

At the May 29 hearing, the Court asked for the parties' input on how to address an in-progress research and development project that Energetiq's complaint has dubbed the "Qioptiq LS2."  The Court's concern appeared to be that, in contrast with the accused YieldStar 250 ("YS250") and YieldStar 200 Upgrade Kits ("YS200") that have been on the market for years (and thus cannot give rise to irreparable harm), the "LS2" is a confidential and proprietary design still under development.  Because it has yet to come to market, the Court appeared to suggest, prospective relief might be appropriate if there was a real chance of irreparable harm from the "LS2" in the interim.  To get at this question, the Court asked whether expedited discovery on the "LS2" limited to determining the likelihood of infringement from this in-flux design might be appropriate.

Defendants respectfully submit that such expedited discovery is improper, and would unfairly prejudice Defendants, because there can be no irreparable harm from the "LS2" as a matter of law.  There is no LS2-specific activity of any kind taking place in the United States today.  (Dkt. No. 110, Third Declaration of Michael Ersoni, ¶ 3 ("Ersoni Decl.").)  Under these

circumstances, the Federal Circuit and District of Massachusetts have been clear:  there is no irreparable harm where the "non-movant has or will soon cease the allegedly infringing activities."  *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 974 (Fed. Cir. 1996); *ADA Solutions, Inc. v. Engineered Plastics, Inc.*, 2011 WL 6177287, at *1 (D. Mass. Dec. 9, 2011) (same).  Because no irreparable harm can arise in the interim, there is no justification for expedited "LS2" proceedings.[6]

By contrast, forcing Excelitas and Qioptiq to turn over the confidential and proprietary designs for their "LS2" development project to a self-described competitor (Energetiq) on an expedited basis – when Energetiq can make no showing of irreparable harm – would severely prejudice Excelitas and Qioptiq.  *See New Balance Athletic Shoe, Inc. v. Converse, Inc.*, __ F.Supp.3d __, 2015 WL 685070, at *2 (D. Mass. Feb. 18, 2015) (Gorton, J.) (noting expedited discovery is only warranted where there is "a risk of irreparable harm").  Excelitas and Qioptiq have filed three non-public patent applications related to its inventive "LS2" designs.  These designs reflect the hard work and ingenuity of Excelitas and Qioptiq.  Turning them over to Energetiq now would irreparably harm Excelitas and Qioptiq, including because Energetiq has

---

[6]  As discussed further below, there is also a second reason why there can be no irreparable harm in the interim.  Energetiq has demonstrated that any harm stemming from the alleged infringement is compensable by money damages.  *Eli Lilly & Co. v. Am. Cyanmid Co.*, 82 F.3d 1568, 1578 (Fed. Cir. 1996) (harm that can be remedied by damages is not irreparable.); *see also Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1554-55, 1558-59 (Fed. Cir. 1994).  Energetiq has offered to license the patents-in-suit in exchange for a per-unit royalty of approximately $4,166.  (Dkt. 54, Second Letz Decl., Ex. 1 at 1, 2 and App'x B.)  Having itself calculated a dollar amount that fully compensates for practicing the patents-in-suit, Energetiq's suggestion that infringement of these same patents constitutes irreparable harm has no merit.  *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1339–40 (Fed. Cir. 2012) (finding clear error in the district court's determination that money damages would not provide adequate compensation based in part on the patentee's attempts to license the asserted patents to the defendant); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (license demonstrates patentee "is willing to forego its patent rights for compensation" and thus "any injury suffered … would be compensable in damages").

chosen to engage the same lawyers as both its litigation and patent prosecution counsel. Energetiq's statement above demonstrates that it has no qualms in using material from this litigation in its continuing patent prosecution.  Energetiq will no doubt attempt to do the same with whatever it learns of Excelitas's and Qioptiq's "LS2" research and development – seeking to interfere with these Defendants' patent application, for example, or to use "LS2" discovery when drafting claims for its own patents.  There can be no question this would irreparably harm Excelitas and Qioptiq.

The better course, as set forth below and in Defendants' co-pending motion to stay, is to stay this litigation for at least the period that the PTO requires to decide whether to institute *inter partes* review ("IPR") proceedings.  (*See* Defendants' Motion to Stay, Dkt. No. 107.) Defendants have filed IPR petitions demonstrating that every asserted claim of the patents-in-suit is unpatentable.  (Dkt. No. 109, Exs. 1-8.)  Upon institution of the IPRs, Energetiq will have no ability to demonstrate a likelihood that any valid claim is infringed (as required for preliminary injunctive relief) because the PTO will have found "that there is a reasonable likelihood" that the claims are unpatentable.  *See* 35 U.S.C. § 314(a).  And because it is highly likely that the IPRs will be instituted and will simplify the issues in the case, it would be a waste of judicial and party resources to proceed with this action before resolution of the IPRs – which will occur no later than December 2015 (if the petitions are denied), and no later than December 2016 (if the petitions are instituted).  Indeed, Energetiq does not contest that the asserted patents are substantially similar, and claim substantially similar technology, such that resolution of IPRs, if successful, will be dispositive of this case.  For these reasons, and those discussed further below, this case should be stayed for at least the limited time required for the PTO to decide on instituting the IPRs.

I.     **THE COURT SHOULD ISSUE A TEMPORARY STAY PENDING
       RESOLUTION OF THE IPRs**

As of today, Defendants have filed eight IPR petitions which demonstrate that every

asserted claim of all six patents-in-suit is unpatentable.  For example, the asserted claims of the

'982 patent purportedly cover using an ignition source to generate a plasma in a chamber and a

laser to sustain the plasma to produce high brightness light source.  *See, e.g.*, '982 patent, claim

1.  But there was nothing new about this concept at the time the application that led to the '982

patent was filed.  Indeed, this concept was known in the art ***more than two decades*** before the

application date.  In 1983, for instance, Gärtner et al. filed a patent application entitled

"Radiation source for optical devices, notably for photolithographic reproduction systems,"

which published on May 3, 1985 as French Patent Application No. 2554302 (Dkt. 46-3).  This

reference was not brought to the examiner's attention during the initial prosecution.  If it had, the

claims of the '982 patent may have never issued, as Defendants fully expect the now-pending

IPRs will conclude.

Gärtner discloses a light source with the same features claimed in the '982 patent: (1) a

sealed chamber 1 (green); (2) an ignition source – pulsed laser 10 (blue), which generates a

plasma 14; and (3) a laser to produce light – laser 9 (red), which provides energy to the plasma

14 and produces light 15. (*See* Petition for *Inter Partes* Review, Case IPR2015-01303, at 16

(Dkt. 109-4.)[7]

_____

[7] Compare with '982 patent, cl. 10 (requiring (1) a sealed chamber, (2) an ignition source for
ionizing a gas within the chamber, and (3) at least one laser for providing energy to the ionized
gas within the chamber to produce a high brightness light); *id.* at 4:36:39 ("The light source 100
also includes at least one laser source 104 that generates a laser beam that is provided to the
plasma 132 located in the chamber 128 to initiate and/or sustain the high brightness light 136".").



**'982 patent, Fig. 1 (Ex. 1001)**          **Gärtner, Fig. 1 (Ex. 1004)**

There can be no real question that the IPRs will simplify this litigation.  PTO review could dispose of the entire litigation, which, of course is "the ultimate simplification of issues." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014).   Even if fewer than all asserted claims are canceled, the issues will likely be narrowed.  Further, the patentee's statements during the IPR process become part of the file history.  Accordingly, if this case proceeds ahead of the IPRs, claim construction, discovery, and numerous other issues may need to be revisited based on what happens in the IPRs.  Such parallel litigation would be inefficient and would waste judicial and party resources.  For these reasons, this Court and others across the

country have stayed litigation pending resolution of an IPR even when the petition has yet to be instituted.[8]

Energetiq erroneously argues that Defendants' IPR petitions are a reason to move *forward* with the validity case here, but the very purpose of the IPR process is directly the opposite – the IPRs should proceed first, and this Court should benefit from the fruits of that process. As explained further below, there is no reason to find differently here.[9]

## II.   THERE IS NO BASIS TO PROCEED WITH ANY DISCOVERY BECAUSE THERE IS NO RISK OF IRREPARABLE HARM

Congress has made clear that district courts should "minimize duplicative efforts by increasing coordination between district court litigation and *inter partes* review." 77 Fed. Reg. 48,680 at 48,721 (Aug. 14, 2012). Accordingly, there is no basis to proceed with any discovery while the IPR proceedings are pending—let alone the unusual expedited discovery that Plaintiff seeks here. As this Court has noted, expedited discovery is only warranted in the limited

---

[8]   *See, e.g.*, Order Granting Defendants' Motion to Stay, *Zond, LLC v. Advanced Micro Devices, Inc.*, No. 13-cv-11577-LTS (D. Mass. July 23, 2014) (Dkt. No. 82) (Sorokin, J.); Electronic Order, *Zond, LLC v. Toshiba Am. Elec. Components, Inc.*, No. 13-cv-11581-DJC (D. Mass. Sept. 30, 2014) (Dkt. No. 70) (Casper, J.); Electronic Order, *Zond, LLC v. Fujitsu Ltd.*, No. 1:13-cv-11634-WGY (D. Mass. June 2, 2014) (Dkt. No. 124) (Young, J.); Electronic Order, *Zond, LLC v. Intel Corp.*, No. 1:13-cv-11570-RGS (D. Mass. Apr. 18, 2014) (Dkt. No. 120) (Stearns, J.). Indeed, "[t]he stay of pending litigation to enable PTO review of contested patents was one of the specified purposes of the reexamination legislation." *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985); *see also Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002) ("Congress instituted the reexamination process to shift the burden [of] reexamination of patent validity from the courts to the PTO.").

[9]   Energetiq has cited no case that draws its illogical conclusion that filing an IPR petition is a reason to *proceed* with expedited district court litigation on validity. While the IPR process is likely to prove dispositive of this litigation, its scope is not entirely overlapping and does not support the argument that Defendants have completely prepared their district court invalidity case, which at the very least will depend on Energetiq's infringement contentions and claim construction positions. For the reasons set forth in Defendants' Motion to Stay, the IPR petitions only support *staying* this litigation.

circumstance where there is "a risk of irreparable harm." *New Balance*, 2015 WL 685070, at *2 (quotations omitted).  There is no such harm here.

First, as to the YS200 and YS250, Energetiq effectively conceded that it could not show a risk of irreparable harm when it withdrew its injunction request as to those products.  (Dkt. 85, Apr. 30, 2015 Hrg. Tr. at 78-79 (acknowledging that the products have "been on the market" and that Plaintiff had offered a covenant not to sue with respect them).)  Furthermore, Energetiq's own conduct demonstrates that the YS200 and YS250 have not caused (and are not causing) any irreparable harm.  After learning of the YS200 and YS250, Energetiq waited more than a year to bring suit.  *Nutrition 21 v. U.S.*, 930 F.2d 867, 872 (Fed. Cir. 1991) (delay "suggests that the *status quo* does not irreparably damage patentee"); *High Tech*, 49 F.3d at 1557.  Energetiq's offer to license the asserted patents also demonstrates that any alleged harm could be fully compensable by money damages.  (Dkt. 54, Second Letz Decl., Ex. 1 at 1, 2 and App'x B); *ActiveVideo Networks*, 694 F.3d at 1339–40; *High Tech*, 49 F.3d at 1557 (license demonstrates patentee "is willing to forego its patent rights for compensation" and thus "any injury suffered … would be compensable in damages"); *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987) (licensing is "incompatible" with "irreparable harm").[10]

Second, as discussed above, the "LS2" is nothing more than a proprietary design concept that is currently under development, subject to change, and not ready for market.  (Ersoni Decl., ¶ 2.)  Most importantly, there is no LS2-specific activity of any kind taking place in the United States today.  (Ersoni Decl., ¶ 3.)  As a result, there can be no infringement of any asserted patent by the "LS2" during the period it takes for the PTO to decide on Defendants' IPRs, and there is

---

[10]     There is no meaningful difference between a covenant not to sue and a license under governing law.  *TransCore LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009).

nothing that would be within the power of this Court to enjoin.  *Polymer Techs.*, 103 F.3d at 974

(irreparable harm cannot result when the "non-movant has or will soon cease the allegedly

infringing activities"); *ADA Solutions*, 2011 WL 6177287, at *1 (finding no irreparable harm,

and thus denying preliminary injunction, based on affidavits submitted by non-movant); *id*.

("there is no need for a court to order a party to discontinue the manufacture and sale of

infringing products it no longer sells or manufactures.").

Furthermore, as noted above, there can be no irreparable harm from the "LS2" in this

case for the independent reason that Energetiq has demonstrated that its infringement allegations

are compensable by money damages.  *See Eli Lilly & Co.*, 82 F.3d at 1578 (harm that can be

remedied by damages is not irreparable.); *see also Reebok*, 32 F.3d at 1554-55, 1558-59.

Energetiq has offered to license the patents-in-suit in exchange for a per-unit royalty of

approximately \$4,166.  (Dkt. 54, Second Letz Decl., Ex. 1 at 1, 2 and App'x B).  Having itself

calculated a dollar amount that fully compensates for practicing the patents-in-suit, Energetiq's

suggestion that infringement of these same patents could constitute irreparable harm has no

merit.  *ActiveVideo Networks*, 694 F.3d at 1339–40; *High Tech*, 49 F.3d at 1557; *T.J. Smith &*

*Nephew*, 821 F.2d at 648 (licensing is "incompatible" with "irreparable harm").

Moreover, the suggestion that Excelitas's and Qioptiq's foreign research and

development activity related to the "LS2" could somehow result in harm to Energetiq's good-

will with ASML B.V. (the so-called "entrenchment" argument) has no merit.  First, because

research and development outside the United States cannot infringe a United States patent, there

is nothing unlawful about this activity.  Second, ASML B.V. has never purchased any product

from Energetiq for the YieldStar, and Energetiq's purported contract with Defendants expressly

allows ASML B.V. to "engage others to pursue the same or similar business or technology

development."  (Second Cantin Decl., Dkt. 69, Ex. A., ¶ 7.1).  ASML B.V. continues to work

with Energetiq on other products, yet Energetiq chose to sue ASML B.V., and in so doing chose

to extinguish any good-will that could possibly have existed with respect to the YieldStar.  There

is thus no good-will to be harmed.

  The brand new and unfounded conspiracy theories Energetiq advances above – citing no

evidence – do not alter the complete absence of irreparable harm as a matter of law.  Indeed,

Energetiq's shifting-sands approach is telling.  It was Energetiq's own failure to meet ASML's

specifications that resulted in Energetiq's bid failing.  *Ipse dixit* lawyer argument does not

change that fact.  And it was Energetiq who conceded on April 30 that it has no evidence that

"LS2" infringes (April 30 Tr. at 80-81) – a fact Energetiq reconfirms above by stating it does not

know what "the structure and physical makeup of the LS2 product" is.  This fact warrants

dismissal, not expedited discovery.  Finally, the invective above (attributed to Defendants no-

less) that "infringement is imminent" is pure fiction.  Because there is today no activity in the

United States specific to the "LS2," there can be no infringement of Energetiq's United States

patents as a matter of law.  Energetiq's demand for discovery ***before*** showing a risk of

irreparable harm is extraordinary and would be unprecedented.  Defendants, on the other hand,

are certain to suffer irreparable harm if Plaintiff's request is granted.  All "LS2" research and

development is now occurring outside the United States, and thus cannot infringe a United States

patent.  *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454-55 ("The presumption that United

States law governs only domestically … applies with particular force in patent law.").  This

research and development represents the hard work and ingenuity of Excelitas and Qioptiq, for

which these Defendants have filed their own confidential patent applications.  To permit a self-

described competitor (Energtiq) accelerated discovery into such confidential and proprietary

research and development activities – particularly where, as a matter of law, there is **no** risk of irreparable harm from these activities – could not be more prejudicial.  *See New Balance*, 2015 WL 685070, at *2.  And this prejudice is compounded by the fact that Energetiq has chosen to use the same lawyers to both sue Defendants and prosecute its own continuing patent applications.  (Dkt. 87, Exs. B-H.)  The harm to Excelitas and Qioptiq if Energetiq were permitted to use these Defendants' own proprietary and confidential "LS2" information to either: (1) interfere with these Defendants' patent applications; or (2) draft claims in Energetiq's live patent applications, would be incalculable.

Energetiq has now given the Court several different expedited schedules, all of which are different and none of which are justified.  Energetiq's myriad permutations have only one thing in common – Energetiq is desperate for discovery to backfill a deficient complaint that it filed without evidence to support its claims of patent infringement.  So Energtiq filed a preliminary injunction motion it could not justify (immediately conceding at the April 30 hearing that it was not entitled to a preliminary injunction), as a vehicle to try to obtain discovery or catapult the case directly to trial on the merits.  But there is simply no valid justification for either course of action, because there is no risk of irreparable harm.  *New Balance*, 2015 WL 685070, at *2. Indeed, Energetiq has repeatedly argued that its infringement case for "LS2" is essentially the same as for LS1, and yet it has withdrawn its preliminary injunction request on the LS1, conceding there is no irreparable harm risk.  Because there is no risk of irreparable harm to Energetiq from "LS2" research and development outside the United States, Energetiq's extraordinary request for a window into its self-described competitor's confidential technology must be denied.  Moreover, Energetiq has now admitted that Defendants' IPR petitions, if granted, stand to resolve this case entirely or at a minimum substantially narrow the issues – just

as Congress designed.  Accordingly, the appropriate and normal course here is to stay the case

and let the IPRs proceed.

To the extent that the Court determines not to stay the litigation in its entirety pending

*inter partes* review of the asserted patent claims, the complete absence of irreparable harm at a

minimum demonstrates that this case should proceed on the normal Local Rule 16.6 and

Appendix E schedule as proposed by Defendants in the May 8, 2015 Joint Status Report.  (Dkt.

No. 86.)

Dated:  June 12, 2015                                   Respectfully submitted,


/s/ Safraz W. Ishmael                                  /s/ Shirley X. Li Cantin (with permission)
Steven M. Bauer (BBO #542531)          Shirley X. Li Cantin (BBO # 675377)
Safraz W. Ishmael  (BBO #657881)       Jonathan A. Cox (BBO # 687810)
S. James Boumil III (BBO #684361)      Wilmer Cutler Pickering Hale and Dorr LLP
PROSKAUER ROSE LLP                     60 State Street
One International Place                Boston, Massachusetts 02109
Boston, MA  02110-2600                 Tel:  (617) 526-6000
Telephone: (617) 526-9600              Fax:  (617) 526-5000
Facsimile: (617) 526-9899              shirley.cantin@wilmerhale.com
sbauer@proskauer.com
sishmael@proskauer.com                 James M. Dowd (Ca. Bar # 259578) (*pro hac
jboumil@proskauer.com                  vice*)
                                       Wilmer Cutler Pickering Hale and Dorr LLP
                                       350 South Grand Avenue, Suite 2100
                                       Los Angeles, CA 90071
                                       Tel:  (213) 443-5300
                                       Fax:  (213) 443-5400
                                       james.dowd@wilmerhale.com


**ATTORNEYS FOR**                      **ATTORNEYS FOR ASML**
**ENERGETIQ TECHNOLOGY, INC.**         **NETHERLANDS B.V., EXCELITAS**
                                       **TECHNOLOGIES CORP., and QIOPTIQ**
                                       **PHOTONICS GMBH & CO. KG,**

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 12, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  A copy of the document will be served upon Plaintiff's counsel electronically via the CM/ECF system.

*/s/ Safraz W. Ishmael*
Safraz W. Ishmael