UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ENERGETIQ TECHNOLOGY, INC., | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 15-10240-LTS |
| ASML NETHERLANDS B.V., EXCELITAS TECHNOLOGIES CORP., and QIOPTIQ PHOTONICS GMBH & CO. KG, | ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

MEMORANDUM AND ORDER ON
DEFENDANTS' RENEWED MOTION TO DISMISS,
DEFENDANTS' MOTION TO STAY, PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION, AND
THE COURT'S SCHEDULING ORDER

July 9, 2015

SOROKIN, J.

Energetiq is a Massachusetts based company holding various patents on laser pumped light sources. Doc. No. 87 ¶ 5. For some number of years predating the events at issue in this litigation it has supplied lights to Defendant ASML BV, a Netherlands company. Doc. No. 60 ¶ 5. ASML BV employees visited Energetiq in Massachusetts multiple times in furtherance of that relationship. Doc. No. 60 ¶¶ 4-10.

In 2012, ASML BV explored the possibility of Energetiq supplying laser pumped lights for ASML BV's YieldStar 250 product used in the course of semiconductor manufacturing. Doc. No. 54 ¶ 6. Energetiq declined. Id. Subsequently, ASML BV hired Defendant Qioptiq to supply the needed light source for the YieldStar 250. Id. The parties call this light source the

LS1.  At about the same time, see Doc. No. 87 ¶ 25, in October 2013, Massachusetts-based Defendant Excelitas, a maker of lighting and sensor components, purchased Qioptiq, Doc. No. 87 ¶ 9.  Then, in January 2014, ASML BV began importing the YieldStar 250 into the United States.  Doc. No. 87 ¶ 26.

Also in January 2014, Energetiq, Qioptiq, and ASML BV signed a non-disclosure agreement ("NDA") to facilitate the possibility of Energetiq supplying a laser pumped light source for Qioptiq to include in a module for use in ASML BV's YieldStar 350 product.  Doc. No. 87 ¶ 32; Doc. No. 60 ¶ 33.  Although the NDA provided that "Nothing in this Agreement prevents either party from independently pursuing or engaging others to pursue the same or similar business opportunities or technology development as long as such activities do not violate this Agreement," Doc. No. 75 at 5 ¶ 7.1, Energetiq alleges the parties understood the NDA did not contemplate that Qioptiq would compete with Energetiq for the development of a light source for the YieldStar 350, and that Energetiq would not have entered into the NDA otherwise.  Doc. No. 87 ¶ 33.  Energetiq further alleges that ASML BV told Energetiq that Qioptiq would not be a competitor, Doc. No. 87 ¶ 178, and represented the project as requiring Qioptiq to deliver a module which contained Energetiq's light source, thereby reassuring Energetiq that Qioptiq was not its competitor for this business.  Doc. No. 87 ¶ 35.

During the course of this relationship Energetiq, in Massachusetts, and Qioptiq exchanged technical information through many telephone meetings, some of which included ASML BV.  Doc. No. 60 ¶ 34.  In addition, ASML BV personnel met with Energetiq in Massachusetts on multiple occasions.  Doc. No. 60 ¶¶ 10, 12, 13.  At the same time, unbeknownst to Energetiq, Qioptiq and Excelitas began developing their own light source, the so-called LS2, to sell to ASML BV in place of Energetiq's product.  Doc. No. 87 ¶¶ 37, 38, 40.

2

Eventually, Qioptiq started sending Energetiq a series of technical requirements Qioptiq knew to be "material and false," causing Energetiq to engineer its light source according to incorrect specifications. Doc. No. 87 ¶¶ 44-65.

In September 2014, ASML BV and Qioptiq told Energetiq that Qioptiq's LS2, rather than Energetiq's light source, would be used in the Qioptiq module for the YieldStar 350. Doc. No. 87 ¶¶ 74, 75. Based on information from Qioptiq, Energetiq believes the LS2 developed by Qioptiq is "substantially similar to the Qioptiq LS1." Doc. No. 87 ¶ 42; Doc. No. 14 ¶ 21. Subsequently, both ASML BV and Qioptiq separately requested that Energetiq license one or more of its laser pumped patents. Doc. No. 87 ¶¶ 82, 83. Energetiq declined.

Thereafter, Energetiq filed this action claiming that both LS1 and LS2 infringe its patents, and claiming violations of various state common law rights. It also filed a motion for preliminary injunction. Defendants opposed the motion and filed a motion to dismiss. In light of the filing of an amended complaint (supplying some additional factual allegations and adding some additional claims), the Court denied without prejudice the first motion to dismiss. The Court has retained the motion for preliminary injunction under advisement, though Energetiq has as much as conceded that some discovery is required before proceeding with the motion. Also pending now before the Court is a renewed motion to dismiss filed by the Defendants, competing submissions regarding the schedule to govern this case, and a motion to stay filed by the Defendants.

In reviewing the motion to dismiss, the Court accepts all of the allegations in the amended complaint as true and draws all reasonable inferences in Energetiq's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). The Court does not consider facts beyond

the complaint in resolving the motion to dismiss,[1] though such facts from the parties' affidavits are considered for purposes of the personal jurisdiction analysis under the prima facie standard, see Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002), the motion to stay, and with respect to the scheduling order.

## DISCUSSION

Defendants advance a plethora of grounds to dismiss Energetiq's amended complaint. The Court addresses each in turn.

1.   Rule 15

Defendants complain that Plaintiff violated Federal Rule of Civil Procedure 15 by filing an amended complaint after the expiration of the various twenty-one day periods without obtaining either (a) leave of the Court; or (b) consent from the Defendants. Insofar as the Motion is predicated upon this theory, which is the only theory the Court discerns, it is DENIED. The Rule instructs the Court to "freely grant leave." There is no basis to deny such leave and, notably, the Defendants advance no such ground in any event. At this point, requiring Energetiq to file a motion for leave to amend – which the Court, on the present record, would inevitably allow – would only serve to unduly enhance delay and expense. See Fed. R. Civ. P. 1. Therefore, the Court construes the Defendants' motion to dismiss also as an opposition to a request for leave, denies the opposition, and allows the request for leave, nunc pro tunc, to the filing of the amended complaint, insofar as such leave was needed.

---

[1] The Court does consider the NDA, which the Plaintiff relied on in the amended complaint, but did not attach thereto. The NDA was put in the record by the Defendants. "[W]hen ... a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

2.  Jurisdiction - Overview

No party challenges the Court's subject matter jurisdiction over the patent claims. Defendant Excelitas, based in Massachusetts, advances no personal jurisdiction objection to the amended complaint. Defendants ASML BV and Qioptiq contend that the Court lacks personal jurisdiction over them.

For patent infringement claims, personal jurisdiction is decided according to Federal Circuit law. Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico, 563 F.3d 1285, 1292 (Fed. Cir. 2009) (citing Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006)). Without jurisdictional discovery the Court "must resolve all factual disputes in the plaintiff's favor." Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1231 (Fed. Cir. 2010). "[W]here the plaintiff's factual allegations 'are not directly controverted, [they] are taken as true for purposes of determining jurisdiction....'" Id. (quoting Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995)). "To survive a motion to dismiss in the absence of jurisdictional discovery, plaintiffs need only make a prima facie showing of jurisdiction." Id. Accordingly, the Court applies the prima facie standard.

3.  Personal Jurisdiction – ASML BV

Energetiq asserts patent claims concerning both the LS1 and LS2 products. Regarding each set of patent claims, it advances two theories of personal jurisdiction against ASML BV: (1) that ASML BV induced Excelitas to infringe; and (2) that ASML US acted as ASML BV's agent giving rise to personal jurisdiction in Massachusetts on the further theory that ASML US is subject to personal jurisdiction here.[2]

---

[2] Energetiq advances six patent claims against ASML BV. Count I proceeds on the following three theories against ASML BV (1) direct infringement of the '982 patent by, within the United States, using, offering for sale, selling, or importing various YieldStar 200 and 250 series products incorporating the Qioptiq LS1; (2) induced infringement by inducing its agent ASML US to infringe by using, offering for sale, selling, or importing various

5

With respect to ASML BV, Energetiq argues only that this Court has specific personal jurisdiction. [3] A court may assert specific jurisdiction upon consideration of the following three due process factors: "whether (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair."[4] Synthes (U.S.A.), 563 F.3d at 1297.

Plainly, Energetiq has satisfied the first prong of the three part jurisdictional inquiry. ASML BV has directed activities at Massachusetts --- it entered into an ongoing development relationship with Energetiq, the relationship foreseeably caused Energetiq to undertake significant activities in Massachusetts, ASML BV employees came to Massachusetts and ASML BV sent communications into Massachusetts in the course of the relationship.

Next Energetiq must demonstrate that its claims arise out of or relate to ASML BV's forum contacts. This Energetiq has done in two ways. First, it has alleged that ASML BV induced Excelitas to infringe via "research and development efforts and/or making sub-

---

YieldStar products incorporating the Qioptiq LS1; and (3) induced infringement by inducing Excelitas and Qioptiq to infringe the '982 patent by making, using, offering for sale, and/or selling the Qioptiq LS2 in the United States for incorporation in the YieldStar 350, including research and development efforts and/or making sub-components for use in the final product.

      Count II proceeds on the following theory: that ASML BV induced Excelitas and Qioptiq to infringe the '455 patent by making, using, offering for sale, and/or selling the Qioptiq LS2 in the United States. Count III alleges that ASML BV directly infringed the '138 patent by (directly or via its agent, ASML US) making, selling, using, or offering for sale the YieldStar 200 and 250 series products (which incorporate the Qioptiq LS1). Energetiq also alleges that ASML induced ASML US to do the foregoing giving rise to inducement liability. Count IV mirrors Count III except that it alleges infringement of the '943 patent. Count V mirrors Counts III and IV except that it alleges infringement of '841 patent. Count V also alleges ASML BV induced Excelitas and Qioptiq to infringe the '841 patent by making, using, offering for sale, or selling the Qioptiq LS2. Count VI purports to allege infringement of an unissued patent on the theory that the Patent Office has already approved the application for the patent.

[3] Energetiq does not contend nor could it that the Court may assert general jurisdiction over ASML BV.

[4] Defendants do not argue that the Massachusetts long-arm statute restricts the analysis. Moreover, the Massachusetts long-arm statute extends to the bounds of due process. See Hildebrand v. Steck Mfg. Co., Inc., 279 F.3d 1351, 1354 (Fed. Cir. 2002) (Federal Circuit interprets state's long-arm statute according to state precedent); Good Hope Indus., Inc. v. Ryder Scott Co., 389 N.E.2d 76, 79 (Mass. 1979) (enumerated bases for jurisdiction extend to bounds of due process); see also Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. 2011) (construing Massachusetts long-arm statute as coextensive with the Constitutional limits).

components for use in the final product, and by instructing and directing Excelitas' and Qioptiq's manufacturing of the Qioptiq LS2 according to Qioptiq's designs and specifications." Doc. No. 87 ¶¶ 91, 107, 129, 141. Excelitas's headquarters location in Massachusetts, the involvement of its subsidiary Qioptiq, and the regular physical presence in Massachusetts of Qioptiq's officers, Doc. No. 87 ¶ 15, supports a reasonable inference that the inducing activity occurred in Massachusetts. The foregoing suffices to support personal jurisdiction over ASML BV for Energetiq's various claims of indirect infringement regarding LS2.

ASML BV complains that in the absence of direct infringement in the forum the Court cannot exercise personal jurisdiction. The amended complaint omits allegations that any Defendant made, offered for sale, sold, imported, or used the LS2 product in Massachusetts. Frequently, this would end the personal jurisdiction inquiry. See HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1308 (Fed. Cir. 1999) (footnote omitted). Here, Energetiq advances claims of induced, contributory, and foreign infringement arising, allegedly, out of ASML BV's activities in Massachusetts. Section 271(b) provides, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Black letter law from the Federal Circuit establishes two elements to such a claim: "the patentee must establish 'first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'" ACCO Brands, Inc. v. ABA Locks Mfrs. Co., 501 F.3d 1307, 1312 (Fed. Cir. 2007) (quoting Minn. Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1304–05 (Fed. Cir. 2002)). Thus, a claim under this subsection certainly "arises out of or relates" to inducing conduct. Contrary to ASML BV's contention, this is not a novel proposition. "Because a patent holder may suffer economic loss both in the place where infringement is induced or contributed to and the place where a third-party ultimately

infringes the patent, courts have considered both to be the situs of the injury." Alcohol Monitoring Sys., Inc. v. Actsoft, Inc., 682 F. Supp. 2d 1237, 1247 (D. Colo. 2010) (citing Wayne Pigment Corp. v. Halox, 220 F. Supp. 2d 931, 936-37 (E.D. Wis. 2002) for ruling that "inducing activity created minimum contacts necessary for exercise of personal jurisdiction"); see also Fred Hutchinson Cancer Research Ctr. v. Branhaven, LLC, 861 F. Supp. 2d 730, 732 (E.D. Va. 2012) (finding that the inducing acts of a defendant support the exercise of personal jurisdiction over the defendant). Energetiq has established its patent claims arise out of or relate to ASML BV's inducing conduct directed at Massachusetts.

Second, Energetiq also has demonstrated that its claims arise out of or relate to ASML BV's contacts in Massachusetts in the course of the ASML BV-Qioptiq-Energetiq relationship to develop an Energetiq laser pumped light source. Energetiq's allegations support a reasonable inference that ASML BV's extensive collaboration with Energetiq and Qioptiq, including within Massachusetts, supplied not only the knowledge of Energetiq's patented technology (required for inducement), Doc. No. 100 at 8, but valuable "know-how" concerning the laser-driven light source products, "including performance data, testing results, and other knowledge," Doc. No. 87 ¶ 13, which could have provided ASML BV an expedient means of infringing it otherwise would not have had. Whether or not the patent claims "arise" out of these contacts, the patent claims do "relate" to these contacts. The Federal Circuit has found "significant that the constitutional catch-phrase [arise out of or related to] is disjunctive in nature, indicating an added flexibility and signaling a relaxation of the applicable standard from a pure 'arise out of' standard." Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1330 (Fed. Cir. 2008). As a result, the Federal Circuit's "interpretation of the 'arise out of or related to' language is far more permissive than either the 'proximate cause' or the 'but for' analyses." Id. at 1337.

Third, the exercise of personal jurisdiction must be "reasonable and fair." Synthes (U.S.A.), 563 F.3d at 1297. ASML BV bears the burden of proof on this prong. Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1367 (Fed. Cir. 2006) (citing Akro Corp., 45 F.3d at 1545-46). It has failed to bear its burden. Its current motion offers no argument or evidence on this point. Rather, ASML BV attempts to incorporate the arguments from its first motion to dismiss (Doc. No. 20), which this Court denied as moot on May 13, 2015 (Doc. No. 90). Defendant may not circumvent memoranda page limit requirements, see LR, D. Mass. 7.1(4), however, by purporting to incorporate arguments from its previous papers, and ASML BV did not seek leave to file excess pages for its current motion to dismiss. Thus, ASML BV's previous arguments are waived. That is enough for Energetiq to prevail on this prong over AMSL BV.

Moreover, considering the five "fairness" factors, Synthes (U.S.A.), 563 F.3d at 1299, the exercise of jurisdiction over ASML BV is reasonable and fair on the merits. Though based in the Netherlands, ASML BV has cultivated business relationships with at least two Massachusetts-based companies, Energetiq and Excelitas, regarding the very products and patents at issue in this litigation and has demonstrated on many occasions over the past several years the ability and willingness to undertake the burden of travel to Massachusetts in furtherance of those specific business relationships. Furthermore, the interests of the United States and Massachusetts in adjudicating the dispute, in light of the activity that has occurred here, and Energetiq's interest in obtaining effective and convenient relief, sufficiently outweigh any burden to ASML BV under these circumstances, even though ASML BV may not have any offices, property, or employees in Massachusetts. See id.

Accordingly, the Court finds Energetiq has established personal jurisdiction over ASML BV on the patent claims regarding LS2.

Considering Energetiq's claims of infringement with LS1, Energetiq sets forth no independent theories upon which to base personal jurisdiction.  Energetiq believes that "Qioptiq began making [the LS1] in Germany," and selling it to ASML BV "in mid to late 2013."  Doc. No. 87 ¶ 25.  Furthermore, ASML BV began importing the LS1 into the United States, integrated within its YieldStar 250 product, in January 2014.  Doc. No. 87 ¶ 26.  There are no allegations, however, that either LS1, the YieldStar 250, or the upgrade kit for the YieldStar 200 was made, offered for sale, sold, imported, or used in Massachusetts.  Also, there are no allegations that Massachusetts-based Excelitas was involved with the LS1 or the YieldStar 250/200, and no allegations of any other Massachusetts contacts which give rise to, or are related to ASML BV's alleged infringement, direct, induced, or contributory, via the LS1.  However, Energetiq has alleged sales of LS1 within the United States, claiming that "ASML [BV] directs ASML US, its agent for sales in the United States, to import, service, sell and offer for sale the ASML YieldStar 250 and Upgraded YieldStar 200[.]"  Doc. No. 87 ¶ 90.  Given this allegation, the Court will permit jurisdictional discovery to determine whether any allegedly infringing activity, i.e. any sales, offers for sale, use or importation of LS1 occurred within Massachusetts.

    4.        Personal Jurisdiction – Qioptiq

Energetiq argues that both general and specific jurisdiction exist over Qioptiq.  According to Energetiq, general jurisdiction exists based on the conclusion in its opposition to Defendants' motion to dismiss that "Qioptiq's U.S.-based officer and managing director (Excelitas's CEO, Mr. Nislick) resides and maintains his office in Massachusetts," and therefore, "Massachusetts acts as Qioptiq's U.S. base of operations."  Doc. No. 100 at 6-7.  The Court

rejects this argument. Qioptiq contends that "Mr. Nislick is neither an officer nor a director of Qioptiq; instead, he is a managing director of Qioptiq's parent company [Excelitas] who does not manage Qioptiq's day-to-day business." Doc. No. 102 at 7. Furthermore, Energetiq does not aver in its amended complaint, nor elsewhere attest or show that Excelitas's CEO is a managing director of Qioptiq or that Massachusetts serves as Qioptiq's U.S. base of operations, and points to no other circumstances that "render [Qioptiq] essentially at home in [Massachusetts][,]" Daimler AG v. Bauman, 134 S. Ct. 746, 749 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business."). Thus, the Court finds that there is no general jurisdiction over Qioptiq.

The analysis for specific jurisdiction over Qioptiq regarding LS2 is the same as that for ASML BV, including consideration of the fairness factors. First, "[r]epresentatives of Qioptiq regularly visit Massachusetts, and Qioptiq's officers are regularly present at its parent company, Excelitas, which is located in Massachusetts." Doc. No. 60 ¶ 38. Qioptiq was a party to the January 2014 NDA with Energetiq and ASML BV for the development of a second generation light source, it worked first-hand with Energetiq on the development, sharing information about its housing module specifications and Energetiq's patented technology, and Qioptiq engineers and scientists in Germany engaged in many telephone meetings with their Energetiq counterparts in Massachusetts to "discuss the various technical details and milestones of the program." Doc. No. 60 ¶¶ 33-34; Doc. No. 87 ¶¶ 44-65. Second, Energetiq claims, as to LS2, that "Qioptiq induced infringement of Energetiq's patents, . . . by visiting and communicating with a Massachusetts-based company, Excelitas, to coordinate, develop, and build a laser pumped plasma light source for ASML [BV's] YieldStar 350 product[.]" Doc. No. 87 ¶ 16. As alleged by Energetiq, at the same time Qioptiq was working with Energetiq with the patented technology

it was also developing its own competing product in concert with Excelitas. Energetiq believes that "at Qioptiq's direction, [Excelitas] is making and using the Qioptiq LS2 in the United States, and is in the process of coordinating the integration of the Qioptiq LS2 into the Qioptiq Modules for delivery and integration into the AMSL [BV] YieldStar 350." Doc. No. 87 ¶ 85.  Thus, Energetiq's claims regarding LS2 arise out of or relate to Qioptiq's Massachusetts contacts with both Excelitas and Energetiq.  Third, and finally, the fairness factors weigh in favor of jurisdiction here for the same reasons that apply to ASML BV.

Accordingly, the Court finds Energetiq has established personal jurisdiction over Qioptiq on the patent claims regarding LS2.

As with ASML BV, Energetiq argues no independent theory on which to base jurisdiction over Qioptiq with respect to LS1.  For the same reasons discussed above, Energetiq has not established personal jurisdiction over Qioptiq on the patent claims regarding LS1, though the Court will permit jurisdictional discovery to the same extent and for the same reasons.

5.   Patent infringement claims

Energetiq asserts claims for direct and/or indirect infringement with LS1 and LS2. Defendants argue that Energetiq fails to state any infringement claim regarding LS2 for lack of knowing what LS2 is.  Motions to dismiss and preliminary injunctions differ.  For purposes of a motion to dismiss, Energetiq has alleged enough knowledge of LS2, including being told by Defendants that it is based on a <u>customized</u> Cermax lamp, and that it has "at least a chamber with ionized gas whereby a laser provides energy to the ionized gas," Doc. No. 87 ¶ 42, to raise a plausible claim. Energetiq has otherwise sufficiently pled its patent infringement claims. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, Defendants' motion to dismiss the patent claims is DENIED.

6.  State law claims

Defendants first argue that absent personal jurisdiction regarding the patent claims, the Court cannot apply supplemental subject matter jurisdiction to the state law claims. The Court, however, has determined that personal jurisdiction exists over all Defendants with respect to federal claims, and therefore, has authority to exert supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367.

Next, Defendants argue that the Court cannot exercise personal jurisdiction over the unjust enrichment and breach of the covenant of good faith and fair dealing state law claims, which Plaintiff added to the amended complaint. First Circuit law applies to these claims as they "do not present questions that are intimately involved with the substance of the patent laws." Elecs. For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1348 (Fed. Cir. 2003) (applying regional circuit law to non-patent claims). The First Circuit applies the familiar due process analysis of "relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness," and construes the Massachusetts long-arm statute to be "coextensive with the limits permitted by the Constitution." Adelson, 652 F.3d at 80-81. "[T]he relatedness test is a 'flexible, relaxed standard,' " . . . and the analysis focuses on the relationship between the defendant and the forum. Id. at 81 (internal citations omitted). Personal jurisdiction will not be found "whenever the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect." Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005).

Defendants do not contest that personal jurisdiction applies to the three state law claims pleaded in Plaintiff's original complaint: fraud, intentional interference with advantageous business relations, and unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A. Nonetheless, they argue that there is no personal jurisdiction regarding the additional

claims because they arise out of the NDA which was negotiated in Europe and is governed by the laws of the Netherlands.  This argument misses the mark.  The due process analysis is not solely determined by where the agreement was negotiated or by what law it is governed.  What matters is the nature of the forum contacts and their relatedness to Plaintiff's claims.  Energetiq has pled sufficiently a nexus between Defendants' Massachusetts contacts and these two additional state law claims.  Moreover, these claims arise out of the same nucleus of facts and are closely linked to the other state law claims for which Defendants do not contest personal jurisdiction.

Finally, Defendants contend that Plaintiff failed to plead properly its state law claims pursuant to Fed. R. Civ. P. 12(b)(6).  The Court finds, however, that Energetiq sufficiently has alleged its state law claims under <u>Iqbal</u>.  Accordingly, Defendants' motion to dismiss these claims is DENIED.

## CONCLUSION

The Court makes the following rulings and orders.

1. The Motion to Dismiss (Doc. No. 94) is DENIED in all respects except as to personal jurisdiction over ASML BV and Qioptiq regarding LS1.  As to the exception, the Motion is DENIED WITHOUT PREJUDICE.  The parties may take limited jurisdictional discovery regarding (a) sales of LS1 in Massachusetts or other allegedly LS1 infringing activity in Massachusetts and (b) the relationship between ASML US and ASML BV for purposes of determining whether any Massachusetts activity of ASML US would support personal jurisdiction over ASML BV.

2. The Motion to Stay (Doc. No. 107) is DENIED WITHOUT PREJUDICE to renewal if the petitions are acted upon by the Patent Office.  The request for oral argument is DENIED, as argument at this time, in the Court's judgment, is not necessary.

3. The Court has reviewed the parties' joint statement regarding competing scheduling proposals and considered the parties' various written and oral arguments regarding the same. Discovery will proceed in Phases. The parties will complete Phase I by September 9, 2015. Phase I will encompass the LS1 jurisdictional discovery (#1 above) and focused discovery regarding what has transpired (or is transpiring) regarding LS2 in the United States. Plaintiff may take limited discovery regarding what, if any, allegedly infringing activity has occurred or is occurring in the United States in the course of the development of LS2. This LS2 discovery does not reach research, development, manufacturing, or sales outside the United States.

4. Seven days after the end of the Phase I discovery, the parties shall submit a joint report containing their joint or separate proposals for a schedule to govern the remainder or next phase of the case. The Court will hold a scheduling conference to discuss the same with the parties on September 22, 2015 at 3:30 p.m.

5. Energetiq's Motion for a Preliminary Injunction (Doc. No. 7) is DENIED WITHOUT PREJUDICE.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge