# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ENERGETIQ TECHNOLOGY, INC., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) Civil Action No. 1:15-cv-10240-LTS |
| v. | ) |
|  | ) |
| ASML NETHERLANDS B.V., | ) |
| EXCELITAS TECHNOLOGIES CORP., and | ) |
| QIOPTIQ PHOTONICS GMBH & CO. KG, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## DEFENDANTS' OPPOSITION TO ENERGETIQ'S
## EMERGENCY MOTION TO COMPEL

**I.     INTRODUCTION**

Plaintiff's emergency motion raises numerous issues that it never addressed with Defendants or ASML US[1] before filing the motion with this Court. In bringing this motion, Plaintiff did not comply with the Local Rules' requirement that the moving party "me[e]t and confer[] and attempt[] in good faith to resolve or narrow the issue." D. Mass. Local Rule 7.1(a)(2); *see also* Local Rule 37.1. For this reason, Defendants respectfully request that Plaintiff be precluded from filing further discovery motions absent leave of the Court.

As Plaintiff has acknowledged, Defendants have produced a "substantively-rich collection" of more than 16,000 documents in response to Plaintiff's one hundred and thirteen document requests. (Declaration of Elisabeth Oppenheimer ("Oppenheimer Decl."), Ex. 1 at 5.) This production has been a significant undertaking, which required interviewing more than thirty custodians in several countries, and collecting and reviewing more than 175,000 pages of documents in the span of six weeks. In the midst of this work, Defendants have repeatedly tried to accommodate Plaintiff's requests, both substantive and procedural. Plaintiff has no basis for requesting further action by the Court, and its motion should be denied in its entirety for the reasons discussed further below.

Addressing the Court's request for clarification on how Defendants define the LS2 and YieldStar 350 (Dkt. 146), Defendants understand the "LS2" to be Plaintiff's shorthand for the light source that will be included in the YieldStar 350 when the YieldStar 350 is ready for manufacture. The YieldStar 350, when it is released, will be ASML's next generation metrology tool. However, the YieldStar 350 is in the design development stage and is not yet ready for commercial manufacture. The YieldStar 350 will include many, many components beyond the

---

[1] Plaintiff's motion is also improper in that it attempts to compel discovery from third-party ASML US, which is based in Arizona. This response does not waive jurisdiction with respect to ASML US for any purpose, including any subsequent discovery motions.

light source at issue in this case (none of which are accused). The sole component that Plaintiff accuses of infringement is the light source (what has been referred to as the LS2). And that light source is also still in the design development stage.

Nonetheless, as with many next-generation products, the YieldStar 350 was announced before all product details and components had been completed. The Court can perhaps think of it as akin to when Apple announces a new product long before the product's actual release. Thus, the document included as Exhibit A to Plaintiff's motion refers to the *planned* next-generation YieldStar product, the YieldStar 350, but that document does not demonstrate that the light source (or any other component) of the product had been finalized. Nor does it demonstrate that any infringing activity has occurred. Again, the light source component—the *only* component in the YieldStar to which Plaintiff accuses of infringement—is still under development. It is that development work that Excelitas moved outside of the United States. No actual LS2 has been delivered to the customer in Exhibit A. No actual YieldStar 350 product has been delivered to the customer in Exhibit A.

In any event, for purposes of complying with Phase I discovery, Defendants produced documents showing work on any possible light source for the YieldStar 350. In other words, in an abundance of caution, Defendants produced documents related to any of the different designs that either have been in the past or are currently being considered for the YieldStar 350's light source. The production was thus over-inclusive in that documents were produced on designs that may not ultimately be used in the YieldStar 350.

## II. ARGUMENT

### A. Defendants Have Appropriately Produced Patent-Sensitive Documents.

Defendants are not "withholding" patent-sensitive documents. (Plf.'s Mot. at 6.) To the contrary, Defendants have made a production of patent-sensitive documents that Plaintiff itself

described as "voluminous, detailed, and highly relevant."  (Oppenheimer Decl., Ex. 1 at 9.) Plaintiff's motion appears to be primarily designed to reargue their stance regarding the Protective Order, an issue that is now moot.  Accordingly, no relief is necessary or warranted.

Plaintiff's complaints about the review procedures are overstated, but more importantly, they were ***never raised*** with Defendants before Plaintiff filed its motion.  The requests Plaintiff ***did*** make – for a larger monitor and after-hours access to WilmerHale's offices – were granted immediately, and Defendants also provided a second review computer without any request from Plaintiff.  Although Defendants did not agree to Plaintiff's request for printouts of ***every*** patent-sensitive document, Defendants have promptly provided printouts of the 531 documents that Plaintiff has specifically identified to date.  Had Plaintiff ever suggested to Defendants that it needed different review capabilities, a different production format, or more review laptops, Defendants would have provided them.  It is therefore mystifying to Defendants that Plaintiff chose to file this motion instead of asking for the accommodations it desired.

Moreover, Plaintiff's argument that the review procedures "mak[e] it nearly impossible to review over 14,000 documents in a way to facilitate depositions occurring in the next several weeks" (Plf.'s Mot. at 6) omits the highly salient fact that Plaintiff has not made diligent efforts to review the documents.  Only a single attorney has spent any time reviewing the documents (despite the availability of two review computers and more on request), and on at least two of the nine business days since documents were produced, Plaintiff conducted no document review at all.  Given the massive effort Defendants undertook to respond to Plaintiff's numerous, far-reaching discovery requests, it is inequitable for Plaintiff to make such a half-hearted review effort and then complain about insufficient time for review.

Finally, contrary to Plaintiff's arguments, the protective procedures that the parties followed until the Court's September 2 ruling (Dkt. No. 146) were neither unusual nor unnecessary.  Rather, the protections were reasonable safeguards in light of Plaintiff's highly irregular choice to use its patent prosecution counsel as its litigation counsel.  As explained in previous filings, courts across the country have recognized that the safeguards identified by Defendants are appropriate to protect documents providing "technical details of how a product works" in such cases.  *See, e.g., Voice Domain Techs., LLC v. Apple,* Inc., 2014 U.S. Dist. LEXIS 143903, *20 (D. Mass. 2014) (providing protection for "schematics, data sheets, specifications, flow charts, artwork, or formulas"); *see also* Jt. Mot. For Protective Order, Dkt. 141, at 7.  Plaintiff does not cite a single authority in support of its position that these procedures were inappropriate.

The Court's ruling on the Protective Order has now mooted most issues related to patent sensitive documents.  Any remaining issues can be worked out between the parties, as they should have been, and perhaps would have been, absent Plaintiff's premature motion.  Accordingly, Plaintiff's request for relief should be denied.

### B.  LS1 Offers for Sale In Massachusetts

Plaintiff made numerous, expansive requests for documents purportedly related to offers for sale, including, for instance:

- "All communications into, within, or out of Massachusetts, having any content relating to the LS1 or LS2, including but not limited to electronic messages, written messages, phone calls, and/or internal memoranda," Request No. 4;

- All documents "discussing current or potential business partnerships or customer relationships concerning a laser-pumped plasma light source . . . ," Request No. 7;

- "All documents concerning any phone calls, emails, or other communications, by ASML or Qioptiq, into, within or out of Massachusetts in which the YieldStar 250, YieldStar 200 Upgrade Kit, and/or LS1 was discussed," Request No. 16.

Defendants explained that these requests went far beyond anything that could be construed as an offer for sale under *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005). (*See* Oppenheimer Decl., Ex. 1 at 2.) As a compromise, Defendants suggested instead producing documents reflecting communications with Massachusetts-based customers regarding the LS1, and repeatedly requested that Plaintiff make an alternative proposal if that compromise was not acceptable. *Id.* Plaintiff rejected Defendants' proposed compromise, but never provided any alternative proposal. *Id.*

Now, and *for the first time* in its motion, Plaintiff suggests that it would drop its other requests if Defendants agree to provide "all documents concerning business communications, or potential business partnerships, with Analog Devices, Intel (Massachusetts location), and MIT Lincoln Laboratories." Plf.'s Mot. at 8. Assuming this request is limited to communications regarding the LS1, YieldStar 200 Upgrade Kit, or YieldStar 250, it is indistinguishable from the compromise that Defendants proposed and Plaintiff rejected. Thus—as they were prepared to do without any motion practice—Defendants confirm that they will make a reasonable search and confirm whether there are any documents reflecting "business communications, or potential business partnerships, with Analog Devices, Intel (Massachusetts location), and MIT Lincoln Laboratories" regarding the LS1, the YieldStar 200 Upgrade Kit, or the YieldStar 250.[2] Accordingly, no further relief is necessary.

### C.    Documents Concerning LS2 Activity in the United States

---

[2] Even more baffling is Plaintiff's request that "the Court compel . . . *ASML US* to produce all documents concerning business communications, or potential business partnerships, with Analog Devices, Intel (Massachusetts location), and MIT Lincoln Laboratories." Mot. at 8 (emphasis added). Plaintiff agreed by letter dated August 14, 2015 to modify its request to ASML US to call for "All documents regarding any offer for sale or sale in Massachusetts, of the YieldStar 250, YieldStar 200 Upgrade Kit, or LS1, to Analog Devices, Intel, and/or MIT Lincoln Labs." (Oppenheimer Decl., Ex. 2 at 5.) On August 21, 2015 ASML US responded that it had made a reasonable search and located no responsive documents. *Id.*, Ex. 3 at 10. Plaintiff cannot agree to a narrower request in writing and then suddenly reverse course in a Motion to Compel.

In response to Plaintiff's past arguments that Excelitas' research and development work in the United States should be enjoined, Defendants have previously explained that Excelitas's research and development work on the LS2 was moved out of the United States in April 2015. *See, e.g.*, Doc. No. 85, 4/30/2015 Hrg. Tr. 92:7-17 ("The Court: Do you mean that there's somebody at Excelitas and Qioptiq that's prepared to file . . . an affidavit . . . that there is no acts of research and development making offering for sale, using, or anything else of that nature, occurring with respect to the LS2, YieldStar 350, this project that there was a collaboration that ended by anybody at Qioptiq or anybody by Excelitas in the United States? Mr. Dowd: On a going-forward basis, yes."); *see also* Doc. No. 111 (June 12, 2015 Joint Status Report), at 15 (stating that there was "no LS2-specific activity of any kind taking place in the United States today" and citing to declaration by an Excelitas employee discussing the movement of Excelitas's research and development work on the LS2).

In the course of conducting the investigation necessary to respond to Plaintiff's Phase I discovery requests, Defendants' counsel learned that employees of ASML US, as well as employees of ASML BV (but not Excelitas or Qioptiq) had discussions with other companies relating to the planned YieldStar 350 in mid-2015. These discussions were not specific to the LS2, which, as explained above, is the only accused component of the YieldStar 350 and has no finalized design. The discussions also did not necessarily constitute "offers for sale," including because the YieldStar 350 is not yet ready for manufacture. Nonetheless, Defendants produced documents sufficient to show these discussions – including Exhibit A.

Plaintiff first made its request for additional documents concerning Exhibit A to its motion on August 31, the day before it filed its emergency motion. (Oppenheimer Decl., Ex. 1 at 3.) The next day, and again before Plaintiff filed its motion, Defendants replied and confirmed

that they were investigating the request.  *Id.* at 1.  Plaintiff nonetheless filed its motion *five hours* after Defendants' email, ***without ever mentioning to the Court that Defendants had already agreed to investigate this topic further***.  Apparently under the view that it could gain some strategic favor with the Court by alerting it to the presence of the document, Plaintiff rushed to file its motion so that it could make unfounded accusations about the nature of Exhibit A—i.e., that it constitutes a "sixth revision" of an "offer for sale" made by Defendants after a "long and prolonged commercial dance."  These assertions are unfounded, as Plaintiff will be able to investigate during depositions.  Indeed, as Plaintiff will learn in depositions, the "Revision: 6" notation means that the document was revised internally (inside ASML) six times—in effect, that ASML employees hit "save" six times as they were preparing the document—and not that six drafts were sent to another company.  Moreover, Plaintiff will learn that Exhibit A *was never sent* outside ASML, but was instead only used for internal tracking purposes.  In short, these are matters to address through deposition discovery—not a motion to compel.

      Moreover, even before Plaintiff's August 31 request, Defendants' and third-party ASML US's investigation related to Exhibit A (or other marketing efforts) was rigorous.  Defendants and ASML US conducted interviews of five ASML BV employees and five ASML US employees (ten custodians in total) who have pertinent sales and marketing roles, and collected the documents identified as a result of those interviews.  In addition to the documents already produced to Plaintiff, this investigation yielded only one other document in ASML US's possession related to Exhibit A.  Because that document contains confidential information of a third party that is protected by an NDA, at that third-party company's request, ASML US informed Plaintiff on September 1 that it would produce this single document immediately upon entry of a Protective Order.  (Oppenheimer Decl., Ex. 4.)  Plaintiff did not object.

Since Plaintiff's August 31 request, Defendants have gone back and conducted additional interviews with the three custodians most likely to have information relevant to Exhibit A. This redoubled effort has to date identified only four emails that have not already been produced to Plaintiff, and those emails are being produced today. In short, Defendants have followed through on their promise to investigate Plaintiff's August 31 request (without the need for judicial intervention), and have taken reasonable steps to determine whether any such additional documents related to Exhibit A exist. Defendants remain committed to doing so, and if any such documents are found through Defendants' continuing diligent efforts they will be produced. For purposes of this motion to compel, the salient fact is that Defendants and third-party ASML US have not "refused" to produce anything related to Exhibit A—which Plaintiff knew, but omitted from its filing—and have instead responded to Plaintiff's counsel's request. Therefore, no further relief is appropriate.

### III.  CONCLUSION

In what was supposed to be "limited" and "targeted" discovery, Plaintiff propounded one hundred and thirteen documents requests, including some that were extraordinarily broad. Plaintiff refused to meaningfully narrow the requests during the course of half a dozen meet-and-confers. To respond to this array of requests, Defendants have conducted a comprehensive investigation, including conducting more than thirty custodian interviews in Europe and the United States. Defendants have collected, reviewed, and produced more than 16,000 dense technical documents (comprising more than 175,000 pages). And Defendants have completed all this work, bearing the substantial disruption and cost that it entails, on an exceedingly fast pace in approximately six weeks.

Plaintiff has now attempted to blindside Defendants with requests it should have raised directly with Defendants in one of the parties' many meet-and-confers on Phase I discovery. No

relief is necessary or warranted.  Plaintiff's motion should be denied, and the Court should not permit Plaintiff to file future discovery motions absent leave from the Court upon a showing that it has complied with the requirements as stated in Local Rule 37.1.

Dated:  September 4, 2015

ASML NETHERLANDS B.V.,
EXCELITAS TECHNOLOGIES CORP.
QIOPTIQ PHOTONICS GMBH & CO. KG

By their Attorneys,

/s/ Kevin S. Prussia

Kevin S. Prussia (BBO # 666813)
Shirley X. Li Cantin (BBO # 675377)
Elisabeth M. Oppenheimer (BBO # 686312)
Dana O. Burwell (BBO # 682413)
Jonathan A. Cox (BBO #687810)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
kevin.prussia@wilmerhale.com
shirley.cantin@wilmerhale.com
elisabeth.oppenheimer@wilmerhale.com
dana.burwell@wilmerhale.com
jonathan.cox@wilmerhale.com

James M. Dowd (Ca. Bar No. 259578) (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300
Fax: (213) 443-5400
james.dowd@wilmerhale.com

**CERTIFICATE OF SERVICE**

      I, Kevin S. Prussia, hereby certify that a true copy of this document was served upon counsel of record for the plaintiff through the Court's electronic court filing (ECF) system, this 4th day of September, 2015.

                                                              /s/ Kevin S. Prussia