## Oppenheimer, Elisabeth M.

| | |
|---|---|
| **From:** | Oppenheimer, Elisabeth M. |
| **Sent:** | Tuesday, September 01, 2015 4:00 PM |
| **To:** | 'Ishmael, Safraz W.'; Boumil III, S. James |
| **Cc:** | PR Energetiq ASML; WH ASML Energetiq |
| **Subject:** | RE: Energetiq v. ASML et al |

Safraz,

Defendants assent to the motion for leave to file under seal.  With respect to your other question, we have not said that defendants are refusing to produce any documents related to ASMLUS000000051 – ASMLUS00000000060.  In light of your request made yesterday, we are verifying whether any additional documents related to ASMLUS000000051 – ASMLUS00000000060 exist.  As we have previously said, defendants are producing documents sufficient to show any purported offers for sale of the LS2 in the United States, and will complete their document production today.

Regards,

Elisabeth

---

**From:** Ishmael, Safraz W. [mailto:SIshmael@proskauer.com]
**Sent:** Tuesday, September 01, 2015 1:24 PM
**To:** Oppenheimer, Elisabeth M.; Boumil III, S. James
**Cc:** PR Energetiq ASML; WH ASML Energetiq
**Subject:** RE: Energetiq v. ASML et al

Elisabeth:

We are preparing a motion to compel regarding the below items.  To be clear, we understood your below email as saying that Defendants are refusing to produce documents relating to ASMLUS000000051 – ASMLUS00000000060 (which appears to be the sixth revision of an offer to sell the YieldStar 350 to Intel), including all prior revisions, discussions leading up the generation of the document, follow-up discussions, and the precise structure, function, and operation of the light source in the YieldStar 350 that was offered for sale.

Please let me know by 4:00 pm today whether our understanding is incorrect.

Best regards,

Safraz.


**Safraz W. Ishmael**
Senior Counsel

Proskauer
One International Place
Boston, MA 02110-2600
d 617.526.9712
f  617.526.9899
sishmael@proskauer.com

**From:** Oppenheimer, Elisabeth M. [mailto:Elisabeth.Oppenheimer@wilmerhale.com]
**Sent:** Tuesday, September 01, 2015 9:49 AM
**To:** Boumil III, S. James
**Cc:** PR Energetiq ASML; WH ASML Energetiq
**Subject:** RE: Energetiq v. ASML et al

James,

On item 1, we produced all families containing a patent sensitive member on a secure laptop because document families are typically produced together. Nonetheless, given your request, we will make an exception to this general principle and produce non-patent sensitive family members on an encrypted CD. The CD will be completed today.

On item 2, as explained in our last email, printing hard copies of every patent sensitive document would defeat the purpose of the Protective Order. It would also be contrary the procedures, which are common in patent cases, for protecting such sensitive technical material. We have promptly provided the 180 documents you requested, and you have not explained why this is insufficient.

Although you say that we have "constrain[ed] your review on this time-sensitive matter," we note that we made patent sensitive documents available for review on the morning of Tuesday, August 25. Since then, we have made our offices available at any time you requested. No one from your firm reviewed any documents on Wednesday or Friday of that week, and someone from your firm was here only for partial days the remainder of the week. Energetiq can hardly complain that it has not been able to review the documents in this matter when it has made such desultory efforts to do so.

On item 4(a), we have explained that – pursuant to the Court's order – we will produce documents sufficient to show any allegedly infringing activities, which are defined by statute to include making, using, selling, offering for sale, or importing the accused products into the United States. "Offer for sale" is a term that is well defined by the relevant caselaw. *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005), for instance, explains that an offer for sale must contain sufficient terms, including price terms, that the offeree could "make [the offer] into a binding contract by simple acceptance." A request for "documents discussing current or potential business partnerships or customer relationships concerning a laser-pumped plasma light source" goes far beyond anything that could conceivably be construed as an offer for sale. Despite several requests, you never proposed narrower language.

Your item 4(b) conflates two issues. First, your request for "documents concerning any phone calls, emails, or other communications, by ASML or Qioptiq, into, within or out of Massachusetts in which the YieldStar 250, YieldStar 200 Upgrade Kit, and/or LS1 was discussed" (Request No. 16) is overbroad, unduly burdensome, and beyond the scope of the "limited" jurisdictional discovery ordered by the Court. I repeatedly asked you for a proposal to narrow this request, and suggested at least one option, but you never responded or suggested any alternatives. Thus, defendants have conducted a reasonable investigation and determined that there are no documents showing any purported making, using, selling, offering to sell or importing the LS1 in Massachusetts.

Second, as we have discussed in several meet-and-confers, the Court's order does not authorize unlimited discovery into ASML US's activities in Massachusetts, whether or not related to the YieldStar. *See* Energetiq's Request No. 20 (calling for "documents relating to any and all activities in Massachusetts by ASML US, Inc."). ASML US has conducted a reasonable investigation and determined that there are no documents showing any purported making, using, selling, offering to sell or importing the LS1 in Massachusetts.

Energetiq's insistence on such expansive discovery stands in sharp contrast to its refusal to respond *at all* to defendants' targeted document requests. Indeed, Energetiq's demand for an immediate response to its email is particularly ironic given that Energetiq waited *thirty days* after service of defendants' document requests to announce that Energetiq did not intend to respond. We will be following up on Energetiq's failure to fulfill its own discovery obligations later today.

Regards,

Elisabeth

---

**From:** Boumil III, S. James [mailto:jboumil@proskauer.com]
**Sent:** Monday, August 31, 2015 3:57 PM
**To:** Oppenheimer, Elisabeth M.; Cox, Jonathan
**Cc:** PR Energetiq ASML; WH ASML Energetiq
**Subject:** RE: Energetiq v. ASML et al

Elisabeth,

When we had our meet and confer on Friday, you stated that you would confer with your team following our call on items 1, 4(a) and 4(b) below to get us an answer. We need to understand your updated positions as soon as possible.

On item 1, you said that you would ask your team whether all non-"patent sensitive" documents would be produced for Proskauer's use in its office, rather than refusing to produce those documents if any document in the "family" contained what you call "patent-sensitive" information. As I stated, even under the defendants' proposed protective order, we are entitled to receive all documents that are not "patent-sensitive." Please let us know today whether you hold to your process, in which case we appear to be at an impasse.

On items 4(a) and 4(b), you confirmed that we had reached an impasse. You stated that you would ask your team to better advise us exactly where you have drawn the line for the production discussed below. For example, you stated that you would ask your team if you could further define how you have construed an "offer for sale" for production purposes, and where you have drawn the line on what Massachusetts-activities you believe the Court's order reaches.

Since our call, you have produced a total of about 100 pages from ASML BV and ASML US, combined. Included in those is a document dated June 17, 2015 (ASMLUS000000051-ASMLUS000000060), which on its face is the *sixth* revision of an offer to sell made to Intel.

The production of this document alone shows the information gaps in your production to date. For example, we are entitled to all prior revisions, discussions leading up to the generation of this document (PowerPoint sales presentations, for example), and all continuing or subsequent discussions, including any purchase order or response to the produced document. In view of this proposal dated in June, we are also entitled to know exactly what the LS2 product was, and in what form it existed, at the time of this proposal. As this proposal is relevant to our obtaining a preliminary injunction, we have the right to know exactly what was offered to Intel, to be sure that the scope of the hearing includes it.

On item 2, we are also at an impasse. Your unilateral decision to constrain our review on this time-sensitive matter is unacceptable. Of the 7,000 Excelitas documents produced so far, with more apparently to come, the vast majority appear to be marked "patent sensitive." It is not your right to use this *proposed* category to sweep in substantially *all* documents that Excelitas produces. To date, you show no willingness to do anything but print a single copy of specific requested portions.

Finally, on item 3, you acknowledged that despite what your team has written in correspondence, the Defendants would be producing LS2 documents beyond those simply supporting jurisdictional issues. Thank you for agreeing that your team's language in Jonathan Cox's letter to me of August 26 and earlier correspondences could result in "confusion" and explaining that your production would not be so limited.

It appears that we are at an impasse on issues 1, 2, 4a and 4b. Please let us know whether you intend to produce these missing documents by tomorrow, the final deadline for production, or whether you believe that there is ground to compromise or resolve any of the other remaining issues. We ask for an answer by 10AM tomorrow morning, given the amount of time you have been "consulting" with your team on this and in view of the impending production deadline.

Regards,

James

**S. James Boumil III**
Attorney at Law

Proskauer
One International Place
Boston, MA 02110-2600
d 617.526.9618
f  617.526.9899
jboumil@proskauer.com
greenspaces
Please consider the environment before printing this email.

---

**From:** Boumil III, S. James
**Sent:** Friday, August 28, 2015 10:34 AM
**To:** 'Oppenheimer, Elisabeth M.'; Cox, Jonathan
**Cc:** PR Energetiq ASML; WH ASML Energetiq
**Subject:** RE: Energetiq v. ASML et al

Elisabeth,

1PM works for me.  We can discuss then.  I will be available at the below number.

Regards,

James

**S. James Boumil III**
Attorney at Law

Proskauer
One International Place
Boston, MA 02110-2600
d 617.526.9618
f  617.526.9899
jboumil@proskauer.com
greenspaces
Please consider the environment before printing this email.

---

**From:** Oppenheimer, Elisabeth M. [mailto:Elisabeth.Oppenheimer@wilmerhale.com]
**Sent:** Friday, August 28, 2015 9:33 AM
**To:** Boumil III, S. James; Cox, Jonathan
**Cc:** PR Energetiq ASML; WH ASML Energetiq
**Subject:** RE: Energetiq v. ASML et al

James,

We are happy to meet and confer, but do not understand most of the issues raised in your email.  Nonetheless, we suggest meeting at 1 pm.

1. Only 29 of the 1740 documents initially produced on the secure laptop – not a "large number" – were not labeled patent sensitive.  As I explained to you when we spoke yesterday, we will produce in the normal course any documents that are not patent sensitive and have no patent sensitive family members.  1039 non-patent

4

sensitive documents were provided to you on an encrypted CD yesterday, and we expect to produce more shortly.

2. Your request that we print out *all* patent-sensitive documents is self-evidently not a request for a "reasonable portion" of the documents. Your argument appears to be that it would be too burdensome for Energetiq to identify the documents it needs, so defendants should simply produce all documents in paper format. First, you have not explained why it is burdensome to identify the documents you need printed out. More importantly, printing out every document would defeat the entire purpose of designating documents as patent sensitive under the Protective Order.

    Moreover, defendants have produced, and will continue to produce, documents that are not patent-sensitive. Energetiq should decide what printouts it actually needs given the non-patent sensitive documents defendants have produced.

3. With respect to your third topic, Excelitas' discovery responses provide that Excelitas will produce documents "sufficient to show the research and/or development in the United States of the LS2." Aug. 12, 2015 RFP Response No. 3. As you said, we have produced a "substantively rich" collection of documents from Excelitas on this topic. If you do not believe that the contents of this production fulfill the Court's order, please explain why.

4. With respect to your final topic, we have consulted on these issues numerous times. As I explained during our previous meet-and-confers, defendants object to such overbroad requests as "documents discussing current or potential business partnerships or customer relationships concerning a laser-pumped plasma light source." Defendants will produce what is required by the Court's order – namely, documents sufficient to show any purported making, using, selling, offering to sell or importing the LS1 in Massachusetts or the LS2 in the United States.

Regards,

Elisabeth

---

**From:** Boumil III, S. James [mailto:jboumil@proskauer.com]
**Sent:** Thursday, August 27, 2015 2:21 PM
**To:** Cox, Jonathan
**Cc:** PR Energetiq ASML; WH ASML Energetiq
**Subject:** RE: Energetiq v. ASML et al

Jonathan:

From your below email, it appears that you are refusing to meet and confer. Please clarify whether that is the case. We would like to discuss the following issues with you:

1) The documents I reviewed at WilmerHale appear to include a large number of documents that are not labeled "patent sensitive." Without getting into here whether you have over-designated, at a minimum, you should be producing documents that have not been categorized as "patent-sensitive" in the usual manner—and not in accordance with your proposed heightened restrictions for patent-sensitive materials only. We want to see whether you will agree to produce these to us in accordance with the ESI Order without the need for a court order.

2) With respect to the documents currently designated patent-sensitive, this is a substantively-rich collection in which essentially all are likely to be used at least "for the preparation of court filings, pleadings, or expert reports, or for deposition or trial." We have met the requirements of your proposed protective order—we do not need to go through each document, one at a time, to explain their relevance or priority. In addition, for

many of the more technical documents with images and schematics, there is no effective way to mark any of these without printing.  We need to know whether we need to inform the Court of how you are now interpreting implementation of your proposed protective order.

3) You write that you believe that Phase I discovery is related only to jurisdictional issues, when the Court Order clearly says otherwise.  Your reply below does not withdraw that view.  We need to know whether you are refusing to produce, or are withholding documents, based on your incorrect interpretation of the order, so we can determine how to address this with the court, if necessary.

4) During my August 19 meet-and-confer with Elisabeth Oppenheimer, Elisabeth indicated that all Defendants maintained certain final positions with respect to Energetiq's requests for production, at which we appear to be at an impasse.  Among these positions were:

   a. In response to certain requests, Defendants would produce documents only "sufficient to show any making, using, selling, offering for sale, or importing" of (i) the LS2 in the United States, and (ii) the LS1 in Massachusetts.  Elisabeth told us that Defendants believe that WilmerHale is the arbiter of determining what is an "offer for sale," and that you had concluded that documents relating to the "marketing, and/or discussing current or potential business partnerships or customer relationships concerning a laser-pumped plasma light source [i.e., the LS2] for the ASML YieldStar 350 in the United States" (Request No. 7) did not rise to the level of an "offer for sale" which need to be disclosed.

   b. In response to certain requests, Defendants would produce only documents concerning communications with Massachusetts-based *customers* regarding the LS1, but would not produce "documents concerning any phone calls, emails, or other communications, by ASML or Qioptiq, into, within or out of Massachusetts [including, in particular, to Excelitas], in which the YieldStar 250, YieldStar 200 Upgrade Kit, and/or LS1 was discussed," as called for in Request No. 16; or "documents relating to any and all activities in Massachusetts by ASML US, Inc., including ASML US, Inc.'s meetings or other communications in Massachusetts in which the YieldStar 250, YieldStar 200 Upgrade Kit, and/or LS1 was discussed," as called for in Request No. 20.

The Court's Order opened discovery into (i) "allegedly infringing activity in Massachusetts" and (ii) "the relationship between ASML US and ASML BV for purposes of determining whether any Massachusetts activity of ASML US would support personal jurisdiction over ASML BV."  *Any* commercial communication relating to the LS1 or LS2 with Excelitas or others in Massachusetts is a Massachusetts-based activity subject to the Phase I discovery order.  You don't get to determine the difference between a marketing and sales meeting vs. an "offer for sale."  Energetiq's proposal distills the requests to discrete items for discovery, and Defendants have proposed no alternative.  We need to know where you are drawing the line on production, so that we can frame the question appropriately for the Court.

We note that the Court's August 7 Order states: "[t]he parties shall meet and confer regularly."  In line with that order, we have sought to meet with you today to discuss these issues, even if not to resolve them, but to narrow them for the Court.  Once again, I ask that you meet and confer on each of these issues, and provide us your position.

If you refuse to meet and confer in a meaningful manner, we will simply advise the court of that.

Regards,

James

**S. James Boumil III**
Attorney at Law

Proskauer

One International Place
Boston, MA 02110-2600
d 617.526.9618
f  617.526.9899
jboumil@proskauer.com
greenspaces
Please consider the environment before printing this email.

---

**From:** Cox, Jonathan [mailto:Jonathan.Cox@wilmerhale.com]
**Sent:** Thursday, August 27, 2015 9:52 AM
**To:** Boumil III, S. James
**Cc:** PR Energetiq ASML; WH ASML Energetiq
**Subject:** RE: Energetiq v. ASML et al

James,

There is nothing unusually burdensome about these review procedures, particularly for such sensitive material.  These are the same procedures employed routinely in other patent cases; indeed, the model order from the Northern District of California that you cited in your filing on Tuesday contains a nearly identical review protocol.  What Defendants find "bewildering" is that you are prepared to declare these procedures unacceptable after spending only a single afternoon reviewing documents.

If you have any legal authority for your position that these protections are unwarranted, we would welcome the opportunity to review it – we saw no such authority in your statement in support of your proposed protective order.  Similarly, if you have any authority for your position that a request for printouts or native versions of *all* patent-sensitive materials is appropriate and reflective of good faith, we would be eager to see it.

The balance of your email further demonstrates that you have not carefully reviewed the documents that we have already produced.  We encourage you to do so before leveling accusations and threatening motion practice.

The documents remain available for your review in our Boston office.  As I stated in my letter, we have already provided an external monitor, and we are happy to discuss any other reasonable accommodations that would allow you to review these documents in our office in greater comfort.

Best regards,

Jonathan

---

**From:** Boumil III, S. James [mailto:jboumil@proskauer.com]
**Sent:** Thursday, August 27, 2015 9:48 AM
**To:** Cox, Jonathan
**Cc:** PR Energetiq ASML; WH ASML Energetiq
**Subject:** RE: Energetiq v. ASML et al

Jonathan:

Further to the below email, are you available to meet and confer at 10AM today?  If not, please provide any other time that you are around today.

Regards,

James

**S. James Boumil III**
Attorney at Law

[Proskauer](#)
One International Place
Boston, MA 02110-2600
d 617.526.9618
f  617.526.9899
[jboumil@proskauer.com](#)
greenspaces
Please consider the environment before printing this email.

---

**From:** Boumil III, S. James
**Sent:** Wednesday, August 26, 2015 7:08 PM
**To:** 'Cox, Jonathan'
**Cc:** PR Energetiq ASML; WH ASML Energetiq
**Subject:** RE: Energetiq v. ASML et al

Jonathan:

Please let us know your availability to meet and confer on these issues tomorrow morning.

The review procedures are unacceptable and are hampering our review of these materials.  Based on my initial review, the great majority of these documents are necessary "for the preparation of court filings, pleadings, or expert reports, or for deposition or trial."  It would be truly burdensome, both for us and for you, to require me to identify the few documents we currently see of limited value, and then have you cull those few remaining documents out.  We are not going to go through each of maybe 1,600 of the 1,700 produced documents and explain why we need each of them.  Under the protective order that *you* proposed, we are entitled to these documents.

Furthermore, your request for an explanation of "why any of this information (highly sensitive technical material) is relevant to the limited Phase I jurisdictional discovery that is permitted by the Court's order" is bewildering.  The Court's Orders of July 10 and August 7 permit discovery not only into jurisdictional issues, but also into what has transpired (or is transpiring) regarding LS2 in the United States.  See, e.g., July 10 Order at 15 ("Plaintiff may take limited discovery regarding what, if any, allegedly infringing activity has occurred or is occurring in the United States in the course of the development of LS2.").

If you are in fact withholding technical LS2 documents because you believe that the only issues in Phase I discovery are jurisdictional in nature, we may need to move to compel or for contempt.  In any event, if you are truly demanding an explanations for the relevance of these documents -- which you produced -- we need an immediate meet-and-confer to determine whether we can resolve any issues or again need the Court's expedited help.

I suggest 10AM tomorrow morning for a discussion.  Please let us know if you are available then.

Regards,

James

**S. James Boumil III**
Attorney at Law

[Proskauer](#)
One International Place
Boston, MA 02110-2600
d 617.526.9618
f  617.526.9899
[jboumil@proskauer.com](#)

greenspaces
Please consider the environment before printing this email.

**From:** Cox, Jonathan [mailto:Jonathan.Cox@wilmerhale.com]
**Sent:** Wednesday, August 26, 2015 5:26 PM
**To:** Boumil III, S. James
**Cc:** PR Energetiq ASML; WH ASML Energetiq
**Subject:** RE: Energetiq v. ASML et al

James,

Please see the attached.

Best regards,

Jonathan

**From:** Boumil III, S. James [mailto:jboumil@proskauer.com]
**Sent:** Wednesday, August 26, 2015 11:37 AM
**To:** Cox, Jonathan
**Cc:** PR Energetiq ASML; WH ASML Energetiq
**Subject:** Energetiq v. ASML et al

Jonathan:

Thank you for holding a conference room for me today.  However, because the documents that you provided me yesterday are voluminous, detailed, and highly relevant to the issues in the case, it is difficult (if not impossible) to review them productively on a small laptop screen with no ability to print.

As you know, we object to the procedure you have proposed for this document review, but until the court enters its order, this is our request in response to the order as *you* have proposed it, for copies of all documents you have produced to date for use at our office.  Furthermore, because paper copies will not be sufficient for many of the documents (e.g., native format files and standalone photographs which have their own metadata describing them), pursuant to the ESI order entered yesterday, please also provide the documents you produced yesterday in native format with the accompanying metadata.

We will be following up shortly with concerns about the production and documents that appear to be missing.  But for now, given the timing in the Court's scheduling order, please let us know if we can have these by the end of the day.

Regards,

James

**S. James Boumil III**
Attorney at Law

Proskauer
One International Place
Boston, MA 02110-2600
d 617.526.9618
f  617.526.9899
jboumil@proskauer.com

greenspaces
Please consider the environment before printing this email.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure.

If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*