**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ENERGETIQ TECHNOLOGY, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>ASML NETHERLANDS B.V., )<br>EXCELITAS TECHNOLOGIES CORP., and )<br>QIOPTIQ PHOTONICS GMBH & CO. KG, )<br><br>Defendants. ) | Civil Action No. 1:15-cv-10240-LTS |

**DEFENDANTS' OPPOSITION TO ENERGETIQ'S MOTION TO DISMISS
DEFENDANTS' INEQUITABLE CONDUCT COUNTERCLAIMS AND
MOTION TO STRIKE AFFIRMATIVE DEFENSES (DKT. 137)**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL ALLEGATIONS ................................................................................3

III.  LEGAL STANDARD............................................................................................4

IV.   ARGUMENT .........................................................................................................5

      A.    Dr. Smith Acted With Specific Intent To Deceive The PTO. ...................5

      B.    A Knowingly False Claim For Small Entity Status Is Material................7

      C.    A Non-Exclusive License Disqualifies Small Entity Status. ...................9

      D.    Payment Of Fraudulently Withheld Fees Does Not Preclude
           Counterclaims For Inequitable Conduct. ...............................................12

V.    CONCLUSION.....................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bose Corp. v. Lightspeed Aviation, Inc.*,
    691 F. Supp. 2d 275 (D. Mass. 2010) ...................................................................4, 5

*Cordell v. Howard*,
    879 F. Supp. 2d 145 (D. Mass. 2012) ......................................................................4

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009).............................................................................4, 5

*Foley v. Wells Fargo Bank, N.A.*,
    772 F.3d 63 (1st Cir. 2014) ......................................................................................4

*Nilssen v. Osram Sylvania, Inc.*,
    504 F.3d 1223 (Fed. Cir. 2007)........................................................................ *passim*

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
    695 F.3d 1285 (Fed. Cir. 2012)........................................................................2, 3, 6

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*,
    984 F.2d 1182 (Fed. Cir. 1993)................................................................................9

*Rohm & Haas Co. v. Crystal Chem. Co.*,
    722 F.2d 1556 (Fed. Cir. 1983)................................................................................8

*Scanner Technologies Corp. v. ICOS Vision Sys. Corp. N.V.*,
    528 F.3d 1365 (Fed. Cir. 2008)................................................................................8

*Therasense, Inc. v. Becton, Dickinson and Co.*,
    649 F.3d 1276 (Fed. Cir. 2011).........................................................................8, 11

*Ulead Systems, Inc. v. Lex Computer & Management Corp.*,
    351 F.3d 1139 (Fed. Cir. 2003)....................................................................... *passim*

**FEDERAL RULES & REGULATIONS**

37 C.F.R. § 1.27 ...........................................................................................2, 9, 10, 11

37 C.F.R. § 1.28 ......................................................................................................1, 12

37 C.F.R. § 121.802 ......................................................................................................6

Fed. R. Civ. P. 9(b) ...................................................................................................4, 5

Fed. R. Civ. P. 12 .........................................................................................................................4, 5

## I.      INTRODUCTION

Energetiq, through its named inventor, claimed small entity status despite knowing that it had granted at least one license that disqualified it from that benefit as early as March 2012. *See, e.g.*, Dkt. 133, Counterclaims at ¶¶ 27-32.[1]  Energetiq does not contend that these allegations— either (i) that it granted a disqualifying license or (ii) that its inventor knew of that fact—are inadequately plead.  Nor is there any dispute that this information was withheld from the Patent Office, and, in fact, continues to be withheld.  Instead, Energetiq rests its Motion on four points, none of which are defensible.

*First*, Energetiq contends that after receiving Defendants' inequitable conduct counterclaims and defenses, it disposed of these claims by paying the Patent Office over $23,000 in fees that it had fraudulently withheld.  Dkt. 137 ("Mtn.") at 13-14.  But payments of small entity fees made in ***bad faith***—the actual conduct alleged—are not excused by repayment. *Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1150 (Fed. Cir. 2003) ("To be sure, if a patentee makes a request to correct incorrect payment of fees as a small entity knowing that it does not satisfy the good faith error standard of section 1.28(c), the patentee may be found to have engaged in inequitable conduct.").[2]  Whether Energetiq acted with the specific intent to deceive the Patent Office, or instead can prove some good-faith explanation for its knowing misrepresentation, is a question for the fact-finder.  It cannot be determined at the motion to dismiss stage where, as here, specific intent has been adequately pled.  *See Nilssen v. Osram*

---

[1] In its recently-filed notices to the Patent Office paying the previously withheld fees, Energetiq admits that Defendants' allegations implicate fees due after December 2007.  *See* Exs. 1-6 to Declaration of Dana O. Burwell.

[2] *See also* 37 C.F.R. § 1.28(c) ("If status as a small entity is established ***in good faith***, and fees as a small entity are paid ***in good faith***, in any application or patent, and it is later discovered that such status as a small entity was established in error, … the error will be excused upon [submission, itemization, and deficiency payments required in paragraphs (c)(1) and (c)(2)]." (emphasis added)).

*Sylvania, Inc.*, 504 F.3d 1223, 1232 (Fed. Cir. 2007) ("The PTO relies on applicants to accurately represent their fee status, and it is for a fact-finder to evaluate whether any intentional misrepresentations occur in doing so.").

**Second**, Energetiq suggests that fraudulently paying small entity fees cannot be considered inequitable conduct because such conduct is supposedly not material.  Mtn. at 9-11.  The Patent Office disagrees:  "Improperly, and with intent to deceive, … paying fees as a small entity, shall be considered as fraud practiced or attempted on the Office."  37 C.F.R. § 1.27(h)(2).  There is no Federal Circuit holding that supports Energetiq's position, and several that contradict it (as discussed below).  Indeed, the *Outside the Box* case cited by Energetiq did not decide this question, but instead states:  "[o]n its face, it appears that a false declaration of small entity status would fall within the definition of an 'unmistakably false affidavit,' particularly since a party that claims entitlement to small entity status does so in a sworn written declaration[.]"  *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1294 (Fed. Cir. 2012).

**Third**, Energetiq's Motion confirms that it made a deliberate choice to claim small entity status; that this was not a good faith "mistake."  Energetiq's proffered excuse for doing so—that non-exclusive licenses supposedly do not disqualify small entity status—is not only incorrect, it is also not credible.  Section 509 of the Patent Office's Manual of Patent Examining Procedure ("MPEP") states unequivocally:  "A grant of a non-exclusive license to a non-small entity will disqualify applicant from claiming small entity status."  MPEP § 509.02.  It is telling that, against this clear Patent Office rule, Energetiq can cite only a non-controlling dissent that does not even support Energetiq's statement of the law.  Here again, it is for the fact-finder to decide whether Energetiq's violation of an express MPEP rule is good faith.  *Nilssen*, 504 F.3d at 1232.

*Fourth*, Energetiq argues that Defendants have plead specific intent by relying solely on Energetiq's "motive" to save prosecution costs. Mtn. at 7. Not so. Defendants have plead—and Energetiq does not contest—that at least named inventor Dr. Smith knew of and deliberately withheld from the Patent Office the fact that Energetiq had licensed the asserted patents to KLA-Tencor, a corporation with over 500 employees. This allegation is precisely what was missing from *Outside the Box*, the case Energetiq relies upon in challenging Defendants' specific intent allegations here.

For these reasons, and those explained further below, Energetiq's attempt to avoid discovery into the inequitable conduct that it committed to obtain the patents-in-suit should be rejected.

## II.    FACTUAL ALLEGATIONS

Each Defendant has plead a counterclaim and affirmative defense of inequitable conduct based on substantially the same allegations. These allegations are summarized below:

- A named inventor on each of the asserted patents, Donald K. Smith, consistently claimed "small entity" status during the prosecution and maintenance of the asserted patents before the United States Patent and Trademark Office. *See, e.g.,* Dkt. 133, Counterclaims at ¶ 25.

- Energetiq has licensed the asserted patents to entities that are too large to qualify as "small entities." For example, on March 28, 2012, Energetiq CEO Paul Blackborow testified before Congress that "Energetiq's LDLS technology and products are used today in the factories of Intel and other U.S. and overseas manufacturers for the detection of defects on silicon wafers as they pass through the manufacturing process. We have licensed one of Intel's largest capital equipment suppliers to incorporate the LDLS technology into their inspection and measurement tools." On information and belief, this "capital equipment supplier[]" is KLA-Tencor, a corporation with more than 500 employees. *Id*. at ¶ 27.

- In his February 6, 2015 declaration in support of Energetiq's Motion for a Preliminary Injunction, Dr. Smith referred to and attached a July 22, 2014 document showing licensing income in excess of $100,000, which demonstrates Dr. Smith's awareness of Energetiq's licensing activities. Because Dr. Smith was aware of Energetiq's licensing activities, his representations to the Patent and Trademark Office claiming "small entity" status for Energetiq were knowingly false. *Id*. at ¶ 30-32.

- Dr. Smith's knowingly false representations were also made with specific intent to deceive. Dr. Smith has a clear motive to falsely claim "small entity" status. Energetiq has stated throughout this litigation both that it is highly conscious of costs and that it requires patent prosecution in order to be sustainable as a company. For example, Energetiq has admitted that "Energetiq cannot compete with this size [of ASML and Qioptiq] and the lower price margins that such a size assuredly affords. Instead, it must rely heavily on patent protection to recoup its investment." Energetiq's Memo. in Supp. of Mot. for Prelim. Inj. at 18 (Dkt. No. 8). Similarly, Energetiq admitted that "[a] large research and development effort is required to maintain [Energetiq's] status [as a sole-source supplier]. This research and development effort is only sustainable with patent protection." Smith Decl. in Supp. of Mot. for Prelim. Inj. ¶ 60. These statements demonstrate that Dr. Smith has a motive to falsely claim "small entity" status in order to minimize the costs of his patent prosecution efforts, and Dr. Smith's statements to the Patent and Trademark Office were made with specific intent to deceive. *Id*. at ¶ 33.

## III.   LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court must "determine whether the factual allegations in the [] complaint set forth 'a plausible claim upon which relief may be granted.'" *Foley v. Wells Fargo Bank, N.A.,* 772 F.3d 63, 71 (1st Cir. 2014). All factual allegations are taken as true, and all reasonable inferences are drawn in favor of the claimant. *Cordell v. Howard*, 879 F. Supp. 2d 145, 152 (D. Mass. 2012); *Bose Corp. v. Lightspeed Aviation, Inc.*, 691 F. Supp. 2d 275, 281-82 (D. Mass. 2010) (denying motion to dismiss inequitable conduct counterclaim).

Rule 9(b) governs the pleading of inequitable conduct and requires "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009). "A *reasonable inference* is one that is plausible and that flows logically from the facts alleged, including any indications of candor and good faith." *Id*. at 1329 n.5.

- 4 -

Energetiq also moves under Rule 12(f), which allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike defenses under Rule 12(f) are disfavored, and are only allowed when it is "beyond cavil that the defendant could not prevail on [their defenses]."  *Bose*, 691 F. Supp. 2d at 278 (quoting *Honeywell Consumer Prods., Inc. v. Windmere Corp.*, 993 F.Supp. 22, 24 (D. Mass. 1998)).

## IV.    ARGUMENT

### A.    Dr. Smith Acted With Specific Intent To Deceive The PTO.

As a threshold matter, Energetiq cites the wrong legal standard to be applied at the pleading stage.  *See* Mtn. at 4 ("To meet the clear and convincing standard, an inference of deceptive intent must be 'the single most reasonable inference able to be drawn from the evidence.'" (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).  *Exergen*, which Energetiq cites in its previous sentence, makes the difference clear, stating:

> ***In contrast to the pleading stage***, to prevail on the merits, the accused infringer must prove both materiality and intent by clear and convincing evidence. *See Star Scientific*, 537 F.3d at 1365. Whereas an inference of deceptive intent must be ***reasonable and drawn from a pleading's allegations*** of underlying fact to satisfy Rule 9(b), this inference must be "the <u>single most reasonable</u> inference able to be drawn ***from the evidence*** to meet the clear and convincing standard." *Id*. at 1366.

*Exergen*, 575 F.3d at 1329 n.5 (bold italics added, underline in original).  Defendants' allegations of specific intent only need to be "plausible and [] flow[] logically from the facts alleged" in order to meet Rule 9(b).  *Id*.

Energetiq's brief compounds this error by ignoring a core allegation of Defendants' inequitable conduct claim.  Mtn. at 7-8 (arguing Defendants have provided "no reason to believe

that such mistakes [in claiming small entity status] occurred in bad faith (e.g., they do not dispute that at all relevant times Energetiq employed substantially fewer than 500 employees, thus meeting the applicable size requirements for small entities under 37 C.F.R. § 121.802).").  In particular, Defendants pled that Dr. Smith knew at all relevant times that Energetiq had licensed the asserted patents to a corporation with more than 500 employees, and that he deliberately withheld that information from the Patent Office.  Dkt. 133, Counterclaims ¶¶ 27-32.  Energetiq does not acknowledge this central allegation *once* in the entirety of its Motion.

This allegation squarely distinguishes the *Outside the Box* case upon which Energetiq relies.  *Outside the Box* was at the trial stage, not the pleading stage, and found that there was no evidence of specific intent "[s]pecifically" because "there was no evidence that anyone involved in the patent prosecution knew that a patent license had been granted to a large entity and deliberately withheld that information in order to pay small entity fees."  *Outside the Box*, 695 F.3d at 1294.  The evidence *Outside the Box* found lacking is exactly what Defendants' have pled with respect to Dr. Smith in this case.  Dr. Smith was involved in the patent prosecution (as a named inventor), knew that a patent license had been granted to at least one large entity (KLA-Tencor), and deliberately withheld that information in order to pay small entity fees.  Dkt. 133, Counterclaims ¶¶ 27-32.  Thus, what separates Dr. Smith's conduct from that of other small entities is not his motive to pay small entity fees (which Energetiq does not dispute), it is his knowledge that Energetiq licensed disqualifying entities.  Energetiq has ignored this allegation because there is no basis to refute it.

Beyond the motive to pay small entity fees, during the course of this case, Energetiq has demonstrated additional motives to hide its licenses from the Patent Office so that it could claim "small entity" status.  For example, Energetiq has represented to the Court that it "has remained

steadfastly unwilling to license its patents" (Dkt. 8 at 14), and has cast itself as a "small company" no less than five times (*see* Dkt. 8 at 2, 3, 18). Energetiq has separately argued that "there are only two major potential customers" for the technology at issue – ASML and KLA-Tencor. *See id.* at 14. Dr. Smith thus had reason to try to hide the fact that Energetiq licensed KLA-Tencor to all of the patents in suit in exchange for money. Energetiq's status as a large-entity licensor, the same fact that Dr. Smith hid from the Patent Office, is inconsistent with its argument to this Court that practicing the patents-in-suit would result in irreparable harm.

Energetiq argues that it is implausible for anyone to "knowingly jeopardize" a patent to save money (a merits argument). Mtn. at 8. But it is for the fact-finder to evaluate the decisions made by Dr. Smith and determine whether intentional misrepresentations were made, even if in hindsight the consequences seem to outweigh the risk of being caught. *See Nilssen*, 504 F.3d at 1232 ("The PTO relies on applicants to accurately represent their fee status, and it is for a fact-finder to evaluate whether any intentional misrepresentations occur in doing so."). And, as discussed above, Dr. Smith had reason to hide the KLA-Tencor license from the Patent Office beyond saving money – including because this license is inconsistent with Energetiq's claims of irreparable harm in this case. Indeed, Energetiq's supposed "common sense" argument is directly contrary to the expressed concerns of the Patent Office "[f]rom the origin of the small entity system, … that small entity status might be abused by unqualified entities." *Ulead*, 351 F.3d at 1145. Having more than adequately plead this element of inequitable conduct, Defendant should be permitted to take discovery on Energetiq's and Dr. Smith's specific intent.

**B.      A Knowingly False Claim For Small Entity Status Is Material.**

Energetiq's attempt to excuse knowingly false claims of small entity status for lack of materiality is contrary to the case law Energetiq cites. The fact that payment of small entity fees might be characterized as an "administrative matter" does not permit patent applicants to

intentionally deceive the Patent Office without consequence.  *See Ulead*, 351 F.3d at 1146 ("the misrepresentation that Lex qualified as a small entity was material to the PTO's acceptance of reduced maintenance fees, and thus, survival of the patent.  As such, at least a threshold level of materiality has been established as a matter of law." (citing *Gen. Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1411 (Fed. Cir. 1994) (finding inequitable conduct due to intentionally false statement in petition to make special)).

Energetiq concedes (as it must) that in cases of "affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) (en banc). Attempting to excuse Dr. Smith's "unmistakably false affidavit," however, Energetiq invents a supposed exception to this clear rule from *Therasense* – erroneously arguing that *Therasense* "retains the condition" that misconduct is material only when the "patentability of a claim [is] implicated."  Mtn. at 10.  Energetiq is incorrect, and this has never been the law.  In fact, even before *Therasense*, the Federal Circuit specifically rejected the "view that inequitable conduct cannot be shown absent a misrepresentation that bears on the patentability of the claims in the application."  *Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1375 (Fed. Cir. 2008) (citing *Ulead* and *Nilssen*)).

Furthermore, Energetiq's claim that cases like *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556 (Fed. Cir. 1983) "are [not] even close to analogous to the alleged underpayment of an administrative fee" (Mtn. at 10), is refuted by *Ulead*, which specifically quoted *Rohm's* observation that "there is no room to argue that submission of false affidavits is not material." *Ulead*, 351 F.3d at 1146 (quoting *Rohm*, 722 F.2d at 1561).  Indeed, contrary to Energetiq's argument, the Federal Circuit has held that the conduct of an applicant who conceals information

uniquely in their possession (e.g., the truth about "small entity" status) is "*particularly egregious* because, unlike the applicant's failure to disclose, for example, a material patent reference, the examiner has no way of securing the information on his own."  *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1193 (Fed. Cir. 1993) (emphasis added).

Here, there is no way the patent examiner could have known the truth, as Dr. Smith did, that Energetiq had licensed the asserted patents to a large entity.  Instead, the Patent Office was forced to rely on Dr. Smith's affirmative false representation in accepting small entity fees before and after the patents issued.  In such circumstances, the Federal Circuit has found that "we see no reason why [inequitable conduct] should not extend into [contexts] where the allegation is that inequitable conduct has occurred after the patent has issued and during the course of establishing and paying the appropriate maintenance fee.  In this context, it is equally important that the PTO receives accurate information from those who practice before it."  *Ulead*, 351 F.3d at 1144; *see also Nilssen*, 504 F.3d at 1233 (affirming finding that patents in suit unenforceable due to inequitable conduct in improperly claiming small entity status).[3]

### C.    A Non-Exclusive License Disqualifies Small Entity Status.

Energetiq does not dispute that Defendants have adequately pled that Energetiq licensed the asserted patents to an entity that does not qualify for small entity status.  Under MPEP § 509.02, that ends the inquiry into whether Defendants have adequately plead that Dr. Smith's affidavit was false:  "A grant of a non-exclusive license to a non-small entity will disqualify applicant from claiming small entity status."

---

[3] While noting that the Patent Office "will generally not question any assertion of small entity status that is made in accordance with the requirements of this section," 37 C.F.R. § 1.27(f) specifically points to paragraph (h), which explicitly counsels against Energetiq's position here: "Improperly, and with intent to deceive, … paying fees as a small entity, shall be considered as fraud practiced or attempted on the Office."  37 C.F.R. § 1.27(h).

Energetiq nevertheless argues that "[w]ithout alleging that an *exclusive* license was granted, Defendants fail to show that 'any rights in the invention' were conferred in contravention of 37 C.F.R. § 1.27."  Mtn. at 12 (emphasis added).  As MPEP § 509.02 demonstrates, however, Energetiq is applying an erroneous legal standard.  A non-exclusive license to a non-small entity is every bit as disqualifying as an exclusive license.

The length to which Energetiq must reach even to make this argument is telling. Energetiq does not cite a single Federal Circuit holding in support of its position, instead citing only Judge Newman's dissent in *Ulead*.  Energetiq's position has no merit for at least three reasons.

*First*, Energetiq ignores the majority opinion in *Ulead*, which held that it is "undisputed" that a non-exclusive license to a large entity bars small entity status.  *Ulead*, 351 F.3d at 1142.

*Second*, Energetiq's suggestion that Judge Newman's dissent somehow recognized a "critical distinction" between exclusive and non-exclusive licenses for purposes of claiming small entity status (Mtn. at 12) is incorrect.  What Judge Newman actually considered in her dissent was an old PTO form that is no longer required to claim small entity status – not the applicable regulations.  *Ulead*, 351 F.3d at 1153-54 (Newman, J., concurring-in-part, dissenting-in-part) (noting that the PTO form "paraphrased and shortened" the text of the regulation to say that "if the rights that the entity possessed 'are not exclusive,' the applicant should list those 'having rights in the invention'").  Furthermore, Judge Newman never argued that nonexclusive licenses were not disqualifying; her argument was that the fact that a real estate attorney filled out this now-discarded PTO form *incorrectly* should not be sufficient to prove intent.  *Id.*  Judge Newman did not address MPEP § 509.02's clear rule that a "grant of a non-exclusive license to a non-small entity will disqualify applicant from claiming small entity status," and in no way

- 10 -

suggested that when MPEP §509.02 states "non-exclusive" it actually means "exclusive" – as Energetiq now apparently contends.

**Third**, MPEP § 509 itself explains why Energetiq's position is flat wrong, in no uncertain terms, and cites *Ulead* as its authority:

> The term "license" in the definitions includes nonexclusive as well as exclusive licenses and royalty free as well as royalty generating licenses. Implied licenses to use and resell patented articles purchased from a small entity, however, will not preclude the proper claiming of small entity status. Likewise, an order by an applicant to a firm to build a prototype machine or product for the applicant's own use is not considered to constitute a license for purposes of the definitions. ***A grant of a non-exclusive license to a non-small entity will disqualify applicant from claiming small entity status.*** *See Ulead Systems, Inc. v. Lex Computer & Management Corp.*, 351 F.3d 1139, 1142, 69 USPQ2d 1097, 1099 (Fed. Cir. 2003).

MPEP § 509.02 (emphasis added). Thus, Judge Newman's dissent in *Ulead* does not excuse Dr. Smith's "unmistakably false affidavit." *Therasense*, 649 F.3d at 1292. That Energetiq is plainly aware of MPEP § 509 and still argues to the contrary emphasizes its lack of any good faith reason for claiming small entity status in the first place.

Remarkably, Energetiq's lack of candor with the Patent Office has continued even after Defendants served their inequitable conduct claims. In the same filings where Energetiq paid $23,000 in fees dating back to December 2007, Energetiq states that it "believes that rights in the invention claimed in the [asserted patents] have not been assigned, granted or conveyed to any concern that does not qualify for small entity status, as described in 37 C.F.R. § 1.27 and MPEP 509." *See, e.g.*, Exs. 1-6. Energetiq's "belief" statement fails to track the cited regulations, which inquire whether the entity claiming small entity status has "assigned, granted, conveyed, ***or licensed*** … any rights in the invention to any person, concern, or organization which would not qualify for small entity status." 37 C.F.R. § 1.27 and MPEP § 509 (emphasis added). Of

course, Energetiq could not truthfully represent to the Patent Office that it has not "licensed" the patents – so it chose to conceal that fact by omission.

Finally, Energetiq observes that if non-exclusive licenses disqualify small entity status, then every "company that licenses technology on [a] non-exclusive basis, including by way of settlements in litigations, would be required to pay a large entity fee to the Patent Office." Mtn. at 12. That is, in fact, the law. *Nilssen*, 504 F.3d at 1231 ("The clear import of the PTO regulation benefitting small entities is to ensure that inventors currently receiving a revenue stream from or reasonably expected to receive a revenue stream from an entity that is not itself entitled to pay small entity fees should not be able to claim that right.").

### D. Payment Of Fraudulently Withheld Fees Does Not Preclude Counterclaims For Inequitable Conduct.

Defendants have adequately pled that Energetiq paid small entity fees in bad faith. Accordingly, Energetiq's invocation of 37 C.F.R. § 1.28(c) does not "moot[] any residual or going-forward questions of small entity status" or "dispose of inequitable conduct counterclaims and defenses." Mtn. at 13. To the contrary, the Federal Circuit has held that "if a patentee makes a request to correct incorrect payment of fees as a small entity knowing that it does not satisfy the good faith error standard of section 1.28(c), the patentee may be found to have engaged in inequitable conduct." *Ulead*, 351 F.3d at 1150.

Energetiq's defense on specific intent ignores the key fact that Dr. Smith knew of the disqualifying license; its defense on materiality is contrary to the law as shown above; and its defense on the license is directly refuted by the very regulation that Energetiq cites. These facts, as plead by Defendants and demonstrated by Energetiq's own motion, show that Energetiq had no good faith basis to claim "small entity" status in the first place. None of this is mooted simply by Energetiq's decision to pay the fees it should have paid over the last seven years to try to

avoid "costly discovery into the issue" (Mtn. at 14) – especially given its prior statements to the Court that "before discovery, the [claimant] is unable to investigate the half-truths, misleading statements, or full record, which the [movant] ha[s] kept to [itself] at this early stage."  Dkt. 52 (Energetiq Opp. to Defendants' Mtn. to Dismiss) at 4 n.3.

Energetiq's final assertion – that even if Dr. Smith intentionally deceived the Patent Office, the asserted patents should still be enforceable – is contrary to Federal Circuit authority finding patents unenforceable for the deliberately false payment of small entity fees.  *See Nilssen*, 504 F.3d at 1233 (affirming finding that patents in suit were unenforceable by inequitable conduct in claiming small entity status).  It also puts the cart before the horse. Whether unenforceability is warranted can only be determined after reviewing the full record and conduct of those involved in the prosecution of the asserted patents.

## V.     CONCLUSION

For the reasons stated above, Energetiq's Motion to Dismiss the Defendants' counterclaims and affirmative defenses for inequitable conduct should be denied.

Respectfully submitted,

ASML NETHERLANDS B.V.,
EXCELITAS TECHNOLOGIES CORP.
QIOPTIQ PHOTONICS GMBH & CO. KG

By their Attorneys,

/s/  *Kevin S. Prussia*

Kevin S. Prussia (BBO # 666813)
Shirley X. Li Cantin (BBO # 675377)
Elisabeth M. Oppenheimer (BBO # 686312)
Dana O. Burwell (BBO # 682413)
Jonathan A. Cox (BBO #687810)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
kevin.prussia@wilmerhale.com
shirley.cantin@wilmerhale.com
elisabeth.oppenheimer@wilmerhale.com
dana.burwell@wilmerhale.com
jonathan.cox@wilmerhale.com

James M. Dowd (Ca. Bar No. 259578) (*pro hac vice*)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel: (213) 443-5300
Fax: (213) 443-5400
james.dowd@wilmerhale.com

Dated:  September 4, 2015

**CERTIFICATE OF SERVICE**

I, Dana O. Burwell, hereby certify that a true copy of this document was served upon counsel of record for the plaintiff through the Court's electronic court filing (ECF) system, this 4th day of September, 2015.


/s/ *Dana O. Burwell*
Dana O. Burwell (BBO # 682413)