**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ENERGETIQ TECHNOLOGY, INC., <br><br>         Plaintiff, <br><br> v. <br><br> ASML NETHERLANDS B.V., <br> EXCELITAS TECHNOLOGIES CORP., and <br> QIOPTIQ PHOTONICS GMBH & CO. KG, <br><br>         Defendants. | Civil Action No. 1:15-cv-10240-LTS |

**DEFENDANTS' SUR-REPLY TO PLAINTIFF'S MOTION TO DISMISS
DEFENDANTS' INEQUITABLE CONDUCT COUNTERCLAIMS AND
MOTION TO STRIKE AFFIRMATIVE DEFENSES (DKT. 136)**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT........................................................................................................................2

III. CONCLUSION....................................................................................................................5

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Cyber Acoustics, LLC v. Belkin Int'l, Inc.*,
   988 F. Supp. 2d 1236 (D. Or. 2013) ...................................................................................5

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009).......................................................................................1, 4

*Greenstone v. Cambex Corp.*,
   975 F.2d 22 (1st Cir. 1992) ................................................................................................3

*iLife Tech. Inc. v. Body Media, Inc.*,
   2015 WL 1000193 (W.D. Pa. Mar. 6, 2015) .....................................................................5

*Intellect Wireless, Inc. v. HTC Corp.*,
   732 F.3d 1339 (Fed. Cir. 2013).........................................................................................5

*Keystone Global LLC v. Decor Essentials Ltd.*,
   2014 WL 888336 (S.D.N.Y. Mar. 6, 2014) .......................................................................5

*Nilssen v. Osram Sylvania, Inc.*,
   504 F.3d 1223 (Fed. Cir. 2007).....................................................................................2, 4

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
   695 F.3d 1285 (Fed. Cir. 2012).....................................................................................3, 4

*Therasense, Inc. v. Becton, Dickinson and Co.*,
   649 F.3d 1276 (Fed. Cir. 2011).........................................................................................4

*Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*,
   351 F.3d 1139 (Fed. Cir. 2003).........................................................................................4

*Zecotek Imaging Sys. PTE Ltd. v. Saint-Gobain Ceramics & Plastics, Inc.*,
   2014 WL 809183 (N.D. Ohio Feb. 28, 2014) ...................................................................5

**FEDERAL RULES & REGULATIONS**

37 C.F.R. § 1.27 ....................................................................................................................1, 3

I.    **INTRODUCTION**

Plaintiff's Reply (Dkt. No. 160-1, "Reply") re-confirms that its Motion to Dismiss (Dkt. No. 136) should be denied.  Plaintiff admits that Defendants have alleged that: (1) "Dr. Smith *knew* of the license," (2) "Dr. Smith *knew* the license was disqualifying," and (3) "he *intentionally* withheld that fact."  (Reply at 5 (emphasis in original).)  These admissions are fatal to Plaintiff's motion.

Plaintiff does not question the first allegation, but instead seeks to challenge the second and third allegations on the merits before any discovery has been had in the case.  *Id.*  This argument is both procedurally improper on a motion to dismiss, and substantively incorrect as demonstrated by Defendants' Opposition (Dkt. No. 156, "Opp.").  Indeed, Plaintiff's original motion confirmed that Plaintiff made a deliberate choice to claim small entity status; this was not a good faith "mistake."  (Opp. at 2.)  And Plaintiff no longer even attempts to defend its proffered excuse for this choice – that non-exclusive licenses supposedly do not disqualify small entity status – against the clear and contrary MPEP rule about which it admits it was aware.  MPEP § 509.02 ("A grant of a non-exclusive license to a non-small entity will disqualify applicant from claiming small entity status.")   Just as remarkably, Plaintiff gives no explanation for why, even now, it *continues* to withhold the fact that it has licensed the asserted patents to a disqualifying entity from the Patent Office.  (*See* Opp. at 11-12 and Dkt. Nos. 149-1-149-6 (omitting "or licensed" from representation under 37 C.F.R. § 1.27 and MPEP § 509).)

Defendants have more than adequately plead facts from which to infer that Dr. Smith acted intentionally.  "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any indications of candor and good faith."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 n.5 (Fed. Cir. 2009).  There are no indications of candor and good faith here.  Instead, there are only the undisputed allegations that Dr. Smith: (1) knew

that the asserted patents were licensed to a disqualifying large entity (e.g., KLA-Tencor); (2) hid that license from the Patent Office; (3) affirmatively misrepresented Plaintiff's "small entity" status – a representation that he could not have made had the truth been revealed; and (4) had clear motive to falsely claim "small entity" status, including based upon Plaintiff's own repeated statements that it is highly conscious of costs and requires patent protection in order to be a sustainable company.  (Opp. at 3-4.)  The inference that Dr. Smith intended to deceive the Patent Office is thus plausible and "flows logically" from these facts.  Whether Plaintiff can prove some good-faith explanation for Dr. Smith's misrepresentation – one that Plaintiff has only perpetuated at the Patent Office since filing this motion – is a question for the fact-finder and should not be decided at the pleading stage.  *See Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1232 (Fed. Cir. 2007) ("The PTO relies on applicants to accurately represent their fee status, and it is for a fact-finder to evaluate whether any intentional misrepresentations occur in doing so.").

**II.     ARGUMENT**

As a threshold matter, it is worth taking note of the arguments that Plaintiff's Reply seemingly abandons.  Plaintiff previously argued that:  (1) "clear and convincing evidence" is required at the pleading stage; (2) Dr. Smith's "unmistakably false affidavit" is not material; (3) non-exclusive licenses are not disqualifying; and (4) fraudulently withheld fees are forgiven by repayment.  (Dkt. No. 137 at 6-13.)  Defendants' Opposition showed that each of these arguments is incorrect, and Plaintiff has not disputed any part of that showing.

Instead, Plaintiff offers two brand-new arguments.  First, Plaintiff claims that because its CEO, Paul Blackborow, eventually revealed its licensing practices to Congress in 2012, Dr. Smith could not have intended to deceive the Patent Office by withholding the same information since 2007.  (*See* Reply at 3-4.)  The fact that someone *other than* Dr. Smith revealed Plaintiff's license to a body *other than* the Patent Office five years *after* Dr. Smith first withheld that

information does not negate a reasonable inference of specific intent.  This is especially true where Plaintiff *still* withholds the fact that it has licensed the asserted patents from the Patent Office.  When Plaintiff paid $23,000 in fees dating back to December 2007, it told the Patent Office that it nevertheless "believes that rights in the invention claimed in the [asserted patents] have not been assigned, granted or conveyed to any concern that does not qualify for small entity status, as described in 37 C.F.R. § 1.27 and MPEP 509."  (Dkt. Nos. 149-1-149-6.)  As Defendants have pointed out, Plaintiff deliberately omitted the key language of the regulation that necessitates its payments in the first place, which states that full payment is required when the patentee has "assigned, granted, conveyed, *or licensed* … any rights in the invention to any person, concern, or organization which would not qualify for small entity status."  37 C.F.R. § 1.27(a)(2) (emphasis added); *accord* MPEP § 509.[1]

Second, Plaintiff's continued reliance on *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285 (Fed. Cir. 2012) (Reply at 4-5) is misplaced.  *Outside the Box* was a decision at the merits stage, not the pleading stage.  And, as importantly, in *Outside the Box*, there was no "evidence that anyone involved in the patent prosecution knew that a patent license had been granted to a large entity and deliberately withheld that information in order to pay small entity fees."  *Outside the Box*, 695 F.3d at 1294.  By contrast, and contrary to Plaintiff's argument (Reply at 1), "evidence" of specific intent is not required at the pleading stage.  Instead, as discussed above, the standard is whether an inference of intent is "plausible" and

---

[1] *Greenstone v. Cambex Corp.*, 975 F.2d 22 (1st Cir. 1992), a securities fraud case cited by Plaintiff, is not analogous.  There, the plaintiff alleged securities fraud based on a company's settlement of a lawsuit, the risk of which the plaintiff claimed should have been disclosed.  *Id.* at 26.  The court noted that in such cases, "[a]ll depends upon the lawsuit's subject matter and the underlying circumstances," and that under the facts alleged in that case, the company had disclosed the "trade-in" practice that became the subject of the lawsuit publicly, *i.e.*, to the people allegedly defrauded, which was "inconsistent with knowledge of illegality or fear of a lawsuit."  *Id*.  Plaintiff still has never disclosed to the Patent Office that it has licensed the asserted patents, nor did it disclose to Congress that despite licensing its patents to a large entity, it continued to falsely claim "small entity" status to the Patent Office.

"flows logically" from the facts alleged.  *Exergen*, 575 F.3d at 1329 n.5.  Indeed, as the Federal Circuit has repeatedly ruled:  "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence."  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011); *see Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1146 (Fed. Cir. 2003) ("Direct evidence of deceptive intent is not required; rather it is usually inferred from the patentee's overall conduct.").

Defendants counterclaim more than meets the correct pleading standard for the reasons discussed above and in our Opposition.  Indeed, Defendants have plead with respect to Dr. Smith in this case exactly what was found lacking in *Outside the Box*.  Specifically, Dr. Smith was involved in the patent prosecution (as a named inventor), knew that a patent license had been granted to at least one large entity (KLA-Tencor), and deliberately withheld that information in order to pay small entity fees.  (Dkt. No. 133, Counterclaims ¶¶ 27-32.)  Thus, as Defendants' Opposition made clear, what separates Dr. Smith's conduct from that of other small entities is not his motive to pay small entity fees (which Energetiq still does not dispute), it is his knowledge that Energetiq licensed disqualifying entities.

Finally, Plaintiff incredibly suggests that there is no case "post-*Therasense* in which a motion to dismiss inequitable conduct counterclaims was denied," and that Defendants' allegations "seek to undo all recent Federal Circuit precedent on the issue."  (Reply at 5.)  This representation is demonstrably false.  First, it ignores **all** of the Federal Circuit precedent concerning "small entity" fees cited in the course of briefing this motion – *e.g.*, *Outside the Box, Nilssen*, and *Ulead* – that supports Defendants' position.  (*See, e.g.,* Opp. at 1-2, 6, 7-13.)  Second, it ignores the cornucopia of post-*Therasense* decisions denying motions to dismiss inequitable conduct counterclaims, including those concerning false payments of small entity

- 4 -

fees.  *See, e.g.*, *Zecotek Imaging Sys. PTE Ltd. v. Saint-Gobain Ceramics & Plastics, Inc.*, 2014 WL 809183, at *3 (N.D. Ohio Feb. 28, 2014);[2] *see also Cyber Acoustics, LLC v. Belkin Int'l, Inc.*, 988 F. Supp. 2d 1236, 1246-47 (D. Or. 2013); *iLife Techs. Inc. v. Body Media, Inc.*, 2015 WL 1000193, at *3-8 (W.D. Pa. Mar. 6, 2015); *Keystone Global LLC v. Decor Essentials Ltd.*, 2014 WL 888336, at *2 (S.D.N.Y. Mar. 6, 2014); *cf. Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1345 (Fed. Cir. 2013) (holding, on the merits, that finding of intent could be affirmed because "completely false statements in a first declaration were followed by a replacement declaration that, rather than expressly admitting the earlier falsity, dances around the truth.").  In short, nothing will be "undone" by permitting Defendants' counterclaim to proceed to discovery, other than Plaintiff's own inequitable conduct.

### III. CONCLUSION

For the reasons stated above and in Defendants' Opposition, Plaintiff's motion to dismiss the Defendants' counterclaims and affirmative defenses of inequitable conduct should be denied.

---

[2] In *Zecotek*, the court rejected arguments similar to Plaintiff's here, including that because the entity disclosed the disqualifying license ***to the Patent Office*** – as opposed to Congress – in order to expedite prosecution, it could not have acted with specific intent in nevertheless claiming small entity status.  (*See* Suppl. Burwell Decl., Ex. 7 at 6-13, Ex. 8 at 6-8 (Opposition and Reply, respectively, filed in *Zecotek*).)

Respectfully submitted,

        ASML NETHERLANDS B.V.,
        EXCELITAS TECHNOLOGIES CORP.
        QIOPTIQ PHOTONICS GMBH & CO. KG

        By their Attorneys,

        /s/ *Dana O. Burwell*

        Kevin S. Prussia (BBO # 666813)
        Shirley X. Li Cantin (BBO # 675377)
        Elisabeth M. Oppenheimer (BBO # 686312)
        Dana O. Burwell (BBO # 682413)
        Jonathan A. Cox (BBO #687810)
        WILMER CUTLER PICKERING
         HALE AND DORR LLP
        60 State Street
        Boston, MA 02109
        Tel: (617) 526-6000
        Fax: (617) 526-5000
        kevin.prussia@wilmerhale.com
        shirley.cantin@wilmerhale.com
        elisabeth.oppenheimer@wilmerhale.com
        dana.burwell@wilmerhale.com
        jonathan.cox@wilmerhale.com

        James M. Dowd (Ca. Bar No. 259578) (*pro hac vice*)
        WILMER CUTLER PICKERING
         HALE AND DORR LLP
        350 South Grand Avenue, Suite 2100
        Los Angeles, CA 90071
        Tel: (213) 443-5300
        Fax: (213) 443-5400
        james.dowd@wilmerhale.com

Dated:  September 15, 2015


**CERTIFICATE OF SERVICE**

    I, Dana O. Burwell, hereby certify that a true copy of this document was served upon counsel of record for the plaintiff through the Court's electronic court filing (ECF) system, this 15th day of September, 2015.

                                  /s/ *Dana O. Burwell*
                                  Dana O. Burwell (BBO # 682413)