# Exhibit 7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ZECOTEK IMAGING SYSTEMS PTE. LTD.
and BEIJING OPTO-ELECTRONICS
TECHNOLOGY CO.,

           Plaintiffs,

    v.

SAINT-GOBAIN CERAMICS & PLASTICS,
INC.; PHILIPS HEALTHCARE
INFORMATICS, INC. d/b/a PHILIPS
HEALTHCARE; and PHILIPS MEDICAL
SYSTEMS (CLEVELAND), INC.,

           Defendants.

No. 5:12-CV-01533-SL

**JUDGE SARA LIOI**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO AMEND ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

# TABLE OF CONTENTS

FACTS AND PRIOR PROCEDURE ............................................................................1

ARGUMENT ...........................................................................................................1

    A.    Legal Standard ..............................................................................2

    B.    Spoliation is Not Available as a Counterclaim under Ohio Law, and Defendants' Spoliation Pleading Is Deficient in Any Event ...........................3

        1.  Spoliation Is Not Available to Defendants as a Counterclaim ........................3

        2.  Defendants Have Failed to Adequately Allege Important Elements of a Spoliation Claim, Including "Willful Destruction" ......................................5

    C.    Defendants' Affirmative Defense of Inequitable Conduct Is Improperly Pled and Fails as a Matter of Law .................................................6

        1.  Defendants Fail to Meet Rule 9(b)'s Strict Pleading Standard .........................6

        2.  Defendants' Allegations Do Not Amount to Inequitable Conduct ...................8

    D.    Defendants' Defamation Counterclaim Fails as a Matter of Law ........................13

CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................... 6

*Boggs v. Scotts Co.*,
  No. 04-425, 2005 WL 647560 (Ohio Ct. App. 2005) .............................. 5, 6

*Bugg v. Am. Standard, Inc., No.*,
  84829, 2005 WL 1245043 (Ohio Ct. App. May 26, 2005) ......................... 6

*Burlington Indus., Inc. v. Dayco Corp.*,
  849 F.2d 1418 (Fed. Cir. 1988) ................................................................. 8

*Chiancone v. City of Akron*,
  No. 11-337-SL, 2011 WL 4436587 (N.D. Ohio Sept. 23, 2011) ............... 6

*Corona Cord Tire Co. v. Dovan Chem. Corp.*,
  276 U.S. 358 (1928) ................................................................................. 11

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) ............................................................. 7, 8

*Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*,
  350 F.3d 1327 (Fed. Cir. 2003) ................................................................. 6

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................... 2

*Grabow v. King Media Enters., Inc.*,
  806 N.E. 2d 591 (Ohio Ct. App. 2004) .................................................... 15

*Hewitt v. Allen Canning Co.*,
  728 A.2d 319 (N.J. Super. Ct. App. Div. 1999) ........................................ 4

*Hess v. Norfolk Southern Railway Co.*,
  795 N.E.2d 91(Ohio App. 2003), ............................................................... 4

*Hess v. Norfolk S. Ry. Co.*,
  835 N.E.2d 679 (Ohio 2005), ..................................................................... 4

*Kendel v. Local 17-A United Food and Commercial Workers*,
  835 F. Supp. 2d 421 (N.D. Ohio 2011) .................................................... 13

*Los Angeles Cnty.*,
  151 Cal. App. 3d 491 (Cal. Ct. App. 1984) ............................................... 4

*Lyons v. Farmers Ins. Group of Cos.*,
  587 N.E.2d 362 (Ohio Ct. App. 1990) ..................................................... 14

*McNett v. Hardin Comm. Fed. Credit Union,*
  No. 02-7576-JZ, 2006 WL 2473000 (N.D. Ohio Aug. 24, 2006) ........................................... 2

*Miller v. Calhoun Cnty.,*
  408 F.3d 803 (6th Cir. 2005) ................................................................................................. 2

*Publishing Co.,*
  591 N.E.2d 789 (Ohio Ct. App. 1990) ................................................................................. 14

*Smith v. Howard Johnson Co.,*
  615 N.E.2d 1037 (Ohio 1993) ...................................................................................... 3, 4, 5

*Sweitzer v. Outlet Commc'ns, Inc.,*
  726 N.E. 2d 1084 (Ohio Ct. App. 1999) ....................................................................... 14, 15

*Therasense, Inc. v. Becton, Dickinson and Co.,*
  649 F.3d 1276 (Fed. Cir. 2011) ...................................................................................... 9, 10

*Troxel Mfg. Co. v. Schwinn Bicycle Co.,*
  489 F.2d 968 (6th Cir. 1973) ................................................................................................. 2

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.,*
  982 F.2d 363 (9th Cir. 1992) ................................................................................................. 4

**Statutes**

Ohio Rev. Code § 2305.11(A) ................................................................................................ 14

**Rules**

Federal Rule of Civil Procedure 15(a) ..................................................................................... 2

Federal Rule of Civil Procedure 9(b) ............................................................................... 2, 6, 7

**Regulations**

37 C.F.R. § 1.27(h) .................................................................................................................. 7

**Other Authorities**

*Where's the Evidence? Dealing with Spoliation by Plaintiffs in Product Liability Cases,*
  53 S.C. L. Rev. 415 (2002) ................................................................................................... 5

Exactly twenty months after filing their original Answer, Defendants Saint-Gobain and Philips ("Defendants") seek leave to raise three belated theories of relief—one Affirmative Defense and two Counterclaims—all of which fail as a matter of law. Because Defendants' proposed amendment would be futile, Plaintiffs Zecotek Imaging Systems and Beijing Opto-Electronics Technology Company ("Plaintiffs") respectfully request that the Court deny Defendants' Motion to Amend Answer, Affirmative Defenses, and Counterclaims ("Motion") based on the binding legal authority described herein.

## FACTS AND PRIOR PROCEDURE

Plaintiffs dispute many of the allegations in Defendants' proposed amended Answer and Memorandum of Law in support of their Motion. For the purposes of Plaintiffs' legal arguments in this brief, however, Plaintiffs assume any factual allegations to be true.

## ARGUMENT

The Court should deny Defendants' Motion because each of Defendants' three new arguments—in the form of one affirmative defense and two counterclaims—fails as a matter of law. Defendants' proposed amendment would thus be futile, and should be rejected as such.

*First*, Defendants attempt to raise an affirmative cause of action for spoliation of evidence. They cannot. Under Ohio law, the cause of action for spoliation is not available as a counterclaim. *See Reliance Ins. Co. v. Keybank U.S.A.*, No. 1-00062-PAG, Doc. No. 595, at 4 (N.D. Ohio Aug. 26, 2005) (attached as Exhibit A). Even if a cause of action for spoliation were available to Defendants, their proposed pleading fails to adequately allege the elements of this common law claim. In particular, Defendants fail to allege any facts to support their barebones conclusion that Plaintiffs have "willfully destroyed relevant information and documents." Amended Complaint at ¶ 27.

*Second*, Defendants' affirmative defense of inequitable conduct falls far short of the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  Defendants' proposed pleading wholly omits allegations of critical elements of inequitable conduct, including intent to deceive.  Even if properly pled, the facts alleged in Defendants' pleading do not constitute inequitable conduct under recent Federal Circuit authority.

*Third*, Defendants purport to state a counterclaim for common law defamation against Zecotek.  Defendants raise three bases of defamation.  For two of the bases, the one-year statute of limitations for defamation claims has long since run.  For the third, the allegedly defamatory statements were made by an online commentator, not a Zecotek agent.  Moreover, the alleged statements are opinion, not fact, and are therefore not defamatory.   As such, Defendants' defamation claim cannot survive a motion to dismiss and the Court should reject it.

## A.     Legal Standard

A party's motion to amend its pleading is governed by Federal Rule of Civil Procedure 15(a).  *See* Fed. R. Civ. P. 15(a).  In general, "[t]he grant or denial of a motion for leave to amend is within the sound discretion of the District Court."  *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970 (6th Cir. 1973) (affirming denial of motion to amend).  In exercising its discretion to grant or deny leave, "a trial court may consider a number of factors, including undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice, futility of the amendment, or the repeated failure to cure deficiencies by amendments previously allowed."  *See McNett v. Hardin Comm. Fed. Credit Union*, No. 02-7576-JZ, 2006 WL 2473000, at *1 (N.D. Ohio Aug. 24, 2006) (denying motion to amend) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Amendment is futile if the amended pleading cannot survive a motion to dismiss.  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (affirming denial of motion to

amend); *see also Giesse v. Sec'y of Dep't of Health & Human Servs.*, 476 F. Supp. 2d 734, 739 (N.D. Ohio 2006) ("It is well-settled that a district court may deny a motion for leave to file an amended complaint if the amended complaint could not withstand a motion to dismiss.").

**B.    Spoliation is Not Available as a Counterclaim under Ohio Law, and Defendants' Spoliation Pleading Is Deficient in Any Event**

Defendants move to amend their Answer to state a counterclaim for spoliation of evidence.  Because a cause of action for spoliation is not available as a counterclaim under Ohio law, and also because Defendants have failed to allege critical elements of a spoliation claim, granting leave to amend would be futile.

1.    <u>Spoliation Is Not Available to Defendants as a Counterclaim</u>

The Supreme Court of Ohio has established the following elements of an affirmative spoliation claim:

> (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts.

*Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993).  On their face, these elements cover a cause of action available only to a <u>plaintiff</u>, and courts in this jurisdiction have recognized this limited applicability.  *See Reliance Ins*, No. 1-00062-PAG, at 4.

In *Reliance Insurance*, the defendants alleged that, due to plaintiff's email-retention policy, "a number of emails potentially relevant to this lawsuit were permanently deleted."  No. 1-00062-PAG, at 2.  Based on these allegations, the defendants brought a motion to amend their answer to add a counterclaim for spoliation.  *Id.* at 2.  Correctly recognizing that a motion to amend "may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss," *id.* at 2, the court analyzed whether, as a matter of law, the

spoliation cause of action is available as a counterclaim.  Concluding that no such counterclaim is available under Ohio law, the court denied the defendants' motion to amend.  *Id.* at 4.

The court in *Reliance Insurance* recognized that "[t]he purpose of allowing a separate claim for spoliation of evidence is to protect a plaintiff's expectancy interest in the underlying claim."  *Id.* (citing *Smith v. Super. Ct. of Los Angeles Cnty.*, 151 Cal. App. 3d 491 (Cal. Ct. App. 1984).  Because a plaintiff typically has an economic interest in a claim, a defendant's "interference" with that claim through destruction of evidence can cause harm to a plaintiff compensable by monetary damages.  *Id.*  Conversely, "[n]o such comparable interest is protected by allowing a defendant to assert a claim for spoliation against the plaintiff."  *Id.*

The court's decision in *Reliance Insurance* is consistent with Ohio state court decisions. In *Hess v. Norfolk Southern Railway Co.*, the Ohio Court of Appeals recognized that "*Smith* is confined to spoliation of evidence caused by the defendant injuring the plaintiff's case."  795 N.E.2d 91, 99 (Ohio App. 2003), *reversed in part on other grounds*, *Hess v. Norfolk S. Ry. Co.*, 835 N.E.2d 679 (Ohio 2005).

Relevant authority from other jurisdictions is in accord.  In New Jersey, one of the few other jurisdictions to recognize a cause of action for spoliation, the Court of Appeals has held that "[t]he spoliation and concealment tort remedy of money damages is inapplicable, however, where the destruction of evidence, or its concealment, occurs in the context of a defendant's ability to defend against a plaintiff's cause of action."  *Hewitt v. Allen Canning Co.*, 728 A.2d 319, 322 (N.J. Super. Ct. App. Div. 1999).  The Ninth Circuit Court of Appeals has also observed that defendants may not raise counterclaims for spoliation.  *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 371 (9th Cir. 1992) (affirming denial of spoliation counterclaim because "[a]s the district court noted, the spoliation tort has only been

4

applied when a defendant—or a third party with a duty to the plaintiff—has spoliated evidence."). Legal commentators also agree that a defendant's attempted counterclaim for spoliation is improper. *See* Christopher B. Major, Comment, Where's the Evidence? Dealing with Spoliation by Plaintiffs in Product Liability Cases, 53 S.C. L. Rev. 415, 416 (2002) ("[N]o jurisdiction has made an independent tort cause of action available to defendants.").

Defendants are requesting relief that no court has recognized, and that several courts— including courts in this jurisdiction—have expressly rejected. Because a cause of action for spoliation is not available as a counterclaim, Defendants' counterclaim for spoliation cannot survive a motion to dismiss and therefore any amendment is futile.

> 2. Defendants Have Failed to Adequately Allege Important Elements of a Spoliation Claim, Including "Willful Destruction"

Even if the spoliation cause of action were available as a counterclaim, the Defendants in this case have failed to properly allege the elements of spoliation under Ohio law.

As stated above, to state a claim for spoliation under Ohio law, a claimant must allege "willful destruction of evidence by defendant designed to disrupt plaintiff's case." *Smith*, 615 N.E.2d at 1038. Importantly, "Ohio does not recognize a cause of action for negligent spoliation; thus, in order to prove spoliation, the plaintiff must show willful or purposeful conduct by the defendant designed to disrupt or deter litigation." *Boggs v. Scotts Co.*, No. 04-425, 2005 WL 647560, at *9 (Ohio Ct. App. 2005).

Here, Defendants' allegations comprise, at best, an assertion of negligent spoliation. Defendants repeatedly allege that Plaintiffs "failed to preserve" relevant documents and things. A mere "failure to preserve" evidence is facially insufficient when "willful destruction of evidence" is required. *Smith*, 615 N.E.2d at 1038. Indeed, at only one place in their proposed pleading do Defendants allege that Plaintiffs "willfully destroyed relevant information and

documents." That lone allegation is not supported by a factual assertion, as is required by Ohio law, *see Boggs*, 2005 WL 647560, at *9, and the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Instead, Defendants allege willful destruction on mere "information and belief." Answer at ¶ 27. This is the exact kind of unsupported "formulaic recitation of the elements of a cause of action" that *Twombly* expressly prohibits. Moreover, Defendants' allegations that Plaintiffs' counsel "took affirmative steps to try to withhold information relating to their testing of accused Saint-Gobain crystals from disclosure (including through the assertion of the work product doctrine)," do not constitute "willful destruction" under Ohio law. *See Bugg v. Am. Standard, Inc.*, No. 84829, 2005 WL 1245043, at *5 (Ohio Ct. App. May 26, 2005) (affirming motion to dismiss spoliation claim). In any event, such an allegation makes no sense because Defendants received these test results.[1]

## C. Defendants' Affirmative Defense of Inequitable Conduct Is Improperly Pled and Fails as a Matter of Law

Defendants have attempted to raise an affirmative defense of inequitable conduct, alleging that Zecotek improperly applied for "small entity" status when prosecuting its patent. This defense is improperly pled, and even if it were not, Defendants' factual allegations do not constitute inequitable conduct.

### 1. Defendants Fail to Meet Rule 9(b)'s Strict Pleading Standard

Although, in general, "the *Twombly/Iqbal* standard is inapplicable to affirmative defenses," *Chiancone v. City of Akron*, No. 11-337-SL, 2011 WL 4436587, at *3 (N.D. Ohio Sept. 23, 2011) (Lioi, J.), the affirmative defense of inequitable conduct must be pled with particularity under Federal Rule of Civil Procedure 9(b). *See Ferguson Beauregard/Logic*

---

[1] Plaintiffs agree with Defendants that no undue delay exists in their spoliation claim based on their allegation that they discovered the supposed facts in October 2013. To the extent, however, that their claim also is based on alleged events occurring well over a year ago such as crystal destruction, Defendants have not offered any justification for their delay.

*Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). Whether a defense of inequitable conduct meets the requirements of Rule 9(b) is determined under Federal Circuit law, not the law of the regional circuit. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (affirming denial of motion to amend to state inequitable conduct defense).

The elements of an inequitable conduct defense under Federal Circuit law are as follows: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false information; and (2) the individual did so with a specific intent to deceive the PTO." *Id.* at 1327 n.3. To meet the heightened pleading standard of Rule 9(b), a party raising an inequitable conduct defense must "set[] forth the particularized factual bases" supporting these two elements. *Id.* at 1327. In other words, the party must set out "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* Importantly, the pleading must also "allege sufficient facts from which a court may reasonably infer that a party acted with the requisite state of mind," *id.*, which, in cases of inequitable conduct, requires a showing of "(1) knowledge of the withheld material information or the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Id.* Defendants' proposed pleading fails to satisfy this exacting standard for at least two reasons.

*First*, the proposed pleading does not allege specific intent to deceive the PTO, a fundamental element of an inequitable conduct claim. <u>None</u> of the twelve full paragraphs in Defendants' proposed affirmative defense alleges specific intent to deceive. The closest Defendant's deficient pleading comes to alleging "intent to deceive" is its quotation of the regulations governing small entity status: "According to 37 C.F.R. § 1.27(h), if a party 'improperly and with intent to deceive' represents itself to the USPTO as a small entity or pays

fees as a small entity, the party is considered to have practiced a fraud on the USPTO." Answer at ¶ 40. Although Defendants thus understand that pleading "intent to deceive" is required by law, their proposed amended answer is silent on that point and they do not allege it.

*Second*, the proposed amendment does not allege the "why" or "how" of Zecotek's alleged material misrepresentation. In fact, the proposed answer does not allege materiality at all. The answer does not allege that the alleged misrepresentation is material per se. Nor does it allege "'why' the withheld information is material" or "'how' an examiner would have used this information in assessing the patentability" of Zecotek's patent. *Exergen*, 575 F.3d at 1329–30. The answer simply omits this crucial element altogether.

Given these critical deficiencies—wherein Defendants have failed to allege <u>entire elements</u> of the inequitable conduct defense—Defendants' proposed defense could not survive a motion to dismiss. Defendants' request for leave to amend would thus be futile, and the Court should deny it.[2]

## 2. Defendants' Allegations Do Not Amount to Inequitable Conduct

Even if Defendants' affirmative defense of inequitable conduct were properly pled, the factual allegations recited within the proposed defense do not amount to inequitable conduct. This is especially true in light of recent Federal Circuit precedent articulating the rigorous requirements of the inequitable conduct defense.

Over the past few decades, courts and commentators recognized that the inequitable conduct defense had become an "absolute plague" on the patent system, as "[r]eputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds . . . ." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988).

---

[2] Defendants also attempt to amend their previously pled "unenforceability" counterclaim to include similar factual allegations as listed in their newly proposed inequitable conduct defense. For the same reasons outlined in this section, the Court should deny Defendants' proposed amendment.

In 2011, the Federal Circuit issued its landmark decision in *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290, 1288 (Fed. Cir. 2011), severely restricting the defense. Sitting en banc, the court recognized that its prior inequitable conduct case law had caused the "plague" described above, and that the inequitable conduct defense "has been overused to the detriment of the public." *Id.* at 1290. To reverse this negative trend, the court explained that the elements of inequitable conduct—(1) material misrepresentation with (2) intent to deceive the PTO—would stay the same. The standards for meeting those two elements, however, would be sufficiently "tighten[ed]." *Id.* at 1290.

*First*, as to intent, the court in *Therasense* stated that "the accused infringer must prove that the patentee acted with the <u>specific intent to deceive the PTO</u>." *Id.* (emphasis added). Importantly, a patentee's omission or misrepresentation that "amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Id.* Under this strict standard, even a showing that "the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO <u>does not prove specific intent to deceive</u>." *Id.* (emphasis added).

The court also emphasized that, although "a district court may infer intent from indirect and circumstantial evidence . . . the specific intent to deceive must be '<u>the single most reasonable inference able to be drawn from the evidence</u>.'" *Id.* (emphasis added) (citation omitted). The evidence must actually "*require* a finding of deceitful intent in the light of all the circumstances." *Id.* If the evidence leads to "multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.*

*Second*, recognizing that it could not curb "the proliferation of inequitable conduct charges by raising the intent standard alone," the *Therasense* court "adjust[ed] as well the

standard for materiality." *Id.* at 1291.

In *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, the Federal Circuit for the first time post-*Therasense* reviewed a district court's ruling that a patent was unenforceable because the patentee had erroneously "claim[ed] small entity status and pa[id] reduced PTO fees." 695 F.3d 1285, 1292 (Fed. Cir. 2012). Analyzing the district court's holding of inequitable conduct against the new requirements announced in *Therasense*, the Federal Circuit rejected the defense in this context.

The facts in *Outside the Box* are similar to those alleged in Defendants' proposed amended answer. The patentee in that case met the standard for "small-entity status" because it had fewer than 500 employees. *Id.* at 1293. The patentee entered a licensing agreement with a large entity, however, and the prosecuting attorney did not disclose the licensing agreement to the PTO in the small-entity status application. *Id.* Under relevant regulations, the license to the large entity cancelled the patentee's eligibility for small-entity status. *Id.* Because the district court found the prosecuting attorney to be "an experienced attorney, [who] is responsible for being familiar with such standards," the court concluded "that an inference of [patentee's] intent to deceive the PTO has been established." *Id.* at 1294 (quoting the district court).

Applying the heightened standard announced in *Therasense*, the Federal Circuit rejected the district court's conclusion. The court held that "the requirements of *Therasense* are not met here because there was no clear and convincing evidence of intent to deceive the PTO." *Id.* In particular, the court held that "there was no evidence that anyone involved in the patent prosecution knew that a patent license had been granted to a larger entity and <u>deliberately withheld that information</u> in order to pay small entity fees." *Id.* (emphasis added). In such cases, where "there is no evidence that small entity status was deliberately falsely claimed, a

finding of unenforceability is inappropriate." *Id.* The court found this particularly true in light of the regulations governing small-entity status, which "specifically contemplate that there can be good faith errors to asserting entitlement to small entity status." *Id.* at 1295. In such circumstances, "underpayment of the fee can be remedied by payment of the deficiency, not by eradication of the patent." *Id.*

As to materiality, the *Outside the Box* court did not reach the issue in light of its finding of no specific intent to deceive. The court stated, in dicta, that "on its face, it appears that a false declaration of small entity status would fall within the definition of an 'unmistakably false affidavit,' particularly since a party that claims entitlement to small entity status does so in a sworn affidavit," such that falsely claiming small-entity status could possibly be seen as "per se material." *Id.* at 1294 (quoting *Therasense*). Although the court ultimately decided that it "need not decide that question," *id.*, its dicta on this point drew a sharp dissent from Judge Newman, who clarified that "[i]mmateriality of an affidavit that is not the basis of the patent grant was long ago established." *Id.* at 1306 (Newman, J., dissenting) (faulting the district court's "flawed criterion of *per se* materiality") (citing *Corona Cord Tire Co. v. Dovan Chem. Corp.*, 276 U.S. 358, 374 (1928)).

In this case, the Defendants attempt to raise an affirmative defense of inequitable conduct based on similar factual allegations to those the Federal Circuit rejected in *Outside the Box*. Defendants' proposed amendment alleges that "Zecotek and Mr. Loop intentionally represented to the USPTO that Zecotek was a 'small entity' despite the fact that they knew Zecotek was not entitled to claim that status in view of its license agreement with Northrop Grumman Corporation." Answer at ¶ 30. Like the accused infringer did in *Outside the Box*, Defendants allege that "Zecotek's wrongful claim of small entity status, and payment of reduced fees to the

11

USPTO due to that wrongly claimed status, constitutes inequitable conduct."  Answer at ¶ 41.

Unlike the accused infringers in *Outside the Box*, however, Defendants have selected some very peculiar evidentiary support for their claim.  While Defendants never plead intent to deceive, the evidence they do cite rebuts such intent.  Specifically, Defendants point to two petitions that Mr. Loop submitted to the USPTO during prosecution of the patent, both of which expressly disclosed Zecotek's pending license to large-entity Northrop Grumman.  Answer at ¶ 31, 32 (emphasis added).[3]  These petitions—that Mr. Loop submitted to the PTO—requested that the PTO "expedite prosecution of Zecotek's application due to a prospective license agreement with Synoptics, a division of Northrop Grumman."  Answer at ¶ 32.[4]  One of Mr. Loop's two petitions, to which Defendants call special attention, expressly represented to the PTO that Zecotek's prospective licensee was "one of the largest defense contractors in the United States."  Answer at ¶ 33, 39 ("Zecotek, through its counsel Mr. Loop, specifically cited its license with Northrop Grumman – 'one of the largest defense contractors in the United States' – as the basis for its repeated requests to expedite the PTO's consideration of its patent application while simultaneously claiming small entity status.").  In other words, Defendants concede, and in fact deliberately emphasize, that Mr. Loop affirmatively represented to the PTO *twice during prosecution* that Zecotek was licensing its patent to Northrop Grumman, expressly describing Northrop Grumman as "one of the largest defense contractors in the United States."

Under *Therasense*, Defendants' cited evidence must "*require* a finding of deceitful intent," and "the single most reasonable inference able to be drawn from the evidence" must be that Mr. Loop acted with a specific intent to deceive the PTO about Zecotek's large-entity

---

[3] The Defendants do not point to Zecotek documents or even Mr. Loop's deposition testimony from November 2012 to support the necessary allegation that Mr. Loop operated with intent to deceive.  This is because Mr. Loop's testimony does not demonstrate anything close to specific intent to deceive the PTO.

[4] For purposes of this motion only, Plaintiffs assume *arguendo* that they could not properly claim small-entity status.

licensee. Not only does the evidence fail to "require" such inference, it points away from it. Mr. Loop's actions, wherein he expressly disclosed Zecotek's large-entity licensee in multiple prosecution filings, cannot show a "specific intent to deceive" the PTO. Plaintiffs have searched for cases finding inequitable conduct in similar circumstances—where a patentee has somehow "withheld" a fact from the PTO while at the same time expressly and repeatedly disclosing the fact to the PTO—but have found none. The more likely inference to be drawn here is that Mr. Loop made a good-faith error, a type of error that PTO regulations and Federal Circuit case law expressly contemplate. *Outside the Box*, 695 F.3d at 1295. This destroys Defendants' proposed defense.

Even if Defendants' factual allegations could demonstrate specific intent to deceive the PTO, Mr. Loop's alleged misrepresentation is not "but-for material." No court has held improper application for small-entity status to be material under the heightened standard announced in *Therasense*. Moreover, the remedy for such errors is not unenforceability of the patent, but proper payment of fees. *Id.*

Finally, Defendants knew about this issue for at least one year—since Mr. Loop's deposition in November 2012. This delay is not one of months or weeks, and Defendants do not offer any justification for their substantial delay in bringing this allegation.

## D.    Defendants' Defamation Counterclaim Fails as a Matter of Law

Under Ohio law, a party asserting defamation must allege "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication." *Kendel v. Local 17-A United Food and Commercial Workers*, 835 F. Supp. 2d 421, 433 (N.D.

Ohio 2011). For a statement to be "defamatory," the statement must be "a false and malicious publication against an individual made with an intent to injure his reputation or to expose him to public hatred, contempt, ridicule, shame, or disgrace or to affect him injuriously in his trade, business or profession." *Robb v. Lincoln Publishing Co.*, 591 N.E.2d 789, 792 (Ohio Ct. App. 1990). Unlike "facts," opinions cannot be defamatory. *See Sweitzer v. Outlet Commc'ns, Inc.*, 726 N.E. 2d 1084, 1090 (Ohio Ct. App. 1999). The statute of limitations for defamation claims is one year. *See* Ohio Rev. Code § 2305.11(A). The statute begins to run at the time a defamatory statement is published, "whether the plaintiff had knowledge or not." *Lyons v. Farmers Ins. Group of Cos.*, 587 N.E.2d 362, 364 (Ohio Ct. App. 1990).

Defendants have raised three separate bases of support for their proposed defamation counterclaim. None of these bases can survive a motion to dismiss.

*First*, Defendants, allege that they were defamed by a letter Mr. Loop sent to Philips on behalf of Zecotek in 2007. Answer at ¶ 32. The one-year statute of limitations for defamation as to this letter has long since run. *See* Ohio Rev. Code § 2305.11(A). Moreover, Defendants provide no adequate reason for waiting so long to make this allegation.

*Second*, Defendants allege that they were defamed in an online editorial written by a third-party author in June 2013. Answer at ¶ 33. Although the author's views are purportedly based on a conversation with Zecotek CFO Michael Minder, none of the article's content is actually attributed to Mr. Minder. The only aspect of the article that could arguably be based on a "statement" of Mr. Minder is the opening sentence, where the author claims that "[i]n speaking with" Mr. Minder, the author learned that Zecotek shared its crystal formulas with Saint-Gobain. *Id.* This statement is not "defamatory" under Ohio law, because it does not "injuriously affect" Saint-Gobain's business. The remainder of the editorial expresses the views of the author, not

14

Mr. Minder, and thus fails as a basis for defamation against Zecotek. Moreover, the statements in the editorial are opinions, not facts, and cannot be defamatory. *Grabow v. King Media Enters., Inc.*, 806 N.E. 2d 591, 597 (Ohio Ct. App. 2004) (holding editorial to be opinion).

*Third*, Defendants allege that Zecotek and Mr. Minder have defamed Defendants by overestimating their expected recovery of damages in this litigation. While Defendants allege that Mr. Minder has published defamatory statements "to the press, actual and potential investors, and the public" regarding Zecotek's damages, Defendants cite only two actual examples of such representations: an online article from May 30, 2012, and an online article from October 9, 2012. As with Mr. Loop's 2007 letter, the one-year statute of limitations has run as to Mr. Minder's statements from May and October 2012. These statements also are opinions, not facts that could be false. *See Sweitzer*, 726 N.E. 2d at 1090. Moreover, at the time Zecotek made this statement (and continuing to this day), Plaintiffs had a good-faith belief that the value of this lawsuit is in nine figures. Defendants' disagreement with this opinion is not a license to bring a defamation case. Allowing such a claim would encourage gamesmanship and frivolous filings by making every opinion given by a party about a case subject to tort law. These two statements and articles, which make up the whole of Defendants' defamation argument as to Zecotek's estimates of recoverable damages, cannot survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Amend Answer, Affirmative Defenses, and Counterclaims for futility.

3012178v1/012920

Dated: January 10, 2014

By: /s/ Jordan Talge
   Justin A. Nelson (*Pro Hac Vice*)
   Jordan Talge (*Pro Hac Vice*)
   SUSMAN GODFREY L.L.P.
   1201 Third Ave, Suite 3800
   Seattle, Washington 98101
   Telephone: (206) 516-3880
   Facsimile: (206) 516-3883
   jnelson@susmangodfrey.com
   jtalge@susmangodfrey.com

   Thomas E. Loop
   Loop Intellectual Property Law PLLC
   1700 Seventh Avenue, Suite 2100
   Seattle, WA 98101
   Telephone: (206) 568-3100
   Facsimile: (206) 568-3168
   thomas@seattlepatentlaw.com

   Orville Reed
   STARK & KNOLL
   3475 Ridgewood Road
   Akron, OH 44333
   Telephone: (330) 572-0328
   Facsimile: (330) 572-0329
   oreed@stark-knoll.com

   Attorneys for Plaintiffs
   Zecotek Imaging Systems Pte. Ltd. and
   Beijing Opto-Electronics Technology Co.

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Tracy Zurzolo Quinn
Matthew P. Frederick
Reed Smith
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania  19103
Tel: (215) 851 8286
tquinn@reedsmith.com
mfrederick@reedsmith.com

Scott Baker
Reed Smith
101 Second Street
San Francisco, California  94105
Tel: (415) 659 5901
sbaker@reedsmith.com

Kirsten Rydstrom
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, Pennsylvania  15222
Tel: 412 288 7284
krydstrom@reedsmith.com

Kip T. Bollin
Holly H. Little
Thompson Hine LLP
3900 Key Center, 127 Public Square
Cleveland, OH  44114
Tel: (216) 566-5500
kip.bollin@thompsonhine.com
holly.little@thompsonhine.com

Attorneys for Defendants Saint-Gobain Ceramics & Plastics, Inc.

Tracy Zurzolo Quinn
Matthew P. Frederick
Reed Smith
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania  19103
Tel: (215) 851 8286
tquinn@reedsmith.com
mfrederick@reedsmith.com

Scott Baker
Reed Smith
101 Second Street
San Francisco, California  94105
Tel: (415) 659 5901
sbaker@reedsmith.com

Robert McBride
Brian Rosenthal
Mayer Brown LLP
1999 K Street, N.W.
Washington, DC  20006-1101
Tel: (202) 263 3446
RMcbride@mayerbrown.com
BRosenthal@mayerbrown.com

Kirsten Rydstrom
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, Pennsylvania  15222
Tel: 412 288 7284
krydstrom@reedsmith.com

Attorneys for Defendants Philips Healthcare Informatics, Inc. d/b/a Philips Healthcare and Philips Medical Systems (Cleveland), Inc.

*/s/ Jordan Talge*

17