## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ENERGETIQ TECHNOLOGY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ASML NETHERLANDS B.V., | ) |
| EXCELITAS TECHNOLOGIES CORP., and | ) |
| QIOPTIQ PHOTONICS GMBH & CO. KG, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 1:15-cv-10240-LTS

### EMERGENCY MOTION TO STAY ENERGETIQ'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR A PRELIMINARY INJUNCTION

## I.    INTRODUCTION

Defendants ASML Netherlands B.V., Excelitas Technologies Corp., and Qioptiq

Photonics GmbH & Co. KG (collectively, "Defendants") respectfully request an order staying

briefing on Plaintiff Energetiq Technology, Inc.'s ("Energetiq's") Motions for a Temporary

Restraining Order (Dkt. No. 180) and for a Preliminary Injunction (Dkt. No. 179) (collectively,

the "TRO/PI" motion).  Briefing on Energetiq's motion should be stayed for three reasons.

*First*, Energetiq bases its motion on a false and *ad hominem* attack on Defendants'

counsel that has no basis in the April 30, 2015 hearing record or the facts demonstrated during

Phase I discovery.  To even attempt to make this argument, Energetiq must wrench Defendants'

counsel's statements wholly out of context and ignore the actual substance of the April 30

hearing.  Defendants take representations made to the Court seriously.  The context makes clear

that what was represented was that Excelitas had shut down ███████████████████████

███████████████████   and that Excelitas would not be engaged in ████████████████

█████ the YieldStar 350 on a going-forward basis. (*Id*. at 90:16-92:17.) Phase I discovery

has demonstrated these exact facts to be true. (Ex. 1, Blondia Dep. at 49:24-25 ███████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████ Energetiq's attempt to wrench a statement about Excelitas out of context and apply it to a

wholly different entity, ASML B.V., is unfair, contrary to the hearing record, and deserves no

credence.

**Second**, Energetiq's motion is the latest in its string of "emergency" motions, none of

which have involved any real emergency, and all of which have been denied. (*See* Dkt. Nos. 7,

56, 124, 143; *see also* Dkt. Nos. 62, 84, 125, 158.) With this latest motion, there once again is

no emergency requiring a temporary restraining order or a preliminary injunction—and certainly

not one prior to the Court's conference on November 4th. The very purpose of that conference is

to discuss how this case should proceed. (Dkt. Nos. 140, 175.) Whether Energetiq will be

permitted to renew its preliminary injunction motion, and when Defendants will be allowed

discovery on Plaintiff's theories of harm, are core issues that the parties have asked the Court to

resolve at that conference. (Dkt. No. 182, Joint Status Report ("JSR") at 33 (parties' proposed

schedules for renewed motions).) Indeed, the parties have submitted competing proposals on

those very issues. Energetiq apparently believes that it can short-circuit that process and gain

some strategic advantage by filing its motion **before** the Court has an opportunity to rule on the

parties' competing proposals (thereby forcing Defendants to do the same). But there is no need

whatsoever for this hyper-accelerated schedule: Energetiq has not identified any imminent

irreparable harm, and certainly none before November 4th. Energetiq should not be permitted to

circumvent the judicial process in this manner.

***Third***, there is no basis to proceed on Energetiq's TRO/PI motion before Defendants are permitted discovery on the question of irreparable harm, including Energetiq's licensing of the patents in suit, its lack of competing products, its inability to deliver a light source that meets specifications, and the lack of any nexus between the allegedly infringing activity and any harm to Energetiq.  Indeed, the Federal Circuit has recently indicated that the facts such discovery would target are directly relevant to the availability of preliminary injunctive relief on a multi-component product like the YieldStar 350.  *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012) (holding that the district court abused its discretion in granting a preliminary injunction where it failed to find that "consumers buy the [accused product] because it is equipped with the apparatus claimed in the [asserted patent]").  Having fought off Defendants motion to compel this discovery during Phase I by representing that Defendants would be entitled to it if Energetiq renewed its motion for preliminary injunction,  (Dkt. No. 167 at 5 ("We would expect that when a renewed motion for preliminary injunction is filed, both parties might have some discovery requests, and those can be addressed then.")), Energetiq should not now be permitted to deny Defendants the very discovery that it promised to provide.

For these reasons, as set forth more fully below, Defendants respectfully request that the Court stay briefing on Energetiq's motion until the Court determines on November 4th how the case should proceed.

## II.   ARGUMENT

### A.   Energetiq's *Ad Hominem* Attacks On Defendants' Counsel Have No Place In This Litigation

Energetiq's advocacy has, unfortunately, descended to the level of attacks on the honesty of opposing counsel.  Energetiq's argument not only has no basis, but also misrepresents what transpired at the April 30, 2015 hearing.  (Dkt. No. 85.)

At that hearing, as the Court will recall and the transcript reveals, Energetiq argued that Excelitas was engaged in ████████████████████ (*id.* at 65:1-2), that it was somehow essential to the YieldStar 350 that Excelitas ██████████████████████ (*id.* at 65:3, 76:16-24), and that Excelitas' ████████████ was the particular thing that Energetiq sought to enjoin.  (*Id.* at 76:19-77:10.)  Specifically addressing the "irreparable harm" that allegedly supported its request for relief, Energetiq represented to the Court: ██████████████ ██████████████████████ (*Id.* at 76:1-5 (emphasis added).)  The Court pressed Energetiq to confirm that this was the specific irreparable harm that it wanted enjoined, and Energetiq confirmed that it was.  *Id.* at 77:11-16 ██████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████ Following these representations, both Defendants' counsel and the Court indicated their understanding that Energetiq had limited its argument for injunctive relief solely to Excelitas' ██████████████████████

████████████.  (*Id.* at 89:1-3 (Defendants' counsel); 81:16-82:3, 88:16-17 (Court).)

Based upon that representation, on page 90 of the hearing transcript (omitted from Energetiq's brief, but immediately before the statement Energetiq cites), Defendants' counsel then specifically limited his remarks to Excelitas:  "I'm about to talk about what's ***internal confidential information of Excelitas***, so if I could ask that the folks from Energetiq be excused."  (*Id.* at 90:17-19 (emphasis added).)  The courtroom was cleared, and Defendants' counsel then accurately reported that Excelitas had shut down ██████████████████

████████, and that Excelitas was not engaged in ██████████████████████ the YieldStar 350 on a going-forward basis.  (*Id.* at 91:20-92:17.)

- 4 -

Phase I discovery has demonstrated both of these facts to be true. (Ex. 1, Blondia Dep. at 49:24-25 ("████████████████████████████████████████ ████████"); *see also id.* at 32:12-14, 50:14-17, 268:5-9, 350:15-19 (██████████ ████████.)

Counsel's statement on page 90 of the April 30 hearing transcript that he was solely going to address ***Excelitas*** United States activities – because Excelitas' ████████ ████ was the sole reason Energetiq gave for seeking injunctive relief – disproves Energetiq's suggestion that the discussion that follows on pages 91-92 of the transcript had any broader scope. Directly contrary to Energetiq's suggestion, counsel specified that he was ***not*** discussing any entity other than Excelitas – and indeed had no reason to do so because Energetiq had already limited its request for relief solely to Excelitas' ██████████████████ (*Id.* at 76:19-77:10.) Energetiq's willingness to omit the statement at page 90 of the transcript (and indeed the entire context of this discussion) from its brief to falsely impugn Defendants' counsel speaks volumes. As set forth above, Energetiq's attempt to wrench a statement about Excelitas out of context and apply it to a wholly different entity, ASML B.V., is unfair, contrary to the hearing record, and deserves no credence. Defendants respectfully request that Energetiq be directed to avoid such attacks in the future.

### B.    Energetiq Has No Alleged Imminent Irreparable Harm

A plaintiff must demonstrate (among other factors) "the prospect of irreparable harm" to be entitled to a temporary restraining order or a preliminary injunction, which are "extraordinary and drastic remed[ies] that [are] never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (internal quotation omitted); *Concordia Partners, LLC v. Marcelle Pick & Pick Enterprises, LLC*, 2013 WL 5988568, at *1 (D. Me. Nov. 12,

2013).  Energetiq's filing provides no reason to think that any such harm will occur before November 4th, or indeed at any time in the next several months.  For this reason alone, briefing should be stayed.

Further, the facial weaknesses of Energetiq's motion demonstrates that, at a minimum, the parties should be permitted to address at the November 4th scheduling conference whether (and, if so, in what manner) Energetiq should be permitted to renew its request for preliminary injunctive relief at all.  As discussed above, Energetiq represented at the April 30, 2015 hearing that the alleged harm it wanted to enjoin was Excelitas' ███████████████████ (Dkt. No. 85 at 65:1-2, 76:1-5, 76:19-77:10.)  Energetiq represented that ███████████ ███████████████████████████████████ that it was ███████████████████ ███████████ and that ████████████████ that Energetiq wanted to enjoin.  (*Id.* at 76:19-77:10.)  Energetiq then confirmed in answer to the Court's question that ███████████ was the specific irreparable harm that it wanted enjoined.  (*Id.* at 77:11-16.)  It was on this basis that the Court permitted "limited discovery regarding what, if any, allegedly infringing activity has occurred or is occurring in the United States in the ***course of development of LS2***."  (Dkt. No. 120 at 15 (emphasis added); *see also* Dkt. No. 85 at 81:16-82:3 (requesting discovery limited to ████████████████).)

Phase I discovery proved the premise of Energetiq's argument to be incorrect.  Excelitas shut down ███████████████████████████ and there has been no ███████████████████████ activity since that time.  (Ex. 1, Blondia Dep. at 49:24-25, 32:12-14, 50:14-17, 268:5-9, 350:15-19.)  Because Energetiq's basis for seeking preliminary injunctive relief proved unavailing, Energetiq has now abandoned the theory upon which it sought injunction-related discovery.  Instead, Energetiq now brings a different motion, against a

different party, on a different theory – tacitly admitting that Phase I discovery served little

purpose other than to burden Defendants with an expensive fishing expedition.

    Energetiq's new theory is fatally flawed.  It is based upon alleged offers to sell, but

Energetiq has not and cannot identify any document or testimony identifying ████████████

█████████████████ let alone an offer to sell ██████████.  *ISIS Pharmaceuticals, Inc. v.*

*Santaris Pharma A/S Corp.*, 2014 WL 2531973, at *4-5 (S.D. Cal. June 4, 2014) (finding no

infringing act when the alleged offer to sell the "***as yet-to-be identified***" product, "***at the time of***

***contracting***, did not include all limitations of the claims in issue." (emphasis added)).  Instead,

Energetiq's motion hinges on the idea that ███████████████████████████████████

██████████████.  This is incorrect.  But even if it were true (which it is not), Energetiq's

motion omits a key fact about ██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

(Ex. 1, Blondia Dep. at 343:2-6.)  Given that fact, the basis for Energetiq's supposed emergency

crumbles.  The remainder of the motion boils down to the idea that Energetiq simply does not

believe the evidence and testimony that ███████████████████████████████████, but

Energetiq's disbelief is not enough to meet its heavy burden.  As explained in the parties' Joint

Status Report, based upon the actual facts, Energetiq's "offer to sell" theory is wrong both as a

matter of law and fact.  (*See* JSR at 15-18.)

As importantly, Energetiq fails even to acknowledge that it cannot allege irreparable harm because its own licensing efforts demonstrate that any harm is compensable by money damages.  Energetiq has offered to license the patents-in-suit in exchange for ███████████ ███████████████  (*See* Dkt. No. 54, Second Letz Decl., Ex. 1 at 1, 2 and App'x B.) Energetiq has also apparently licensed its patents extensively to third-parties (facts to be developed through discovery as noted below).  Having itself calculated a dollar amount that fully compensates for practicing the patents-in-suit, Energetiq cannot legitimately argue that alleged infringement of these same patents constitutes irreparable harm.  *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc*., 694 F.3d 1312, 1339-40 (Fed. Cir. 2012).

Finally, the relief Energetiq now seeks is exactly what Energetiq told the Court it was ***not*** seeking at the April 30, 2015 hearing.  Specifically, Energetiq stated: ██████████████ ████████████████████████████████████████████████  (Dkt. No. 85 at 76:3-5.)  Energetiq made this representation for good reason.  ASML's accused YieldStar 250 has been on sale in the United States since 2014, and Energetiq concedes it has suffered no irreparable harm from those sales.  (*Id.* at 78:17-20 ████████████████████ ██████████████████████████████  Not only has Energetiq failed to identify any difference in harm between the YieldStar 250 and the YieldStar 350, Energetiq has affirmatively argued there is ***no*** difference.  (*See* JSR at 5-7.)  Energetiq cannot have it both ways.  Because there is no irreparable harm, and certainly no imminent harm, Energetiq's attempt to hijack the November 4 status conference and force a resolution of its demand for injunctive relief is devoid of merit.

Given the evident lack of basis for its motion for injunctive relief, Energetiq should not be permitted to bring the motion unless and until the Court has considered the parties' arguments and scheduling proposals on this topic.

**C.      Defendants Should Be Permitted The Discovery That Energetiq Promised**

When Defendants requested discovery during Phase I, Energetiq refused to provide it, instead telling the Court that "[w]e would expect that when a renewed motion for preliminary injunction is filed, both parties might have some discovery requests, and those can be addressed then." (Dkt. No. 167, Energetiq's Memorandum in Opposition to Defendants' Motion to Compel Discovery, at 5.)  Despite this statement, Energetiq has filed its TRO/PI motion without providing any discovery to Defendants.

Without discovery, the Court cannot fairly rule on Energetiq's motion.  Defendants should be permitted to discover, for example, whether any irreparable harm could possibly befall Energetiq given that it has extensively licensed the patents-in-suit to third parties, has offered to license them to ASML B.V., has no product that competes with the YieldStar 350, has demonstrated that it is incapable of meeting the YieldStar specifications, and has failed to identify any causal nexus between the allegedly infringing activity and any supposed harm. Indeed, as noted above, the Federal Circuit has recently held that, before a multi-component product like the YieldStar 350 can be enjoined, plaintiff must demonstrate that the accused feature is what drives demand for the entire product. *See Apple*, 695 F.3d at 1374; *see also* JSR at 20-22.  To deny Defendants discovery into these issues, and instead rush head-long into a hearing on injunctive relief as Energetiq requests, would be to invite reversible error. *Id.* Energetiq should not be permitted to manipulate the schedule, abandon its prior representation to the Court, and run roughshod over Federal Circuit precedent.  Instead, to the extent the Court is

inclined to entertain Energetiq's TRO/PI motion at all, the Court should set an appropriate, targeted discovery period after the November 4th conference during which Defendants can take discovery into Energetiq's claim of irreparable harm.

## III.    CONCLUSION

Accordingly, and for the reasons set forth above, Defendants respectfully request that briefing on Energetiq's TRO/PI motion be stayed until after the Court sets a schedule for this case at the November 4, 2015 status conference.

Respectfully submitted,

Dated:  October 23, 2015                    ASML NETHERLANDS B.V.,
                                            EXCELITAS TECHNOLOGIES CORP.
                                            QIOPTIQ PHOTONICS GMBH & CO. KG

                                            By their Attorneys,


                                            /s/ *Kevin S. Prussia*
                                            James M. Dowd (*pro hac vice*; CA # 259578)
                                            Kevin S. Prussia (BBO # 666813)
                                            Elisabeth M. Oppenheimer (BBO # 686312)
                                            Dana O. Burwell (BBO # 682413)
                                            Jonathan A. Cox (BBO #687810)
                                            WILMER CUTLER PICKERING
                                              HALE AND DORR LLP
                                            60 State Street
                                            Boston, MA 02109
                                            Tel: (617) 526-6000
                                            Fax: (617) 526-5000
                                            james.dowd@wilmerhale.com
                                            kevin.prussia@wilmerhale.com
                                            elisabeth.oppenheimer@wilmerhale.com
                                            dana.burwell@wilmerhale.com
                                            jonathan.cox@wilmerhale.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on October 23, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  A copy of the document will be served upon all counsel of record electronically via the CM/ECF system.

*/s/ Kevin S. Prussia*

**<u>CERTIFICATE OF CONFERENCE</u>**

I hereby certify that counsel for Defendants has conferred with counsel for Plaintiff regarding the substance of this motion, and counsel for Plaintiff could not state whether they assented to this motion.

*/s/ Kevin S. Prussia*