# EXHIBIT 1

Trials@uspto.gov                                                                          Paper 12
571-272-7822                                                      Entered:  November 30, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

ASML NETHERLANDS B.V., EXCELITAS TECHNOLOGIES CORP.,
and QIOPTIQ PHOTONICS GMBH & CO. KG,
Petitioner,

v.

ENERGETIQ TECHNOLOGY, INC.,
Patent Owner.
_____

Case IPR2015-01362
Patent 8,969,841 B2
_____

Before SALLY C. MEDLEY, JONI Y. CHANG, and
BARBARA A. PARVIS, *Administrative Patent Judges.*

CHANG, *Administrative Patent Judge.*

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2015-01362
Patent 8,969,841 B2

# I.   INTRODUCTION

ASML Netherlands B.V., Excelitas Technologies Corp., and Qioptiq
Photonics GmbH & Co. KG (collectively, "Petitioner") filed a Petition
requesting an *inter partes* review of claims 1–3 and 7 of U.S. Patent
No. 8,969,841 B2 (Ex. 1001, "the '841 patent").  Paper 4 ("Pet.").  Energetiq
Technology, Inc. ("Patent Owner") filed a Preliminary Response.  Paper 10
("Prelim. Resp.").  We have jurisdiction under 35 U.S.C. § 314(a).

For the reasons set forth below, we institute an *inter partes* review as
to claims 1–3 and 7 of the '841 patent.

## A.  Related Matter

The parties indicate that the '841 patent is asserted in *Energetiq
Technology, Inc. v. ASML Netherlands B.V.*, No. 1:15-cv-10240-LTS
(D. Mass.), and identify related proceedings.  Pet. 1; Paper 11, 2–3.

## B.  The '841 Patent

The '841 patent claims under 35 U.S.C. § 120, through a series of
continuation and continuation-in-part applications, the benefit of the filing
date of an application filed March 31, 2006.  Ex. 1001, at [63]; Ex. 1002.
The '841 patent discloses a light source comprising a laser that ionizes a gas
within a chamber to produce a plasma-generated light.  *Id*. at Abs.
According to the '841 patent, such a light source can be used as a source of
illumination in a semiconductor photolithographic system.  *Id*. at 1:31–39.

IPR2015-01362
Patent 8,969,841 B2

Figure 1 of the '841 patent illustrates a block diagram of a light source, and is reproduced below with annotations added.



As shown in annotated Figure 1, light source 100 includes laser 104, chamber 128, and ignition source 140. *Id*. at 14:40–16:5. Laser 104 outputs laser beam 116 via fiber optic element 108. *Id*. Collimator 112 directs the laser beam to beam expander 118, which produces laser beam 122 and directs it to optical lens 120. *Id*. Optical lens 120 focuses the beam to produce smaller diameter laser beam 124 and directs it to region 130, where plasma 132 is generated along with emitting light 136. *Id*.

### C. Illustrative Claim

Claims 2, 3, and 7 each, directly or indirectly, depend from claim 1, which is reproduced below.

1. A laser driven light source comprising:

a sealed pressurized chamber having a gas at a pressure greater than 10 atmospheres during operation;

an ignition source for ionizing the gas within the chamber; and

IPR2015-01362
Patent 8,969,841 B2

an at least *substantially continuous laser* for providing energy within *a wavelength range from about 700 nm to 2000 nm* to the ionized gas to sustain a plasma within the chamber to produce *a plasma-generated light having wavelengths greater than 50 nm*,

the chamber further comprising a region of material that is transparent to at least a portion of the plasma-generated light and that allows said portion plasma-generated light to exit the chamber.

Ex. 1001, 48:44–57 (emphases added).

### D. Prior Art Relied Upon

Petitioner relies upon the following prior art references[1]:

| Gärtner | FR 2554302 A1 | May 3, 1985 | (Ex. 1004) |
| Kensuke | JP 2006010675 A | Jan. 12, 2006 | (Ex. 1005) |
| Mourou | WO 2004/097520 A2 | Nov. 11, 2004 | (Ex. 1014) |

WILLIAM T. SILFVAST, LASER FUNDAMENTALS 1–6, 199–222, 565–68 (2d ed. 2004).  Ex. 1006 ("Silfvast").

---

[1] The citations to Gärtner and Kensuke are to their certified English-language translations in Exhibits 1004 and 1005, respectively.

IPR2015-01362
Patent 8,969,841 B2

*E. Asserted Grounds of Unpatentability*

Petitioner asserts the following grounds (Pet. 20, 43):

| Claims | Basis | References |
|--------|-------|------------|
| 1–3 and 7 | § 103(a) | Gärtner in view of Mourou and Silfvast[2] |
| 1–3 and 7 | § 103(a) | Gärtner in view of Kensuke and Silfvast |

## II. ANALYSIS

*A. Claim Construction*

In an *inter partes* review, claim terms in an unexpired patent are given their broadest reasonable construction in light of the specification of the patent in which they appear. 37 C.F.R. § 42.100(b); *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1275–79 (Fed. Cir. 2015). Here, Petitioner proposes constructions for "light source" and "laser driven light source," which are recited in all of the challenged claims. Pet. 10–12. At this juncture, Patent Owner does not challenge Petitioner's proposed constructions. *See generally* Prelim. Resp.

Upon review of the present record, we determine that Petitioner's constructions are consistent with the broadest reasonable construction.

---

[2] Silfvast is omitted inadvertently from each statement of the asserted grounds, although discussed in the Petitioner's analysis. Pet. 16–19, 28–40, 45–54. Therefore, we treat the statements of the asserted grounds as mere harmless error and presume that Petitioner intended to assert that the challenged claims are unpatentable based, in part, on Silfvast.

IPR2015-01362
Patent 8,969,841 B2

For purposes of this Decision, we adopt the following claim constructions:

| Claim Term | Construction |
|---|---|
| light source | a source of electromagnetic radiation in the ultraviolet ("UV"), extreme UV, vacuum UV, visible, near infrared, middle infrared, or far infrared regions of the spectrum, having wavelengths within the range of 10 nm to 1,000 µm |
| laser driven light source | a light source having a laser applying energy to generate light |

*"substantially continuous laser"*

For purposes of this Decision, we find it necessary to construe the claim term "substantially continuous laser" expressly. Claim 1 recites "an at least substantially continuous laser for providing energy within a wavelength range from about 700 nm to 2000 nm." Ex. 1001, 48:49–51. The Specification of the '841 patent indicates that a light source can include a pulse laser or a continuous wave laser. *Id*. at 15:60–62. For instance, a high pulse rate laser that provides substantially continuous laser energy can be used. *Id*. at 16:15–18. A continuous wave laser emits radiation continuously or substantially continuously rather than in short bursts, as in a pulsed laser. *Id*. at 4:53–55. The Specification also discloses:

> Efficient, cost effective, high power lasers (e.g., fiber lasers and direct diode lasers) are recently available in the NIR (near infrared) wavelength range from about 700 nm to about 2000 nm. Energy in this wavelength range is more easily transmitted through certain materials (e.g., glass, quartz and sapphire) that

IPR2015-01362
Patent 8,969,841 B2

> are more commonly used to manufacture bulbs, windows and
> chambers.

*Id*. at 16:6–12.

In light of the Specification, we construe the claim term a "substantially continuous laser" broadly, but reasonably, to encompass a continuous wave laser, a high pulse rate laser, and a laser that provides substantially continuous laser energy.

### B.  Principles of Law

A patent claim is unpatentable under 35 U.S.C. § 103(a) if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 406 (2007).  The question of obviousness is resolved on the basis of underlying factual determinations including:  (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of ordinary skill in the art; and (4) objective evidence of nonobviousness.  *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

IPR2015-01362
Patent 8,969,841 B2

### C. Obviousness

Petitioner asserts that claims 1–3 and 7 are unpatentable under
§ 103(a)[3] as obvious over Gärtner in view of Mourou and Silfvast, and as
obvious over Gärtner in view of Kensuke and Silfvast.  Pet. 20–59.  As
support, Petitioner proffers a Declaration of Dr. J. Gary Eden, who has been
retained as an expert witness for the instant proceeding.  Ex. 1003 ¶¶ 19–20.

Patent Owner counters that neither prior art combination renders
claims 1–3 and 7 obvious.  Prelim. Resp. 8, 32.  In particular, Patent Owner
argues that the combinations do not disclose a "substantially continuous
laser," as recited in claim 1, and that Petitioner fails to provide sufficient
reasons to combine the prior art teachings.  *Id*. at 9–51.

In our discussion below, we begin with a brief summary of the cited
prior art and then we address the parties' contentions in turn, focusing on the
deficiencies alleged by Patent Owner.

### 1.  Brief Summary of the Cited Prior Art

Gärtner

Gärtner discloses a radiation light source for a photolithographic
system, illuminating a photoresist layer on a semiconductor wafer.
Ex. 1004, 1:1–4.  Figure 1 of Gärtner is reproduced below with annotations
added.

---

[3] Because, on this record, the effective filing date for the '841 patent is
before March 16, 2013, the pre-Leahy-Smith America Invents Act, Pub. L.
No. 112-29, 125 Stat. 284 (2011), version of § 103 applies.

IPR2015-01362
Patent 8,969,841 B2



As shown in annotated Figure 1 of Gärtner, Gärtner's light source includes continuous $CO_2$ laser 9, laser 10 (an ignition source), and chamber 1. *Id*. at 4:31–5:12. Plasma 14 is generated inside chamber 1 and emits light 15 into the downstream optical system through window 8. *Id*.

Mourou

Mourou discloses a light source for semiconductor photolithography. Ex. 1014 ¶ 1. Mourou's light source includes a titanium sapphire laser for providing energy with a wavelength of 800 nm. *Id*. ¶ 22.

Kensuke

Kensuke discloses a light source that provides a continuous spectrum in the UV range. Ex. 1005, Abs. Kensuke's light source includes a titanium sapphire laser that generates energy having a wavelength range of about 500 to 1,100 nm. *Id*. ¶ 14.

IPR2015-01362
Patent 8,969,841 B2

Silfvast

Silfvast is a book on laser fundamentals.  Ex. 1006, 1.  Silfvast states
that titanium sapphire lasers "can be operated over a wavelength range of
660–1,180 nm and thus has the broadest gain bandwidth of any laser."  *Id*. at
565.  According to Silfvast, "[c]ommercial titanium sapphire lasers are . . .
typically pumped with either argon ion lasers (for [continuous wave]
operation) or frequency-doubled Nd:YAG or Nd:YLF lasers (for pulsed
operation)."  *Id*.

*2.  Discussion*

Substantially continuous laser

Claim 1 recites "an at least substantially continuous laser for
providing energy within a wavelength range from about 700 nm to 2000 nm
to the ionized gas to sustain a plasma within the chamber to produce a
plasma-generated light having wavelengths greater than 50 nm."  Ex. 1001,
48:49–53.  By virtue of their dependency, each of claims 2, 3, and 7 also
requires this limitation.

Petitioner asserts that Gärtner discloses a light source comprising a
continuous $CO_2$ laser for ionizing a gas within a chamber to sustain a
plasma, which produces a UV light having wavelengths greater than 50 nm.
Pet. 28–29, 45–46; Ex. 1004, 4:31–5:12.  Petitioner acknowledges that
Gärtner does not disclose a laser that provides "energy within a wavelength
range from 700 nm to 2000 nm," as recited in claim 1.  Pet. 29, 47.
Nevertheless, Petitioner contends that such a laser was well-known in the art
at the time of the invention because Mourou, Kensuke, and Silfvast each

IPR2015-01362
Patent 8,969,841 B2

disclose a titanium sapphire laser that generates energy having a wavelength, or a range, falling squarely within the claimed range. *Id*. at 29–40, 47–54; Ex. 1005 ¶ 14 (500 to 1,100 nm); Ex. 1006, 565–66 (660–1,180 nm); Ex. 1014 ¶ 22 (800 nm). Petitioner further maintains that it would have been obvious to substitute a titanium sapphire laser for Gärtner's continuous $CO_2$ laser, in view of Mourou and Silfvast, or in view of Kensuke and Silfvast. Pet. 29–40, 47–54.

Patent Owner disagrees and advances two arguments. Prelim. Resp. 8–54. First, Patent Owner argues that neither Mourou nor Kensuke discloses a *continuous* laser. *Id*. at 10, 29–33, 51–54.

It was known in the art at the time of the invention, however, that "[c]ommercial titanium sapphire lasers are . . . typically pumped with either argon ion laser (for [*continuous wave*] operation) or frequency-doubled Nd:YAG or ND:YLF lasers (for pulsed operation)," as described by Silfvast. Ex. 1006, 565–66 (emphasis added). Therefore, one with ordinary skill in the art would have understood that a titanium sapphire laser having a *continuous wave* operation ("continuous titanium sapphire laser") was commercially available at the time of the invention. Dr. Eden testifies that such an artisan would have utilized a continuous titanium sapphire laser in Gärtner's light source "to achieve a 100% duty cycle which, in turn, provides uninterrupted power to the plasma light source," so that "the plasma would provide a continuous output of light," which is desirable for

11

IPR2015-01362
Patent 8,969,841 B2

semiconductor photolithography.[4]  Ex. 1003 ¶¶ 74, 108.  On this record, we credit Dr. Eden's testimony as it is consistent with the prior art of record.

Second, Patent Owner argues that Mourou generates *extreme* UV light, and does not generate UV light, a "light having wavelengths greater than 50 nm," as recited in claim 1.  Prelim. Resp. 26–29.  Patent Owner, however, attempts to limit Mourou's teachings narrowly to the particular examples disclosed in the reference.  In an obviousness analysis, a reference may be relied upon for all that it would have suggested reasonably to one with ordinary skill in the art.  *Merck & Co. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989).  The disclosure of a reference is not limited to specific examples contained in its disclosure.  *In re Mills*, 470 F.2d 649, 651 (CCPA 1972).  We are also mindful that prior art must be considered in the context of the knowledge that a person of ordinary skill in the art would have had with respect to light sources.  *See Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013).  The level of ordinary skill in the art is reflected by the prior art of record.  *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001).

Here, Mourou illustrates that it was already known in the art to utilize a titanium sapphire laser in a light source to produce a plasma-generated

---

[4] Petitioner asserts that one with ordinary skill in the art would have had a Ph.D. in physics, electrical engineering, or an equivalent field, and 2–4 years of work experience with lasers and plasma, or a master's degree in physics, electrical engineering, or an equivalent field, and 4–5 years of work experience with lasers and plasma.  Pet. 3; Ex. 1003 ¶ 24.  At this juncture, Patent Owner does not challenge this assertion.  *See generally* Prelim. Resp.

IPR2015-01362
Patent 8,969,841 B2

light for semiconductor photolithography.  Ex. 1014 ¶¶ 1, 9, 22.  Gärtner teaches that a desired wavelength range for such a light is in the UV region—wavelengths greater than 50 nm.  Ex. 1004, 2:28–30, 3:1–18, 4:31–5:12.  Moreover, Dr. Eden testifies that an ordinarily skilled artisan would have understood that "laser sustained plasma produces light with a broad spectrum of wavelengths, with the peak of the spectrum depending on the power of the laser," and such an artisan would have adjusted the power to maintain Gärtner's desired UV wavelength.  Ex. 1003 ¶ 75.  In fact, Silfvast states that titanium sapphire lasers are the most widely used tunable solid-state lasers.  Ex. 1006, 565.  And Kensuke discloses a light source having a titanium sapphire laser to ionize a gas for generating a UV light (Ex. 1005 ¶¶ 2–3, 14), showing that it is not beyond the skill of an artisan to utilize a titanium sapphire laser in a light source to produce a UV plasma-generated light.  *See KSR*, 550 U.S. at 417 ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."); *see also id*. at 420 ("The second error of the Court of Appeals lay in its assumption that a person of ordinary skill attempting to solve a problem will be led only to those elements of prior art designed to solve the same problem.").

Based on the evidence currently before us, we determine that Petitioner has demonstrated sufficiently, for purposes of this Decision, that Gärtner in view of Mourou and Silfvast, or in view of Kensuke and Silfvast,

13

IPR2015-01362
Patent 8,969,841 B2

discloses a "substantially continuous laser for providing energy within a wavelength range from about 700 nm to 2000 nm to the ionized gas to sustain a plasma within the chamber to produce a plasma-generated light having wavelengths greater than 50 nm," as required by claims 1–3 and 7.

Rationale to combine prior art teachings

Patent Owner contends that Petitioner fails to articulate sufficient reasons to combine Gärtner with Mourou and Silfvast, and to combine Gärtner with Kensuke and Silfvast. Prelim. Resp. 11–15, 34–40. Patent Owner also takes the position that the prior art of record teaches away from replacing Gärtner's continuous $CO_2$ laser with a shorter wavelength laser, such as those disclosed in Mourou, Kensuke, and Silfvast. *Id.* at 15–19, 40–44. To substantiate its contentions, Patent Owner alleges that Cross[5], Keefer[6], and Cremers[7] would have discouraged an artisan from using shorter wavelength lasers. *Id.*

In an obviousness analysis, prior art must be read in context, taking account of the knowledge possessed by one with ordinary skill in the art *at the time of the invention*. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1259–1262 (Fed. Cir. 2007). Here, the earliest filing date claimed by the '841

---

[5] U.S. Patent No. 4,780,608, issued Oct. 25, 1988. Ex. 1015 ("Cross").

[6] Dennis R. Keefer, *Laser-Sustained Plasma*, in LASER-INDUCED PLASMAS AND APPLICATIONS 169–206 (Leon J. Radziemski & David A. Cremers eds., 1989). Ex. 1017 ("Keefer").

[7] David A. Cremers et al., *Evaluation of the Continuous Optical Discharge for Spectrochemical Analysis*, in SPECTROCHIMICA ACTA, Vol. 40B, No. 4, at 665–79 (1985). Ex. 2002 ("Cremers").

IPR2015-01362
Patent 8,969,841 B2

patent is *March 31, 2006*.  Ex. 1001 at [63].  Yet, Patent Owner relies upon

Cross, Keefer, and Cremers, which were *published in 1988, 1989, and 1985*,

respectively.  Those references, at best, show merely the knowledge of an

artisan *in the 1980s*.  Such evidence does not support Patent Owner's

contentions, as it does not account for the technological advancements in the

relevant art *between 1989 and 2006*.

As Petitioner points out, laser technology for shorter wavelengths

improved significantly during the 1990s and early 2000s because of the

development of the titanium-doped sapphire and rare earth-doped glass fiber

lasers, making it easier and more desirable to sustain plasmas with shorter

wavelength lasers.  Pet. 14–16; Ex. 1003 ¶¶ 42–51; Ex. 1006, 567; Ex. 1022,

148.[8]  More importantly, by 2004, short wavelength lasers had several

known advantages—e.g., producing energy that can be carried by quartz

optical fibers for long distances and can travel through glass, so that

"high-quality glass lenses can be used to focus the beam down to a minimum

spot size."  Ex. 1016, 1601.[9]  Dr. Eden testifies that shorter wavelength

lasers also were considerably smaller and more efficient than $CO_2$ lasers.

Ex. 1003 ¶ 48.  Dr. Eden further testifies that substituting Gärtner's

continuous $CO_2$ laser with a shorter wavelength laser would have required

nothing more than routine skill, and a person with ordinary skill in the art

---

[8] RARE-EARTH-DOPED FIBER LASERS AND AMPLIFIERS 144–170 (Michel J.F. Digonnet ed., 2nd ed. 2001).  Ex. 1022.

[9] HANDBOOK OF LASER TECHNOLOGY AND APPLICATIONS 1587–1611 (Colin E. Webb & Julian D.C. Jones eds., 2004).  Ex. 1016.

IPR2015-01362
Patent 8,969,841 B2

would have had a reasonable expectation of success. *Id.* ¶ 87–88, 117–18.
Indeed, as indicated in Silfvast (which was published in 2004), titanium
sapphire lasers were commercially available and the most widely used
tunable solid-state lasers. Ex. 1006, 565. On this record, we credit
Dr. Eden's testimony as it is consistent with the prior art disclosures.

Upon consideration of the evidence in the present record, we are
persuaded by Petitioner's explanations and supporting evidence that merely
substituting Gärtner's continuous $CO_2$ laser with a continuous titanium
sapphire laser that generates energy having shorter wavelengths, in view of
Mourou and Silfvast, or in view of Kensuke and Silfvast, for sustaining a
plasma to produce a UV light is no more than a predictable use of prior art
elements according to their established functions—an obvious improvement.
*See KSR*, 550 U.S. at 417. At this juncture, Patent Owner does not provide
sufficient or credible evidence that such a substitution would be "uniquely
challenging or difficult for one of ordinary skill in the art," at the time of the
invention. *See Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157,
1162 (Fed. Cir. 2007). On this record, we determine that Petitioner has
articulated sufficient reasons to combine Gärtner with Mourou and Silfvast,
and to combine Gärtner with Kensuke and Silfvast.

Conclusion

For the foregoing reasons, we determine that Petitioner has
demonstrated a reasonable likelihood of prevailing on its assertions that
claims 1–3 and 7 are unpatentable over Gärtner in view of Mourou and
Silfvast, and over Gärtner in view of Kensuke and Silfvast.

IPR2015-01362
Patent 8,969,841 B2

### *D. Other Considerations*

Patent Owner urges the Board to deny one of the two asserted grounds of unpatentability "because the Petition presents multiple grounds in a redundant manner and makes no meaningful distinction between them." Prelim. Resp. 54–57.  We are cognizant that, under 37 C.F.R. § 42.108(a), the Board has the discretion to deny one or more grounds as being redundant to an instituted ground.  The Board, however, is not required to exercise its discretion in every proceeding.  Here, we observe that Petitioner asserts only two grounds, both of which involve the same base reference and challenge the same four claims.  As discussed above, we determine that, for each asserted ground, Petitioner has demonstrated a reasonable likelihood of prevailing.  Given the particular facts of this proceeding, we decline to exercise our discretion to deny either ground.

### III.  CONCLUSION

For the foregoing reasons, we determine that there is a reasonable likelihood that Petitioner would prevail in challenging claims 1–3 and 7. We, however, have not made a final determination as to the patentability of the challenged claims, nor with respect to claim construction.

IPR2015-01362
Patent 8,969,841 B2

## IV.  ORDER

For the foregoing reasons, it is

ORDERED that pursuant to 35 U.S.C. § 314(a), an *inter partes* review is hereby instituted for the following grounds of unpatentability:

| Claims | Basis | References |
|---|---|---|
| 1–3 and 7 | § 103(a) | Gärtner in view of Mourou and Silfvast |
| 1–3 and 7 | § 103(a) | Gärtner in view of Kensuke and Silfvast |

FURTHER ORDERED that no other ground of unpatentability asserted in the Petition is authorized for this *inter partes* review; and

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial; the trial will commence on the entry date of this decision.

IPR2015-01362
Patent 8,969,841 B2

PETITIONER:

Donald R. Steinberg
David L. Cavanaugh
Michael H. Smith

Wilmer Cutler Pickering Hale & Dorr LLP

Don.Steinberg@wilmerhale.com
David.Cavanaugh@wilmerhale.com
MichaelH.Smith@wilmerhale.com

PATENT OWNER:

Steven M. Bauer
Joseph A. Capraro Jr.
Proskauer Rose LLP

PTABMattersBoston@proskauer.com
JCapraro@proskauer.com